IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| ADVANCE TRANSPORTATION | § | Case No. 21-30906-hcm |
| SERVICES INCORPORATED, | § | Chapter 11 |
| | § | |
| Debtor. | § | |

## MOTION TO COMPEL DEBTOR TO
## ASSUME OR REJECT EXECUTORY CONTRACT

TO THE HONORABLE H. CHRISTOPHER MOTT, U.S. BANKRUPTCY JUDGE:

Comes now Scot Properties, Ltd. ("Scot"), a creditor and party in interest in the above-entitled and numbered Chapter 11 case and files this, its Motion to Compel Debtor to Assume or Reject Executory Contract it has with Scot for the lease of nonresidential real property located at 1477 Lomaland, and, in support thereof, would respectfully show as follows:

**This pleading requests relief that may be adverse to your interests.**

**If no timely response is filed within 21 days from the date of service, the relief requested herein may be granted without a hearing being held.**

**A timely filed response is necessary for a hearing to be held.**

1.      The Debtor filed for relief under Chapter 11 of the Bankruptcy Code on November 30, 2021 (the "Petition Date").  The Debtor has continued in possession of its assets and is managing its business at this time.  The Debtor is in the business of receiving, storing, shipping and selling products, materials and merchandise made and/or distributed by the Debtor.

2.      Scot would show the Court that prior to the Petition Date, the Debtor was a party to a Lease Agreement dated March 6, 2018 by and between Advanced [sic] Transportation Services, Inc.

and Scot (the "Lease"). The nonresidential real property is located at 1477 Lomaland, El Paso, Texas (the "Leased Premises").

3.      The initial term of the Lease was for thirty-six (36) months and the initial monthly base rent was $4,143.75 per month.

4.      The Lease was amended by a First Lease Amendment dated January 30, 2020 which (1) reduced the size of the Leased Premises by approximately 4,896 SF; (2) reduced the monthly base rent to $2,905.70 per month; and (3) included additional payments to cure defaults under the Lease (the "First Amendment to Lease").  A true and correct copy of the First Amendment to Lease is attached hereto as Exhibit 2.

5.      The Lease was further amended by a Second Lease Amendment dated March 1, 2021 to extend the terms of the Lease (the "Second Amendment to Lease").  A true and correct copy of the Second Amendment to Lease is attached hereto as Exhibit 3.  The monthly base rent due under the Second Amendment to Lease is $2,992.87 per month plus taxes, insurance, and common area maintenance ("CAM").

6.      Prior to the filing of this Chapter 11, the Debtor had defaulted under the terms of the Lease.  Specifically, the Debtor failed to make its monthly Lease and CAM payments for October and November 2021.

7.      Section 365(d)(2) allows a debtor until the confirmation of its plan of reorganization to decide to assume or reject executory contracts.  Specifically, Section 365(d)(2) of the Bankruptcy Code states:

> (2) In a case under chapter 9, 11, 12, or 13 of this title, the trustee may assume or reject an executory contract or unexpired lease of residential real property or of personal property of the debtor at any time before the confirmation of a plan but the court, on the request of any party to such contract or lease, may order the trustee to

determine within a specified period of time whether to assume or reject such contract or lease.

8.      Scot would show the Court that the Debtor has made no post-petition rent payments to Scot since the filing of this Chapter 11 and owes Scot the sum of $13,571.03 for past due rent, CAM and late charges as of the Petition Date and will owe the amount of $4,726.87 for post-petition rent and CAM as of December 1, 2021.

9.      Section 365(b) of the Bankruptcy Code permits the assumption of leases and executory contracts provided that either all defaults under the Lease be cured or that adequate assurance be provided of the cure of the default in order allow such assumption over the objection of the affected non-debtor party to the Lease.

10.     In this case, Scot does not consent to the assumption of its Lease unless the Debtor provides for the cure of the monetary defaults under the Lease within a reasonable time.

11.     In addition, the Debtor must pay Scot for post-petition rent on a timely basis.

**WHEREFORE, PREMISES CONSIDERED** Scot Properties, Ltd. requests that the Court enter an Order

1.      Requiring the Debtor to pay Scot all post-petition rent due under the Lease within ten days of entry of an order granting the relief requested and to pay all future rent on a timely basis;

2.      Requiring the Debtor to assume or reject the Lease within twenty days of the date of an order granting the relief requested;

3.      Requiring the Debtor to cure all defaults under the Lease within twenty days of the date of an order granting the relief requested;

4.      Deeming the Lease rejected if the Debtor does not assume the Lease, or cure the defaults under the Lease within the time periods described above; and

5.      For such other and further relief as may be just and equitable under the circumstances.

**DATED** this _____9_____ day of December, 2021.

Respectfully submitted,

**GORDON DAVIS JOHNSON & SHANE P.C.**
4695 N. Mesa Street
El Paso, Texas  79912
(915) 545-1133
(915) 545-4433 (Fax)

By:_____
        Harrel L. Davis III
        State Bar No. 05567560
        hdavis@eplawyers.com
        Attorneys for Scot Properties, Ltd.

## CERTIFICATE OF SERVICE

I certify that on the _____9_____ day of December, 2021, a true and correct copy of the above and foregoing was served upon the following parties via electronic means as listed on the court's ECF noticing system or by regular first-class mail:

_____
Harrel L. Davis

Label Matrix for local noticing
0542-3
Case 21-30906-hcm
Western District of Texas
El Paso
Tue Dec  7 09:47:36 CST 2021

Advance Transportation Services Incorporated
12308 Red Sun Dr.
El Paso, TX 79938-7738

U.S. BANKRUPTCY COURT
511 E. San Antonio Ave., Rm. 444
EL PASO, TX 79901-2417

American Express
P.O. Box 650448
Dallas, TX 75265-0448

BFS Capital
1970 Oakcrest Ave, Suite 217
Saint Paul, MN 55113-2624

CIT
10201 Centuarion Parkway North
Suite 100
Jacksonville, FL 32256-4114

Celtic Bank
268 South State Street
Salt Lake City, UT 84111-5314

E Advance Services
122 East 42nd Street, Ste. 2112
New York, NY 10168-2100

EP Leasing, LLC
P.O. Box 290775
El Paso, TX 79929-0775

Franco Factoring
6929 Imperial Ridge Dr.
El Paso, TX 79912-7616

IRS Insolvency Office
300 E. 8th Street, Mail Stop 5026AUS
Austin, TX 78701-3233

Internal Revenue Service
Centralized Insolvency Office
P.O. Box 7346
Philadelphia, PA 19101-7346

Kabbage
505 Lakeland Plaza Ste #347
Cumming, GA 30040-2807

(p)PAYPAL
3505 SILVERSIDE RD
STE 200
WILMINGTON DE 19810-4905

On Deck Capital
1400 Broadway 25th Floor
New York, NY 10018-5225

Penske
P.O. Box 563
Reading, PA 19603-0563

Penske Truck Leasing
11451 Chito Samaniego Dr.
El Paso, TX 79936-7422

People's Premium Finance
600 SW Jefferson, Suite 204
Lee Summit, MO 64063-3988

Prime Advance
525 Walker Street
Bloomington, IN 47403-2152

Regal Capital
525 Walker Street
Bloomington, IN 47403-2152

S.W.I.T.
2959 Irving, Blvd.
Dallas, TX 75247-6210

United States Attorney
Civil Process Clerk-
Internal Revenue Service
601 N.W. Loop 410, Suite 600
San Antonio, TX 78216-5512

United States Attorney General
Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, DC 20530-0009

United States Trustee - EP12
U.S. Trustee's Office
615 E. Houston, Suite 533
P.O. Box 1539
San Antonio, TX 78295-1539

Vista Star Scot Properties
P.O. Box 522541
El Paso, TX 79952-0009

World Global Capital
116 Nassau Street, Suite 804
New York, NY 10038-2481

Yes Capital
525 Walker Street
Bloomington, IN 47403-2152

Brad W. Odell
Mullin Hoard & Brown, LLP
1500 Broadway, Suite 700
Lubbock, TX 79401-3169

E. P. Bud Kirk
600 Sunland Park Drive, Ste.4-400
El Paso, TX 79912-5134

February 28, 2018 – Advanced Transportation Services        EXECUTION COPY

# LEASE AGREEMENT

THIS LEASE AGREEMENT ("Lease" or "Agreement") is made this _6_ day of _March_, 20_18_ (the "Effective Date") between Scot Properties, Ltd. ("Landlord"), and the Tenant named below.

## Key Definitions:

| | |
|---|---|
| **Tenant:** | Advanced Transportation Services, Inc. |
| **Tenant's Representative, Address, and Telephone:** | Abe Wardy, President<br>1477 Lomaland, Suite D10<br>El Paso, Texas 79935<br>Phone No: 915-544-4200<br>Cell 915-726-2620<br>Email:_ATS.Wardy@gmail.com |
| **Premises:** | That portion of the Building, containing approximately 15,300 rentable square feet, as determined by Landlord, municipally known as 1477 Lomaland, Suite D8-D10, El Paso, Texas 79935 as shown on Exhibit "A". |
| **Project:** | Trans AM Plaza, described on Exhibit "B" and being the land and improvements thereon described on Exhibit "B-1" attached hereto. |
| **Building:** | The building municipally known as 1477 Lomaland, El Paso, Texas 79935. |
| **Tenants Share of Project:** | 10.88% (based on total square footage for the Project: 140,620 s.f.) |
| **Tenant's Share of Building:** | 50% (based on total square footage of Building: 30,600 s.f.) |
| **Lease Term:** | Beginning on the Commencement Date and ending on the last day of the 36th full calendar month thereafter. Partial months shall be prorated. |
| **Commencement Date:** | The earlier of: (i) the date the Tenant takes occupancy of the Premises, or (ii) March 1, 2018. Landlord may, at its option, prepare a letter to Tenant outlining the Commencement Date and the end of the original Lease Term, which is sometimes referred to as the "end date or end of the Lease Term." |



**EXHIBIT**

1

February 28, 2018 – Advanced Transportation Services          EXECUTION COPY

**Monthly Base Rent:**          Base Rent shall equal the following amounts for the
                                respective periods set forth below:

| Period | | | Monthly Base Rent |
|---|---|---|---|
| Commencement Date through | Month – 12 | | $ 4,143.75 |
| Month – 13 | through | Month – 24 | $ 4,268.06 |
| Month – 25 | through | Month – 36 | $ 4,396.10 |

**Initial Estimated Annual**
**Operating Expense Payments:**
(estimates only and subject
to adjustment to actual costs
and expenses according to
the provisions of this Lease)*

| | | |
|---|---|---|
| 1. Taxes: | $ 0.71 psf | $ 10,863.00 total |
| 2. Insurance: | $ 0.18 psf | $  2,754.00 total |
| 3. Operating Expenses: | $ 0.77 psf | $ 11,781.00 total |
| Total | $ 1.66 psf | $ 25,398.00 total |

*estimated only and subject to adjustment to actual costs as
provided in the Lease. Any partial months shall be pro-rated
for such partial month.

**Initial Monthly Base Rent and**
**Operating Expense Payments:**          $ 6,260.25 – Commencing March 1, 2018

**Security Deposit:**          $ 6,500.00

**Use:**          The purpose receiving, storing, shipping and selling products, materials
                  and merchandise made and/or distributed by Tenant and for such other
                  lawful purposes as may be incidental thereto; provided, however, with
                  Landlord's prior written consent, Tenant may also use the Premises for
                  light manufacturing.

**Broker:**          Vista Star Realty, LLC – Per Separate Agreement.

**Addenda:**          See Paragraph 42.

**Exhibits:**          Exhibit A – Premises
                       Exhibit B – Project
                       Exhibit B-1 – Project Land and Improvements Description
                       Exhibit C – Certificate of Insurance
                       Exhibit D – Rules and Regulations
                       Exhibit E – Sign Criteria
                       Exhibit F – Move-out Conditions

1.     **Granting Clause; Quiet Enjoyment**. In consideration of the obligation of Tenant to pay rent as herein provided and in consideration of the other terms, covenants, and conditions hereof, Landlord leases to Tenant, and Tenant takes from Landlord, the Premises, to have and to hold for the Lease Term, subject to the terms, covenants and conditions of this Lease. Tenant agrees that the Premises does not include the roof, exterior walls or space below the floor of the Premises or Building. If Tenant shall perform all of the covenants and agreements herein required to be performed by Tenant, Tenant shall, subject to the terms of this Lease, at all times during the Lease Term, have peaceful and quiet enjoyment of the Premises against any person claiming by, through or under Landlord.

2.     **Use and Acceptance of Premises**. The Premises shall be occupied and used by Tenant solely for the purpose of conducting therein the business listed in the key definitions at the first of this Lease and for such lawful purposes as may be incident thereto and for no other purpose without Landlord's prior written consent. Tenant's acceptance of occupancy from Landlord shall constitute acknowledgment by Tenant that Tenant has inspected the Premises, the Building and the Project of which the Premises are a part and that same are suitable for Tenant's intended use thereof as stated in this Paragraph. **TENANT RECOGNIZES AND AGREES THAT LANDLORD IS MAKING NO WARRANTIES EXPRESSED OR IMPLIED, AS TO THE SUITABILITY OF THE PREMISES OR THE PROJECT FOR ANY PARTICULAR USE OR THE CONDITION OF ANY PORTION THEREOF. TENANT ACCEPTS THE SPACE "AS IS" AND WITH ALL FAULTS. TENANT WAIVES ANY IMPLIED WARRANTY THAT THE PREMISES IS SUITABLE FOR TENANT'S INTENDED USE OR PURPOSES. NOTWITHSTANDING THE FOREGOING, LANDLORD IS NOT AWARE OF AND HAS NO REASON TO BELIEVE THERE ARE ANY CIRCUMSTANCES OR CONDITIONS IN OR ON THE PREMISES OR THE PROPERTY WHICH WOULD PREVENT TENANT'S INTENDED USE OR PURPOSES.**

3.     **Operation by Tenant**.

(a)     Tenant, at Tenant's expense, shall comply with all laws, rules, orders, ordinances, directions, regulations and requirements of federal, state, county and municipal authorities regardless of when they become effective, pertaining to Tenant's use or occupancy of the Premises and with any covenants, conditions and restrictions, including, without limitation, all applicable federal, state and local laws, regulations or ordinances pertaining to air, soil and water quality, Hazardous Materials (as defined below), waste disposal, air emissions and other environmental, health and safety, zoning and land use matters, including all Environmental Requirements (as defined below), the Americans with Disabilities Act or similar laws (as amended, "ADA") and with any directive or order of any public officer or officers, pursuant to law, which impose any duty upon Landlord or Tenant with respect to the use or occupancy of the Premises (the "Legal Requirements"). Landlord is not aware of and has no reason to believe there are any such circumstances or conditions in or on the premises or the property.

(b)     Tenant will use the Premises in a careful, safe and proper manner and will not commit waste, overload the floors or structure of the Premises or Building or subject the Premises to use that would damage the Premises, the Building or the Project. Tenant shall not permit any objectionable or unpleasant odors, smoke, dust, gas, noise, or vibrations to emanate from the Premises, or take any other action that would constitute a nuisance or would disturb, unreasonably interfere with, or endanger Landlord or any tenants of the Project or any adjacent or neighboring property owners or occupants. In no event may Tenant engage in any action or inaction which would cause a change in the zoning classification (including any variances or so-called "grandfathered" benefits) which is currently applicable to the Premises. Outside storage, including without limitation, storage of non-operational trucks, trailers and other vehicles, parts and supplies is prohibited without Landlord's prior written consent. Tenant shall not use the Premises and areas surrounding the Premises as a place of public accommodation under the ADA or similar laws. Tenant shall not conduct an auction, liquidation, or going out of business sale on the Premises or areas surrounding the Premises, including the Common Areas (as defined in Paragraph 14(a), without Landlord's prior written

{1522.1/PGOR/06283442.27}

consent.

(c)     Tenant will not use or permit the Premises to be used in any manner that would void Tenant's or Landlord's insurance, increase the insurance risk, or cause the disallowance of any credits or discounts. If any increase in the cost of any insurance on the Premises, Building or the Project is caused by Tenant's use or occupation of the Premises, or because Tenant vacates the Premises, then Tenant shall pay to Landlord the amount of such increase. Any occupation of the Premises by Tenant prior to the Commencement Date shall be subject to all obligations of Tenant under this Lease. Landlord is aware of Tenant's intended use and Landlord is not aware of any circumstances which would result in any of the above occurrences.

(d)     Tenant shall be responsible, at its sole cost and expense, for obtaining and keeping in full force and effect, under the terms of the Legal Requirements, any and all permits, approvals, authorizations and/or licenses which are required or necessary for the use and/or occupation of the Premises, or to establish, operate, and conduct its business operations in the Premises, as well as for any specific new permits, approvals, authorizations and/or licenses that may be required or necessary for carrying out Tenant made alterations or Tenant Additions (defined below).

(e)     Tenant shall supply and maintain at its expense any fire extinguishers or other fire prevention equipment or systems relating to or required by Tenant's use of the Premises as required by Legal Requirements. Tenant shall be responsible for all keys and security of the Premises at its sole cost and expense.

(f)     Landlord shall have the exclusive right to use, rent or exploit for any purpose (provided Landlord's use does not unreasonably interfere with or restrict Tenant's use of the Building or Premises) the roof and exterior walls of the Building or Premises, or any other areas of the Project, including but not limited to erecting signs or other structures on or over all or any part of the same, erecting scaffolds and other aids to the construction and installation of the same, and installing, maintaining, using, repairing, and replacing pipes, ducts, solar and electronic systems or devices, conduits and wires leading through, to or from the Building and Premises and serving other parts of the Project. Tenant shall have no right whatsoever to use the exterior walls or roof of the Building or Premises in the Building, except as otherwise provided in this Lease. **Tenant shall not penetrate in any manner the exterior walls or roof of the Building or Premises.**

4.     **Base Rent**. Tenant shall pay Base Rent in the amount set forth in the key definitions on the first page of this Lease. The first month's Base Rent, the Security Deposit, and the first monthly installment of estimated Operating Expenses (as herein defined) shall be due and payable on the date hereof, and Tenant promises to pay to Landlord in advance, without demand, deduction or set-off, monthly installments of Base Rent on or before the first (1st) day of each calendar month succeeding the Commencement Date. Payments of Base Rent for any fractional calendar month shall be prorated. All payments required to be made by Tenant to Landlord hereunder (or to such other party as Landlord may from time to time specify in writing) may be made by Electronic Fund Transfer of immediately available federal funds, or by check (certified or cashier's check if requested by Landlord), at such place, within the continental United States as Landlord may from time to time designate to Tenant in writing. The obligation of Tenant to pay Base Rent and other sums to Landlord and the obligations of Landlord under this Lease are independent obligations. Tenant shall have no right at any time to abate, reduce, or set-off any rent due hereunder except as may be expressly provided in this Lease.

5.     **Operating Expense Payments**.

(a)     It is the intention of Landlord and Tenant that Landlord receive the Base Rent "net" of all other charges except as expressly provided herein. Accordingly, beginning on the Commencement Date, Tenant shall pay as additional rent Tenant's Share (defined below) of the Operating Expenses and

{1522.1/PGOR/06283442.27}

relating to the Premises, the Building, and the Project. As used in this Lease, the term "Rent" shall mean, collectively, Base Rent and additional rent. The term "Operating Expenses" shall mean all costs and expenses incurred by Landlord with respect to the ownership, maintenance, repair and operation of the Common Area and Project, including but not limited to: Taxes (as provided in this agreement); Insurance (as provided in this agreement); utilities; maintenance, repair and replacement of all portions of the Project (including the buildings and Common Areas), including without limitation, signs, sprinklers and fire suppression systems (if any), mechanical systems, including any HVAC or EVAP systems and their components, plumbing systems, exterior surfaces (including but not limited to painting, cleaning and graffiti removal), paving and parking areas (including striping, line painting and snow removal), dock systems, dock doors, roads, roofs and roof systems, alleys, landscaping (including sprinkler systems), utility lines, lighting, electrical systems, Building Systems (defined below); trash collection, sweeping; compliance with laws, rules, regulations and orders of governmental authorities, including any Legal Requirements; fees and assessments; amounts paid to contractors and subcontractors for work or services performed in connection with the foregoing; property management fees (which, at Landlord's option, may be payable to itself, an affiliate or third party manager); and administrative fees equal to fifteen percent (15%) of the Operating Expenses (excluding Taxes and Insurance) (which, at Landlord's option, may be payable to itself, an affiliate or third party manager); deductibles on insurance loss; security services (if any).

(b)     Operating Expenses do not include costs, expenses, depreciation or amortization for repairs and replacements required to be made by Landlord at its expense under this agreement, unless otherwise provided therein or caused by Tenant, its agents, employees, contractors or invitees; debt service under mortgages; ground rent or ground leases; costs of restoration to the extent of net insurance proceeds received by Landlord with respect thereto; leasing commissions; or the costs of renovating space for tenants in the Project.

(c)     Upon the execution of this Lease, Landlord shall furnish Tenant a written statement estimating Tenant's Share of the Operating Expenses for the current calendar year (herein the "Estimate"). Beginning on the Commencement Date and on the first (1st) day of each month during the Lease Term, Tenant shall pay Landlord as additional rent one-twelfth (1/12) of the Estimate. In addition, Tenant shall pay with the rental payment for the first (1st) month following receipt of the Estimate an amount equal to the number of months elapsed in the calendar year prior to receipt of the Estimate times one-twelfth (1/12) of the Estimate, so as to bring said monthly payments current for the year. As soon as practical after the end of each calendar year, Landlord shall furnish Tenant a written statement showing Tenant's Share of the total Operating Expenses actually due for the calendar year ended (the "Actual Expenses"). If the Actual Expenses exceed the Estimate, then Tenant agrees to pay within ten (10) days of receipt of said statement, the difference between Tenant's Share of the Actual Expenses and the Estimate. If the Estimate exceeds the Actual Expenses, then, assuming Tenant is not in default, upon request by Tenant Landlord agrees to refund the balance or apply such amount to amounts due by Tenant under this Lease or hold such amount as a credit for Tenant under this Lease. Tenant's failure to object to the written statement within thirty (30) days after receipt shall be deemed acceptance by Tenant. For purposes of this Paragraph, a year shall mean a calendar year. The provisions of this Paragraph shall apply for any partial calendar year during which this Lease is effective, subject to a pro rata adjustment based upon the number of calendar months or portions thereof that this Lease is in effect. Tenant's obligation to pay, such difference shall survive the termination or expiration of this Lease. This Lease is intended to comply with Section 171.1011(f) of the Texas Tax Code, as amended, for pass through items.

(d)     For purposes of calculating Tenant's Share of Operating Expenses or charges under this Lease, a year shall mean a calendar year except the first year, which shall begin on the Commencement Date, and the last year, which shall end on the expiration of this Lease. With respect to Operating Expenses which Landlord allocates to the entire Project, Tenant's Share shall be the percentage set forth in the key definitions in this agreement as Tenant's Share of the Project, as adjusted by Landlord

{1522.1/PGOR/06283442.27}

in the future for changes in the physical size of the Premises or the Project. For Operating Expenses which Landlord allocates only to the Building, Tenant's Share shall be the percentage set forth in the key definitions in this agreement as Tenant's Share of the Building as adjusted by Landlord in the future for changes in the physical size of the Premises or the Building. In addition to Tenant's Share of Operating Expenses, Tenant shall pay to Landlord any expenses allocated exclusively to Tenant, including maintenance, janitorial, garbage removal, repair and replacement of Building Systems (i.e. HVAC or EVAP systems), which Landlord may invoice to Tenant or include as allocated to Tenant as internal Operating Expenses.

(e)     Landlord may equitably increase Tenant's Share for any item of expense (including Operating Expense) or cost reimbursable by Tenant that relates to a repair, replacement, or service that benefits only the Premises or a portion of the Building or that Project that includes the Premises or based on occupancy or use. The estimated Operating Expenses for the Premises set forth on the first page of this Lease are only estimates, and Landlord makes no guaranty or warranty that such estimates are accurate.

(f)     In determining the amount of Operating Expenses, if less than ninety-five percent (95%) of the rentable area of the Project shall have been occupied at any time during such year, the Operating Expenses shall be deemed to be increased to an amount equal to the Operating Expenses that would be expected to be incurred had such occupancy been ninety-five percent (95%).

(g)     Landlord and Tenant each agree that they are knowledgeable and experienced in commercial transactions and further hereby acknowledge and agree that the provisions of this Lease for determining charges, amounts and additional rent payable by Tenant are commercially reasonable and valid, even though such methods may not state precise mathematical formula for determining such charges and is commercially reasonable and, as to each such charge or amount, constitutes a "method by which the charge is to be computed." **ACCORDINGLY, LANDLORD AND TENANT HEREBY VOLUNTARILY WAIVE THE APPLICABILITY OF SECTION 93.012 OF THE TEXAS PROPERTY CODE, TO THE TERMS OF THIS LEASE.**

6.     **Late Charges**. Tenant agrees to pay a late charge equal to the greater of (a) $50.00, or (b) ten percent (10%) as additional rent for each payment due hereunder that remains unpaid for more than five (5) days when due under this Lease to cover Landlord's administrative costs of processing such late payment. In addition to said late charge, any rental or other amount due from Tenant under this Lease which is more than ten (10) days delinquent shall bear interest from the date such rental or other amount was due at the lesser of the rate of twelve percent (12%) per year or the then maximum nonusurious rate under applicable law, (the lesser of said amounts being herein referred to as the "Maximum Rate.") In the event the late charge is ever deemed to be "interest" the amount of interest on past due amounts shall be automatically reduced so that the combination of said late charge and the interest on past due amounts, if any, does not exceed the Maximum Rate. Any amount collected which exceeds the Maximum Rate will be deemed credited to other amounts owed by Tenant to Landlord under this Lease, and any remaining excess after such credit shall be refunded to Tenant. It is the intent of both Landlord and Tenant to at all times comply with the applicable law regarding the maximum nonusurious amount or rate of interest which may be contracted for, charged, taken, reserved or received by Landlord. Any rental and/or payments due hereunder returned to Landlord by Tenant's bank or other financial institution, for any reason, such as "Insufficient Funds" or otherwise, will entitle Landlord to collect an additional $40.00 from Tenant for each such payment.

7.     **Utilities**. Tenant shall timely pay before delinquency for all water, gas, electricity, heat, light, power, telephone, sewer, sprinkler services, refuse and trash collection, garbage removal, water meter charges and franchise fees, and other utilities and services used by Tenant on the Premises, all maintenance charges for utilities, and any storm sewer or meter franchise fee charges, hook up or termination fees or other

similar charges for utilities, together with any taxes, penalties, surcharges or the like pertaining to Tenant's use of the Premises. With respect to all utilities separately metered, Tenant shall arrange for utility services in its own name and timely pay all charges directly to the provider. Tenant shall pay to Landlord as additional rent separately stated, or in Landlord's discretion as Operating Expenses, its share of all reasonable and customary charges for utilities not separately metered based upon consumption, as reasonably determined by Landlord. Landlord shall not be liable to Tenant for any interruption in the service of any utilities to the Premises. No interruption or failure of utilities shall result in the termination of this Lease or the abatement of any amounts owed by Tenant under this Lease. Tenant agrees to limit use of water and sewer for normal restroom and kitchen use. Tenant acknowledges that it has inspected the utilities and has determined that the utilities are sufficient for Tenant's use of the Premises. Tenant shall not install any equipment or make use of the Premises which overloads the utilities available to the Premises. If Tenant violates this Paragraph, Landlord may, in addition to any other remedies which Landlord has hereunder, require Tenant, at Tenant's expense, to upgrade such utility lines and related equipment including without limitation transformers.

    **8.**    **Taxes.**

    (a)    <u>Landlord's Rights and Obligations</u>. Landlord has the sole right to render the Project, land and any improvements thereon to any appropriate taxing authorities. Tenant, as additional rent as provided in this agreement, agrees to pay Tenant's Share of all taxes (both general and special), assessments, or governmental charges (hereinafter "Taxes") lawfully levied or assessed against the land, the Project or any portion thereof, including without limitation any gross receipts, excise or similar tax and all taxes or levies imposed in substitution or replacement thereof or in substitution or replacement of increases therein, along with Taxes imposed pursuant to Section 171, et seq of the Texas Tax Code, along with amendments thereto. Tenant's Share of the Taxes shall be payable as additional rent in accordance with this agreement herein. Additionally, Tenant shall pay to Landlord upon demand, Tenant's Share of all reasonable costs (including tax consultants and/or attorneys' fees, but only to the extent of actual tax savings resulting from the actions of said consultants or attorneys) incurred by Landlord in connection with any protest or contest of the valuation of taxes imposed on the Project or the land. Provided, however, Landlord shall have no obligation to take any such action. Tenant shall have the right to inspect, at Landlord's business office during regular business hours and upon reasonable notice to Landlord, the tax bills which Landlord receives from the applicable taxing authorities.

    (b)    <u>Tenant's Obligations</u>. During the Lease Term, Tenant shall pay prior to delinquency all taxes assessed against and levied upon fixtures, furnishings, equipment and all other personal property of Tenant contained in the Premises. When possible, Tenant shall cause its personal property to be assessed and billed separately from the real property of Landlord. If any of Tenant's personal property shall be assessed with Landlord's real property, Tenant shall pay Landlord the taxes attributable to Tenant within ten (10) days after receipt of a written statement therefor or, at Landlord's option as provided in this agreement.

    **9.**    **Insurance; Waiver.**

    (a)    <u>Landlord's Obligation</u>. During the Lease Term and any extensions of this Lease, Landlord shall procure and maintain such property ("all risk") and commercial general liability insurance coverage on the Project (including buildings and Common Areas) as Landlord deems appropriate, including if Landlord so elects, loss of rental insurance. In addition, Landlord may procure such other insurance as may be reasonably required by Landlord's lender with respect to the Project.

    (b)    <u>Tenant's Obligations</u>.

        (i)    <u>All Risk Property, General Liability and Other Insurance</u>. Tenant, as

additional rent, shall pay to Landlord an amount equal to Tenant's Share of all premiums paid by Landlordfor insurance described in this agreement. Tenant's Share of such premiums is payable as additional rent under this agreement.

(ii)     Plate Glass. During the Lease Term, Tenant shall carry full coverage insurance on all plate glass in the Premises and cause the same to be replaced if chipped, cracked or broken, including the replacement thereof in the event of an illegal or malicious act by any third party.

(iii)     Liability. During the Lease Term, Tenant shall procure and maintain a Commercial General Liability coverage policy or policies of insurance, insuring both Landlord and Tenant, against all claims, damages or actions arising out of or in connection with Tenant's use or occupancy of the Premises, the Building, or the Project (including the Common Areas), and adjoining streets, sidewalks, and passageways, or by the condition of the Premises, the limits of such policy or policies to be in an amount not less than $1,000,000.00 per occurrence and in an amount not less than $2,000,000.00 in the general aggregate for personal injury including, without limitation, bodily injury, death or property. Such policy or policies shall additionally include Contractual Liability insurance in support of the indemnity sections of this Lease and Fire Legal Liability insurance coverage in the maximum allowable amount which shall include insurance coverage for any damage to the Premises leased by Tenant. Tenant shall also maintain (i) business interruption insurance covering for at least 12 months, and (ii) workers compensation insurance on its employees in the required statutory amounts. All of Tenant's policies shall contain a waiver of subrogation and right of recovery.

(iv)     Property Insurance. During the Lease Term, Tenant shall carry insurance against fire and such other risks as are from time to time included in standard extended coverage insurance, for the full insurable value, covering all of Tenant's equipment, furniture, merchandise, trade fixtures, including Trade Fixtures (as defined below), furnishings, wall covering, floor covering, carpeting, drapes, equipment, improvements, betterments and all items of property of Tenant located on or within the Premises. All property of Tenant kept in the Premises shall be so kept at Tenant's risk only. Such policy shall contain a waiver of subrogation and right of recovery.

(v)     Construction Liability. Tenant, at its own cost and expense, shall obtain and maintain at all times when demolition, excavation, or construction work being done by Tenant and is in progress on the Premises, construction liability insurance with limits of not less than $1,000,000.00 and $2,000,000.00 in the general aggregate for personal injury, including, without limitation, bodily injury, death, or property damage, protecting Landlord and Tenant as well as such other person or persons as Tenant may designate against any and all liability for injury or damage to any person or property in any way arising out of such demolition, excavation, or construction work.

(vi)     **Form of Insurance**. Policies required of Tenant hereunder shall: (A) be issued by a reputable insurance company qualified to do business in the state where the Premises and the Project are located with an AM Best rating of A minus or better; (B) **list Landlord, it officer, directors, employees and affiliates, and any Property Manager if any, as an additional insured;** (C) provide that they cannot be cancelled or amended in any material respects unless Landlord is given thirty (30) days prior written notice by Tenant; (D) state that such insurance is primary and non-contributory over any insurance carried by Landlord; (E) contain an endorsement in favor of Landlord waiving such insurance company's right of subrogation against Landlord; and (F) contain a statement that the annual premium for such policy has been paid in advance. Landlord shall have the right to review said insurance amounts at least yearly during the Lease Term and require Tenant to increase said insurance policies to provide coverage in such amounts as Landlord, in its sole discretion, deems necessary and Tenant agrees to procure and maintain such increased insurance coverage. Tenant shall provide Landlord with any renewal of insurance required under this this agreement at least ten (10) days prior to the expiration of any such policy. Tenant will also reimburse Landlord for any increased premiums or additional insurance which Landlord reasonably deems necessary

{1522.1/PGOR/06283442.27}

as a result of Tenant's use or occupancyof the Premises or any vacancy or abandonment thereof by Tenant. In addition, Tenant's insurance as required in this agreement of this Lease shall apply as primary insurance with respect to any other insurance or self-insurance programs afforded to or obtained by Landlord. **TENANT WAIVES ALL RIGHTS AGAINST LANDLORD FOR RECOVERY OF DAMAGES TO THE EXTENT THE DAMAGES ARE COVERED (OR SHOULD HAVE BEEN COVERED) BY THE LIABILITY INSURANCE AND OTHER INSURANCE OBTAINED OR REQUIRED TO HAVE BEEN OBTAINED BYTENANT UNDER THIS LEASE.** The insurance required by Landlord hereunder may be maintained under a blanket or master policy which includes properties other than the Project.

(vii) <u>Certificate of Insurance</u>. A duly executed certificate of insurance substantially similar to the form attached as Exhibit "C"" to this Lease shall be delivered by Tenant to Landlord: (A) prior to the occupancy of the Premises by Tenant, (B) at least fifteen (15) days prior to the expiration of the respective insurance policy for any renewals, or (C) promptly, upon request by Landlord during this Lease.

**(c)** <u>Mutual Waiver of Subrogation Rights</u>. Landlord and Tenant and all parties claiming under them mutually release and discharge each other and their respective officers, directors, partners, employees and agents from all claims and liabilities arising from or caused by any casualty, hazard or event to the extent they could be covered by valid and collectible insurance required to be carried under this Lease by Landlord or Tenant, respectively, and waive any right of subrogation which might otherwise exist in or accrue to any person on account thereof; provided that such release shall not operate in any case where the effect is to invalidate such insurance coverage. The failure of a party to carry the required insurance shall not void this waiver. This clause shall survive the termination of this lease. **THIS RELEASE SHALL APPLY EVEN IF THE LOSS OR DAMAGE SHALL BE CAUSED BY THE FAULT OR NEGLIGENCE OF A PARTY HERETO OR FOR ANY PERSON FOR WHICH SUCH PARTY IS RESPONSIBLE.**

**(d) <u>Waiver</u>. LANDLORD, ITS OFFICERS, DIRECTORS, PARTNERS, AGENTS, MANAGERS, CONTRACTORS, LICENSEES AND EMPLOYEES (INDIVIDUALLY, THE "LANDLORD" AND COLLECTIVELY THE "LANDLORD PARTIES"), SHALL NOT BE LIABLE FOR, AND TENANT WAIVES ALL CLAIMS FOR DAMAGE OR LOSS (EXCEPT CLAIMS CAUSED BY OR RESULTING FROM THE GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF THE LANDLORD OR ANY LANDLORD PARTY, INCLUDING BUT NOT LIMITED TO CONSEQUENTIAL DAMAGES AND BUSINESS INTERRUPTIONS, TO PERSON, PROPERTY OR OTHERWISE, SUSTAINED BY TENANT OR ANY PERSON CLAIMING THROUGH TENANT RESULTING FROM ANY ACCIDENT OR OCCURRENCE IN OR UPON ANY PART OF THE PREMISES OR THE PROJECT. THIS WAIVER SHALL INCLUDE WITHOUT LIMITATION CLAIMS FOR DAMAGES RESULTING FROM BUT NOT LIMITED TO: (i) ANY EQUIPMENT OR APPURTENANCES BECOMING OUT OF REPAIR; (ii) INJURY DONE OR CAUSED BY WIND, WATER, ICE OR OTHER NATURAL ELEMENTS; (iii) ANY DEFECT IN OR FAILURE OF PLUMBING, HEATING OR AIR-CONDITIONING EQUIPMENT, BUILDING SYSTEMS, ELECTRIC WIRING OR INSTALLATION THEREOF, GAS, WATER, SEWER AND STEAM PIPES, STAIRS, PORCHES, RAILINGS, SIDEWALKS DRIVEWAYS OR WALKS; (iv) BROKEN GLASS; (v) THE BACKING UP OF ANY**

**SEWER PIPE OR DOWNSPOUT; (vi) THE BURSTING, LEAKING OR RUNNING OF ANY TANK, TUB, WASHSTAND, WATER, SNOW OR ICE UPON THE PREMISES OR THE PROJECT; (vii) THE FALLING OF ANY FIXTURE, PLASTER, BRICK OR STUCCO; (viii) DAMAGE TO OR LOSS BY THEFT OR OTHERWISE OF PROPERTY OF TENANT OR OTHERS; (ix) ACTS OR OMISSIONS OF OTHER PERSONS IN THE PREMISES, OTHER TENANTS IN THE PROJECT, OCCUPANTS OF NEARBY PROPERTIES, OR ANY OTHER PERSONS; AND (x) ANY ACT OR OMISSION OF OWNERS OF ADJACENT OR CONTIGUOUS PROPERTY. ALL PROPERTY OF TENANT KEPT IN THE PREMISES SHALL BE SO KEPT AT TENANT'S RISK ONLY AND TENANT SHALL INDEMNIFY, DEFEND AND SAVE LANDLORD AND THE LANDLORD PARTIES HARMLESS FROM CLAIMS ARISING OUT OF DAMAGE TO THE SAME, INCLUDING SUBROGATION CLAIMS BY TENANT'S INSURANCE CARRIER.**

**NOTWITHSTANDING ANYTHING IN THIS LEASE TO THE CONTRARY, LANDLORD AND TENANT WAIVE ALL CLAIMS AGAINST EACH OTHER (AND AGAINST EACH OTHER'S PARENT COMPANY AND AFFILIATES AND THEIR OFFICERS, DIRECTORS, EMPLOYEES, MANAGERS AND AGENTS) FOR ANY CONSEQUENTIAL, INCIDENTAL, INDIRECT, SPECIAL, EXEMPLARY OR PUNITIVE DAMAGES, INCLUDING, BUT NOT LIMITED TO, LOSS OF ACTUAL OR ANTICIPATED PROFITS, REVENUES OR PRODUCT AND REGARDLESS OF WHETHER ANY SUCH CLAIM ARISES OUT OF BREACH OF CONTRACT OR WARRANTY, TORT, NEGLIGENCE, PRODUCT LIABILITY, MISREPRESENTATION, INDEMNITY, CONTRIBUTION, STRICT LIABILITY, EQUITY, OR ANY OTHER LEGAL THEORY.**

(h) <u>Failure to Comply</u>. Notwithstanding the foregoing, should Tenant fail to comply with any insurance requirements set forth above, Landlord shall have the right, but not the obligation, after five (5) days' prior written notice to Tenant, to purchase said insurance premiums required for compliance under this Lease and Tenant agrees to pay Landlord, upon demand, the premium cost thereof, as additional rent under Paragraph 5.

**10. Landlord's Maintenance and Repairs.**

(a) <u>Landlord's Obligations</u>. Landlord shall maintain or cause to be maintained, at its expense, the structural soundness of the roof, (the metal deck and structural support only) foundation, structural columns and girders, and exterior walls of the Building, in good order, repair, condition except for damage thereto due to the acts or omissions of Tenant, or Tenant's employees, agents, invitees, and contractors, or use beyond ordinary wear and tear by Tenant. The term roof does not include the roofing system or membranes above the deck. The term "walls" as used in this Paragraph shall not include windows, glass or plate glass, doors or overhead doors, store fronts, dock bumpers, dock plates or levelers, or office entries. Tenant shall promptly give Landlord written notice of any repair required by Landlord pursuant to this Paragraph 10(a), after which Landlord shall have a reasonable opportunity to repair.

(b) <u>Landlord's Obligations at Tenant's Cost</u>. Tenant shall pay as additional rent, in

accordance with Paragraph 5 (as Operating Expenses), Tenant's share of the expenses incurred by Landlord in keeping or causing to be kept, reasonable wear and tear excluded: (i) all utility lines serving the Building located in Common Areas that are not controlled by applicable utilities; and (ii) the Common Areas of the Project, exterior Building glass and doors, and non-structural roof components and of the Project. Tenant shall promptly give Landlord written notice of any repair required by Landlord pursuant to this Paragraph 10(b), after which Landlord shall have a reasonable opportunity to repair (not to exceed thirty (30) days, unless such repairs cannot reasonably be repaired within such period).

(c)     Maintenance Contracts. Landlord reserves the right to maintain itself or enter into contracts (which, at Landlord's option, may be payable to itself, an affiliate or third party) for the maintenance of all heating, ventilation and air-conditional equipment, Building Systems (defined below), or other equipment or fixture, which serves the Building or the Premises, including those located on the roof or exterior of the Premises. Landlord shall bill Tenant for Tenant's Share of such expenses as provided in Paragraph 5. Tenant shall pay Landlord for such expenses within ten (10) days upon request of Landlord. Except as provided in this Paragraph 10, Landlord shall not be obligated to make repairs, replacements or improvements of any kind upon the Premises, or to any equipment, merchandise, stock in trade, facilities or fixtures therein, all of which shall be Tenant's responsibility.

## 11.     Tenant's Maintenance and Repairs.

(a)     Tenant's Obligations. Tenant shall at all times keep the Premises (including all entrances and vestibules) and all partitions, windows and window frames and moldings, glass, doors, door openers, fixtures, equipment and appurtenances thereof (including lighting, electrical, and plumbing equipment and appurtenances and all interior heating, ventilation and air-conditioning equipment) and all parts of the Premises and all areas, improvements, and Building Systems (defined below) in and serving the Premises, not required in Paragraph 10 to be maintained by Landlord, in good order, condition and repair and in a clean, orderly, sanitary and safe condition, damage by unavoidable casualty excepted (including but not limited to doing such things as necessary to cause the Premises to comply with all applicable laws, rules, regulations and orders of governmental and public authorities and agencies) and all Legal Requirements. If replacement of equipment, fixtures and appurtenances thereto are necessary, Tenant shall replace the same with equipment, fixtures and appurtenances of the same quality, and shall repair all damages done in or by such replacement. Such repairs and replacements shall include, without limitation, dock and loading areas, truck doors, dock plates or levelers, dock bumpers, dock doors and dock door systems, warehouse floors, floors (including carpet, VCT or tile), plumbing and all plumbing fixtures, hot water heaters, telephone, water and sewer, electrical, cable (including fiber) and other utilities up to points of common connection, Building Systems (defined below), lighting and light fixtures, entries, doors, ceilings, windows, interior walls, and the interior side of Premises demising walls.

(b)     Building Systems. For purposes of this Lease, the term "Building Systems" shall mean the electrical, heating, ventilation and air conditioning systems (including HVACs and EVAPs), sprinklers and fire suppression systems, life safety or security systems, and other mechanical and building systems serving the Premises. Such repairs and replacements include expenditures and repairs whose benefit may extend beyond the Lease Term. At Landlord's discretion, Building Systems may be maintained at Tenant's expense pursuant to maintenance contracts entered into by Landlord under Paragraph 10 above.

(c)     Landlord's Right to Perform. If Tenant fails to perform any repair or replacement for which it is responsible, Landlord may, after five (5) days' notice to Tenant, perform such work and be reimbursed by Tenant within ten (10) days after demand therefor. Tenant shall bear the full reasonable, customary and necessary cost of any repair or replacement to any part of the Premises, the Building or the Project that results from damage caused by Tenant, its agents, employees, contractors, or invitees.

(d)    <u>Notice to Tenant</u>. **Tenant and its agents, employees and contractors shall not (i) penetrate walls or roofs of the Premises or the Building, or (ii) install any signs, banners, devices, equipment or wiring on the exterior of the Premises or the Building (including the roof), including, but not limited to, satellite dishes, cable or other communication devises, for any reason whatsoever without the advance written consent of Landlord. Tenant acknowledges that accessing the roof of the Building could void Landlord's roof warranties and Tenant shall be liable for any damages to Landlord.**

12.    **Alterations; Trade Fixtures; Liens.**

(a)    <u>Alterations</u>. Tenant shall not make any addition, alteration or improvement, including painting, decorating or changing the architectural treatment of any part of the exterior of the Premises or Project, without Landlord's prior written approval thereto, and will promptly remove any paint, decoration, alteration, addition or changes applied or installed without Landlord's approval or take such other action with respect thereto as Landlord directs. **Tenant shall not make structural alterations or changes to the Premises or the Building Systems. Tenant shall not make any alterations that result in the penetration of the roof, foundation or walls without Landlord's advance written consent.** Any such penetrations, even with Landlord's consent, will be performed in a manner so as not to invalidate any roof or other warranty with respect to the Building or the Project. If Landlord grants consent to any requested alterations, the alterations shall be performed in a good, workmanlike and lien free manner in accordance with the all applicable Legal Requirements and any restrictions which may be imposed by Landlord as a condition to its consent. All alterations, changes, additions and leasehold improvements made by Tenant or made by Landlord on Tenant's behalf and all fixtures installed by Tenant which are not Trade Fixtures are herein collectively referred to as "Tenant Additions," and shall be property of Landlord. Such Tenant Additions shall not be removed by Tenant on, before or following expiration or termination of this Lease without Landlord's consent except as may be required by this agreement.

(b)    <u>Trade Fixtures</u>. Tenant, at its own cost and expense may erect such shelves, bins, machinery and trade fixtures (collectively the "Trade Fixtures") in the ordinary course of its business provided that such items do not alter the basic character of the Premises, do not overload or damage the Premises, including floors or walls and may be removed without injury to the Premises, and the construction, erection, and installation thereof complies with all Legal Requirements and other provisions of this Lease. Subject to the terms of this Lease (including this agreement), upon the expiration or termination of this Lease, Tenant shall remove its Trade Fixtures and shall repair any damage to the Premises or the Building caused by such removal unless requested otherwise in writing by Landlord.

(c)    <u>Liens</u>. Tenant shall promptly pay all contractors and materialmen, and not permit or suffer any lien to attach to the Premises or the Project or any part thereof, and indemnify and save harmless Landlord against the same. Landlord shall have the right to require Tenant to furnish a bond or other indemnity satisfactory to Landlord prior to the commencement of any work by Tenant on the Premises. If any lien attaches or is claimed, Tenant, within ten (10) days following the imposing of any such lien, shall cause the same to be released of record by payment or posting of a bond as provided in the Texas Property Code. Tenant has no express or implied authority to create or place any lien or encumbrance of any kind upon, or in any manner to bind the interest of Landlord in the Premises or the Project or to charge the rentals payable hereunder for any claim in favor or any person dealing with Tenant, including, without limitation, those who may furnish materials or perform labor for any construction or repairs.

13.    **Signs**. Tenant shall not make any changes to the exterior of the Premises or the Building, install any exterior lights, signs, decorations, balloons, flags, pennants, banners, or painting, or erect or install any signs, windows or door lettering, placards, decorations, or advertising media of any type which can be viewed from the exterior of the Premises, without Landlord's prior written consent. **Tenant shall not penetrate the outside walls or roofs of the Premises or the Building without Landlord's advanced**

**written consent.** Upon surrender or vacation of the Premises, Tenant shall remove all signs and repair, paint, and/or replace the Building fascia surface to which its signs are attached. Tenant shall obtain all applicable governmental permits and approvals for sign and exterior treatments. All signs, decorations, advertising media, blinds, draperies and other window treatment or bars or other security installations visible from outside the Premises shall be subject to Landlord's approval and conform in all respects to Landlord's requirements. Tenant shall be responsible for all costs of installing, maintaining, and removing its signs.

**14.     Parking and Use of Common Areas and the Project.**

(a)     Common Area. For purposes of this Lease, "Common Areas" means all areas and facilities as provided by Landlord from time to time for the use or enjoyment of all tenants in the Project or the Building, including, if applicable, all roads and facilities on the Project furnished, made available or maintained by Landlord in or near the Project, including parking areas, truck loading areas, driveways, sidewalks, landscaped areas, retaining walls, fences and rock walls, lighting facilities, and other areas and improvements provided by Landlord for the general use in common of the tenants and their business invitees and customers in the Project. The Common Areas shall at all times be subject to the exclusive control and management of Landlord. Tenant acknowledges that it does not have an exclusive interest in the Common Areas. Landlord reserves the right to grant such easements and other rights in the Common Areas as Landlord may from time to time deem necessary, including without limitation, easements for mutual ingress and egress, truck turning and similar matters for the benefit of adjacent properties. Landlord may, at its sole option, modify the Common Areas or make such changes thereto as Landlord deems reasonably necessary. Landlord shall not be obligated to maintain or provide any security services or systems for the Project. Tenant agrees that Landlord shall not be liable for, and Tenant waives any claim against Landlord with respect to, any loss by theft or any other damage suffered or incurred by Tenant in the Common Areas or in connection with any unauthorized entry into the Premises or other criminal or willful acts of third parties. Landlord shall have no obligation to provide any particular number of parking spaces or to provide designated parking spaces for the employees or customers of Tenant.

(b)     Use of Common Area. Tenant and Tenant's business invitees, employees and customers shall have the nonexclusive right, in common with Landlord and all others to whom Landlord has granted or may hereafter grant rights, to use the Common Areas, subject to such reasonable rules and regulations as Landlord may from time to time impose and the rights of Landlord set forth above, including those attached hereto as Exhibit "D." Tenant shall not, nor shall it allow its business invitees, employees or customers to park vehicles, trucks, trailers or leave or store property of any kind in the truck loading and unloading areas, truck courts or truck lanes without Landlord's advance written approval, which Landlord may revoke or modify at any time. The Common Areas shall include the parking lot areas in front of and/or next to doors (include overhead dock doors) to the Premises. Landlord may at any time close temporarily all or any part of the Common Areas to make repairs or changes, to prevent the acquisition of public rights therein or for any other reasonable purpose. Tenant shall not interfere with the other tenants' rights to use any part of the Common Areas. Landlord may allocate parking spaces among Tenant and other tenants of the Project if, in Landlord's opinion, such parking facilities are becoming crowded. Landlord shall not be obligated to enforce Tenant's parking rights against third parties.

(c)     Expense of Operating and Maintaining the Common Areas. Tenant shall pay as additional rent, in accordance with Paragraph 5, Tenant's Share of the reasonable, necessary, and customary expenses incurred by Landlord in operating and maintaining the Common Areas, which shall be included as Operating Expenses.

**15.     Damage and Destruction.** If the Premises are hereafter damaged or destroyed or rendered partially untenantable for their accustomed use by fire or other casualty and such fire or other casualty, Landlord shall, unless this Lease is terminated as below, promptly repair the same to substantially the

{1522.1/PGOR/06283442.27}

condition which they were in immediately prior to the happenings of such casualty (excluding stock in trade, fixtures, furniture, furnishings, carpeting, floor covering, wall covering, drapes and equipment), and from the date of such casualty until the Premises are so repaired and restored, the monthly Rent hereunder shall abate in such proportion as the part of said Premises thus destroyed or rendered untenantable bears to the total Premises; provided, however, Landlord shall not be obligated to expend for such repair or restoration an amount in excess of the insurance proceeds received by Landlord as a result of such damage. Landlord's obligation to rebuild is contingent upon its receipt of insurance proceeds sufficient to make such repairs. In the event any mortgagee or lender requires such sums to be applied to any debt, Landlord will not be deemed to have received the proceeds. Notwithstanding the above, if the Premises or any material portion of the Project is wholly or partially damaged, destroyed or rendered untenantable for their accustomed use by fire or other casualty then Landlord shall have the right to terminate this Lease effective as of the date of such casualty by giving to Tenant, within ninety (90) days after the happening of such casualty, written notice of such termination. In the event that Landlord is unable or unwilling to rebuild the Premises in their entirety to the condition existing prior to the casualty, whether as a result of failure to obtain insurance proceeds, failure to obtain sufficient insurance proceeds or for any other reason, within ninety (90) days after the casualty, then, unless the casualty was caused by Tenant, Tenant shall have the right to terminate this Lease effective as of the date of such casualty by giving to Landlord written notice of such termination unless the casualty was caused by Tenant in which case Tenant will have no right to terminate this Lease. If any notice of termination is given by either party, this Lease shall terminate and provided Tenant is not in default hereunder, Landlord shall promptly repay to Tenant any rent theretofore paid in advance which was not earned at the date of such casualty. If said notice is not given and Landlord is required or elects to repair or restore the Premises as herein provided and this Lease is not terminated by Tenant, then Tenant shall promptly repair or replace its stock in trade fixtures, furnishings, furniture, carpeting, wall covering, floor covering, drapes and equipment to the same condition as they were in immediately prior to the casualty.

### 16.     Condemnation.

(a)     Eminent Domain. If any portion of the Premises or the Project shall be acquired, condemned or damaged as a result of the exercise of any power of eminent domain, condemnation or sale under threat thereof or in lieu thereof, then Landlord at its election may terminate this Lease by giving notice to the Tenant of its election, within one hundred eighty (180) days of the date the condemning authority shall have the right to possession of the Premises or portion of the Project condemned. Moreover, if any portion of the Project is taken and in Landlord's judgment such taking would materially interfere with or impair its ownership or operation of the Project, Landlord may terminate this Lease. If this Lease shall not be terminated as aforesaid, then it shall continue in full force and effect, and Landlord shall within a reasonable time after possession is physically taken by the condemning authority (subject to delays due to shortage of labor, materials or equipment, labor difficulties, breakdown of equipment, governmental restrictions, fires, other casualties or other causes beyond the reasonable control of Landlord) restore the remaining portion of the Premises to the extent reasonably possible, to render it reasonably suitable for the use permitted by Paragraph 2; provided, however, Landlord shall not be obligated to expend an amount greater than the proceeds received from the condemning authority less all expenses incurred in connection therewith (including attorneys' fees) for the restoration. Base Rent as provided in Paragraph 5, shall be reduced in the proportion that the area of the Premises so taken bears to the total Premises. No taking of the Common Areas shall entitle Tenant to an abatement.

(b)     Damages. Landlord reserves and Tenant assigns to Landlord all rights to damages on account of any taking or condemnation or sale under threat or in lieu thereof or any act of any public or quasi-public authority for which damages are payable. Tenant shall execute such instruments of assignment as Landlord requires, join with Landlord in any action for the recovery of damages if requested by Landlord, and turn over to Landlord any damages recovered in any proceeding. If Tenant fails to execute instruments required by Landlord, or undertakes such other steps as requested, Landlord shall be deemed the duly

authorized irrevocable agent and attorney-in-fact of Tenant to execute such instruments and undertake such steps on behalf of Tenant, Landlord shall not reserve any Tenant damages that are part of the Premises, the Building or the Project.

**17. Assignment and Subletting**. Tenant shall not assign this Lease or any interest therein, whether voluntarily, by operation of law, or otherwise, and shall not sublet the Premises or any part thereof except by written permission and consent of Landlord being first had and obtained. Consent of Landlord to any such assignment or subletting shall not be unreasonably withheld if: (a) at the time of such assignment or subletting Tenant is not in default in the performance and observance of any of the covenants and conditions of this Lease; (b) the assignee or subtenant of Tenant shall expressly assume in writing all of Tenant's obligations hereunder; (c) Tenant shall provide proof to Landlord that the assignee or subtenant has a financial condition which is satisfactory to Landlord and Landlord's lender; (d) the Premises continue to be used solely for the purpose set forth in this agreement; and (e) Landlord is furnished with and approves the form of the proposed sublease. In connection with any such assignment or sublease, Tenant or the assignee or subtenant of Tenant shall pay to Landlord any legal and administrative costs incurred by Landlord in approving such assignment or subletting, not to exceed $2,000.00. Any such assignment or sublease, even with the approval of Landlord, shall not relieve Tenant from liability for payment of all forms of rental and other charges herein provided or from the obligations to keep and be bound by the terms, conditions and covenants of this Lease. The acceptance of rent from any other person shall not be deemed to be a waiver of any of the provisions of this Lease, or a consent to the assignment or subletting of the Premises. Consent to any assignment or subletting shall not be deemed a consent to any future assignment or subletting. Any merger, consolidation or transfer of corporate shares of Tenant, if Tenant is a corporation, so as to result in a change in the present voting control of the Tenant by the person or persons owning a majority of said corporate shares on the date of this Lease, shall constitute an assignment and be subject to the conditions of this Section. If Tenant is a general partnership having one or more corporations as partners or if Tenant is a limited partnership having one or more corporations as general partners, the provisions of the preceding sentence shall apply to each of such corporations as if such corporation alone had been the Tenant hereunder. If Tenant is a partnership, the withdrawal of a general partner shall be an assignment subject to the provisions hereof. Moreover, in the event that the rental due and payable by a sublessee or assignee, or a combination of the rental payable under such sublease or assignment plus any bonus or other consideration therefor or incident thereto exceeds the rental payable under this Lease, or if with respect to an assignment, sublease, license or other transfer by Tenant permitted by Landlord, the consideration payable to Tenant by the assignee, subtenant, licensee or other transferee exceeds the rental payable under this Lease, then Tenant shall be bound and obligated to pay Landlord, in addition to all rental required hereunder, such excess rental and other excess consideration within ten (10) days following receipt thereof by Tenant from such sublessee, assignee, licensee or other transferee, as the case may be. Finally, in the event of any assignment or subletting it is understood and agreed that all rentals paid to Tenant by an assignee or sublessee shall be received by Tenant in trust for Landlord, to be forwarded immediately to Landlord without reduction of any kind, and upon election by Landlord such rentals shall be paid directly to Landlord. Without limitation of Landlord's approval rights as provided above, Tenant shall provide a copy of any executed sublease to Landlord within ten (10) days of the execution thereof.

**18. INDEMNIFICATION. TENANT SHALL INDEMNIFY, DEFEND AND HOLD HARMLESS LANDLORD, AND LANDLORD'S AGENTS, MANAGERS, OFFICERS, DIRECTORS, EMPLOYEES AND CONTRACTORS, FROM AND AGAINST ANY AND ALL LOSSES, LIABILITIES, LIENS, CLAIMS, DEMANDS, FINES, PENALTIES, SUITS, PROCEEDINGS, ACTIONS, CAUSES OF ACTIONS, DAMAGES, COSTS AND EXPENSES (INCLUDING ATTORNEYS' FEES) OF EVERY KIND**

EXECUTION COPY

**AND NATURE, WHETHER RESULTING FROM CLAIMS BY THIRD PARTIES FOR INJURIES TO ANY PERSON AND DAMAGE TO OR THEFT OR MISAPPROPRIATION OR LOSS OF PROPERTY ARISING FROM OR GROWING OUT OF THE USE, OCCUPANCY, MANAGEMENT OR CONTROL OF THE PREMISES OR FROM ANY ACTIVITY, WORK, OR THING DONE, PERMITTED OR SUFFERED BY TENANT, ITS SUBTENANTS, ASSIGNEES, INVITEES, EMPLOYEES, CONTRACTORS AND AGENTS, IN OR ABOUT THE PREMISES, COMMON AREAS OR THE PROJECT, TENANT'S FAILURE TO FULLY COMPLY WITH APPLICABLE LAWS OR LEGAL REQUIREMENTS, OR DUE TO ANY OTHER ACT OR OMISSION OF TENANT, ITS SUBTENANTS, ASSIGNEES, INVITEES, EMPLOYEES, CONTRACTORS AND AGENTS, INCLUDING, WITHOUT LIMITATION: (I) LIABILITY FOR DAMAGE RESULTING FROM THE PERSONAL INJURY OR DEATH OF AN EMPLOYEE OF TENANT, REGARDLESS OF WHETHER THE TENANT HAS PAID SUCH EMPLOYEE UNDER THE WORKMAN'S COMPENSATION LAW OF ANY STATE OR OTHER SIMILAR FEDERAL OR STATE PROGRAM FOR THE PROTECTION OF EMPLOYEES, (II) DAMAGE TO ANY REAL OR PERSONAL PROPERTY OF TENANT, LANDLORD OR ANY THIRD PARTIES, AND (III) DAMAGES TO THE PREMISES, COMMON AREAS AND THE PROJECT (INCLUDING DIMINUTION IN VALUE) CAUSED BY BREACH OF TENANT'S OBLIGATIONS UNDER PARAGRAPH 28 (ENVIRONMENTAL). IN THE EVENT TENANT FAILS TO UNDERTAKE ITS INDEMNITY OBLIGATIONS HEREUNDER, TENANT AUTHORIZES LANDLORD (ALTHOUGH EXPRESSLY RECOGNIZING THAT LANDLORD IS UNDER NO OBLIGATION TO DO SO) TO DEFEND, SETTLE OR COMPROMISE ANY CLAIMS, DEMANDS, SUITS, PROCEEDINGS OR THE LIKE WHICH MAY REPRESENT AN INDEMNIFIABLE OBLIGATION OF TENANT HEREUNDER. SUCH ACTION OR INACTION BY LANDLORD SHALL IN NO WAY AFFECT TENANT'S INDEMNITY OBLIGATIONS AS PROVIDED HEREIN. TENANT'S INDEMNITY OBLIGATIONS UNDER THIS PARAGRAPH AND ELSEWHERE IN THIS LEASE SHALL SURVIVE THE EXPIRATION OR EARLIER TERMINATION OF THIS LEASE. THE FURNISHING OF INSURANCE REQUIRED UNDER THIS LEASE SHALL NOT BE DEEMED TO LIMIT TENANT'S OBLIGATIONS UNDER THIS PARAGRAPH.**

19.     Inspection and Access. Landlord and its agents, representatives, and contractors shall have the right to enter the Premises from time to time at reasonable times after advance notice to Tenant to examine, to show them to prospective purchasers and other persons, and to make such repairs, alterations,

improvements or additions as Landlord deems desirable. Rent shall not abate during any such entry by Landlord, including without limitation, during the period of any such repairs, alterations, improvements, or addition. During the last six (6) months of the Lease Term, Landlord may exhibit the Premises to prospective tenants and maintain upon the Premises notices deemed advisable by Landlord. In addition, during any apparent emergency, Landlord, its agents and employees, may enter the Premises forcibly without liability therefor and without in any manner affecting Tenant's obligations under this Lease. Nothing herein contained, however, shall be deemed to impose upon Landlord any obligation, responsibility or liability whatsoever, for any care, maintenance or repair except as otherwise herein expressly provided.

**20.** Subordination and Attornment. Tenant accepts this Lease subject and subordinate to any mortgage, deed of trust, or other lien presently existing on the Project or the land or subsequently created on the Project, and to any renewals and extensions thereof, but Tenant agrees that any such mortgagee shall have the right at any time to subordinate such mortgage, deed of trust, or other lien to this Lease. Landlord is hereby irrevocably vested with full power and authority to subordinate this Lease to any mortgage, deed of trust, or other lien hereafter placed on the Project or the land, and Tenant agrees on demand to execute such further instruments subordinating this Lease as Landlord may request, provided such subordination shall be on the express condition that this Lease shall be recognized by the mortgagee, and that the rights of Tenant shall remain in full force and effect during the Lease Term so long as Tenant shall continue to perform all of the covenants and conditions of this Lease. No such mortgagee shall be required to assume any liabilities for defaults occurring prior to its ownership of the Project. Tenant covenants and agrees that upon foreclosure of any deed of trust, mortgage or other instrument of security and the sale of the Project or the land pursuant to any such document, to attorn to any purchaser at such a sale and to recognize such purchaser as the Landlord under this Lease. The agreement of Tenant to attorn to any purchaser pursuant to such a foreclosure sale or trustee's sale in the immediately preceding sentence shall survive any such sale.

**21. Surrender; Successors; Abandonment**

(a) <u>Surrender</u>. Upon the expiration or earlier termination of this Lease, whether by forfeiture, lapse of time, or otherwise, or upon the termination of Tenant's right to possession of the Premises, Tenant will surrender and deliver up the Premises to Landlord in good clean order and repair and in the condition when delivered to Tenant under this Lease, reasonable ordinary wear and tear and loss by fire or other casualty excepted. Tenant shall make good and repair all damages to the Premises as shall be caused by Tenant and not the result of Landlord's gross negligence. At such time, Tenant shall deliver all keys to the Premises, including all internal keys. All Tenant Additions will, following the expiration or termination of this Lease, remain in the Premises as Landlord's property unless Landlord directs Tenant to remove all or any portion of same whereupon Tenant agrees that it shall, at its expense, remove such Tenant Additions (or portion thereof directed by Landlord). Provided Tenant is not in default, it will remove its Trade Fixtures, inventory, and other personal property upon the Lease Term. If Tenant is in default, it shall remove its Trade Fixtures only if specifically directed to do so in writing by Landlord. Tenant shall repair any damage to the Premises caused by the installation or removal of such Tenant Additions, Trade Fixtures, or other improvements or equipment, along with damage to the Premises caused by Tenant's use of the Premises. Further, Tenant will repair any penetrations to the walls, slab, roof or structure in a manner and to comply with the specifications imposed by Landlord along with any damage caused by such installation or removal by Tenant. Anchor bolts installed in the foundation will be cored out and filled with epoxy to the standards required by Landlord. Foundation and flooring damage caused by any use by Tenant will be repaired or replaced by Tenant. In no event will any Building Systems, fire sprinklers, fire suppression equipment, EVAP or HVAC system units, equipment or components, floor tiles, carpeting, ceiling tiles, plumbing fixtures, or similar building system items or any equipment or fixtures attached to the realty be considered "Trade Fixtures" or be removed unless directed by Landlord in writing to do so. Tenant agrees that following an Event of Default, Landlord may, at its option, allow any party claiming to be a lessor of Tenant to remove equipment, Trade Fixtures, and similar items leased from such lessor. Landlord shall have no liability to Tenant therefor. Landlord may condition its consent upon such lessor agreeing to repair any

{1522.1/PGOR/06283442.27}

February 28, 2018 – Advanced Transportation Services                                        EXECUTION COPY

damage to the Premises caused by such removal and providing adequate financial assurances of its ability to pay for any such damages; provided, however, no such agreement, or Landlord's failure to obtain such an agreement, shall relieve Tenant of its obligations hereunder including without limitation, Tenant's obligation to repair said damage **EVEN IF THE DAMAGE IS CAUSED BY LANDLORD OR ITS CONTRACTORS OR AGENTS.** Tenant shall also properly remove all Hazardous Materials from the Premises and placed on the Project by Tenant.

(b)      Any Trade Fixtures or Tenant Additions not removed by Tenant as required herein shall be deemed abandoned and may be stored, removed and disposed of by Landlord at Tenant's expense, and **TENANT WAIVES ALL CLAIMS AGAINST LANDLORD FOR ANY DAMAGES RESULTING FROM LANDLORD'S RETENTION OR DISPOSAL OF SAME.** Tenant shall be entitled to no payment or offset for the value of any such property (even if sold by Landlord) and shall pay on demand all costs incurred by Landlord in connection with such removal or disposal. No retention, disposal or sale of such items shall limit remedies otherwise available to Landlord hereunder for a breach by Tenant. Moreover, any period following the termination or expiration of this Lease during which there is Hazardous Material, Tenant Alterations or Trade Fixtures which are not removed as herein required or when other repairs or conditions to surrender are not completed, shall be considered a holdover by Tenant and, in addition to all other remedies available to Landlord hereunder, shall obligate Tenant to the increased rental payments pursuant to Paragraph 22 below. All obligations of Tenant hereunder not full performed as of the termination or expiration of this Lease shall survive such termination or expiration.

(c)      Landlord may retain, destroy, deem any remaining property to be junk, or dispose of any property left on the Premises at the end of the Term including termination as result of actions by Tenant. If at any time during the term of this lease Tenant abandons the Premises or any part thereof, Owner may, at his option, enter the Premises by any means without being liable for any prosecution therefore, and without becoming liable to Tenant for damages or for any payment of any kind whatever, and may, at his discretion, as agent for Tenant, re-let the Premises, or any part thereof, for the whole or any part of the then unexpired term, and may receive and collect all rent payable by virtue of such re-letting, and, at Owner's option, hold Tenant liable for any difference between the rent that would have been payable under this lease during the balance of the unexpired term, if this lease had continued in force, and the net rent for such period realized by Owner by means of such re- letting. If Owner's right of re-entry is exercised following abandonment of the Premises by Tenant, then Owner may consider any personal property belonging to Tenant and left on the Premises to also have been abandoned, in which case Owner may dispose of all such personal property in any manner Owner shall deem proper and is hereby relieved of all liability for doing so. "Abandonment" is defined as any absence of Tenant from the Premises for five (5) consecutive days while all or any of the rent or other amounts payable and due is unpaid. Abandonment also includes a failure on the part of the Tenant to respond to telephone calls, emails or text messages regarding the leased premises, while money is owed, for a period or 5 days or more. Abandonment also includes notice from Tenant to Landlord that Tenant is vacating, abandoning or attempting to verbally terminate the lease, not in compliance with the terms of the said Lease. Landlord is not obligated to provide notice to Tenant of the Landlord's intent to retain, destroy, deem any remaining property to be junk, or dispose of any property left on the premises. Any notice of default, lock-out or termination of the lease shall be considered notice to Tenant of Landlord's intent to retain, destroy, deem any remaining property to be junk, or dispose of any property left on the Premises. Landlord, may, but is not required to, store any of Tenant's property and charge reasonable storage fees for the property which is equal to 50% of the rent owed under the lease. Landlord, may, but is not required to, keep said stored property for a period of 30 days, in which case, Tenant will be obligated to pay all sums due under the lease as well as the storage fee, prior to obtaining access to the property.

(d)      <u>Successors.</u> All rights and liabilities herein given or imposed upon the respective parties hereto shall bind and inure to the several respective heirs, successors, administrators, executors and

{1522.1/PGOR/06283442.27}
Trans AM Plaza                                    18

assigns of the parties and if Tenant is more than one person, they shall be bound jointly and severally by this Lease. No rights, however, shall inure to the benefit of any assignee of Tenant unless the assignment is approved by Landlord as required herein.

**22.** **Holding Over.** If Tenant holds over or occupies the Premises beyond the Lease Term (it being agreed there shall be no such holding over or occupancy without Landlord's written consent), Tenant shall pay Landlord for each day of such holding over a sum equal to the following percentage of the monthly rent applicable hereunder at the expiration of the Lease Term (including Operating Expenses), prorated for the number of days of such holding over: (a) one hundred twenty-five percent (125%) for the first thirty (30) days of the hold over period; (b) one hundred fifty percent (150%) for the second thirty (30) days of the hold over period; (c) one hundred seventy-five percent (175%) for the third thirty (30) days of the hold over period; and (d) two hundred percent (200%) thereafter. In such event, Tenant shall occupy the Premises as a tenant at sufferance, and all of the terms and provisions of this Lease shall be applicable, with the exception of the rent applicable during such holding over period, which shall be increased as aforesaid. Tenant agrees that Landlord may institute a forcible detainer or similar action against Tenant or any other party in possession of the Premises without serving any demand for possession, demand to vacate, notice of termination or similar demand or notice upon Tenant or such party in possession. Tenant will also be liable to Landlord for and indemnify Landlord against: (i) any payment or rent concession which Landlord may be required to make to any tenant obtained by Landlord for all or any part of the Premises (a "New Tenant") by reason of the late delivery of space to the New Tenant as a result of Tenant's holding over or failure to surrender the Premises in the manner required by this Lease or in order to induce such New Tenant not to terminate its lease by reason of the holding over by Tenant or failure to surrender the Premises in the manner required by this Lease; and (ii) any claim for damages by any New Tenant. No holding over by Tenant after the Lease Term shall operate to extend the Lease Term. Notwithstanding the foregoing, the acceptance of any use and occupancy charges paid by Tenant pursuant to this Paragraph shall not preclude Landlord from commencing and prosecuting a holdover or summary eviction proceeding.

**23.** **Events of Default by Tenant.** Each of the following events shall be an event of default (an "Event of Default") by Tenant under and a breach of this Lease: (a) any failure of Tenant to pay any rent (including Base Rent) or other amount when due under this Lease; (b) any failure of Tenant to obtain and maintain the insurance required by this Lease that is to be maintained by Tenant; (c) any failure by Tenant to perform or observe any of the other terms, provisions, conditions and covenants of this Lease for more than thirty (30) days after written notice of such failure; (d) Tenant shall become bankrupt or insolvent, or file or have filed against it a petition in bankruptcy or for reorganization or arrangement or for the appointment of a receiver or trustee of all or a portion of Tenant's property, or Tenant makes an assignment for the benefit of creditors; (e) if Tenant abandons or vacates the Premises; (f) this Lease, Tenant's interest herein or in the Premises, any improvements thereon, or any property of Tenant is executed upon or attached; (g) the Premises come into the hands of any person other than expressly permitted under this Lease; or (h) Tenant provides and has provided Landlord with any report or statement which is materially false, including credit information.

**24.** **Landlord's Remedies.** Upon the occurrence of any event of default specified in this Lease (including but not limited to those described in this agreement), Landlord, without grace period, demand or notice (the same being hereby waived by Tenant), and in addition to all other rights or remedies Landlord may have for such default, shall have the right to pursue any one or more of the following remedies:

(a) <u>Terminate Lease</u>. Terminate this Lease in which event Tenant shall immediately surrender the Premises to Landlord, and if Tenant fails to do so, Landlord may, without prejudice to any other remedy which it may have for possession or arrearages in rent, enter upon and take possession of the Premises and expel or remove Tenant and any other person who may be occupying said Premises or any part thereof, by force if necessary, without notice or the need to resort to legal process and without being deemed guilty of trespass or becoming liable for any loss or damage occasioned thereby; and Landlord may

recover from Tenant the amount of all loss and damage which Landlord may suffer by reason of such termination, including, without limitation, all costs of retaking the Premises and the total rent (including the Rent), Operating Expenses and charges reserved in this Lease for the remainder of the Lease Term (i.e., the duration of this Lease had it not been terminated) all of which shall be immediately due and payable by Tenant to Landlord; and/or

(b)     Not Terminate Lease. Without terminating this Lease, enter upon and take possession of the Premises, and expel or remove Tenant and any other person who may be occupying said Premises, or any part thereof, by force if necessary, without notice or the need to resort to legal process and without being deemed guilty of trespass or becoming liable for any loss or damage occasioned thereby. Landlord may make such alterations and repairs as it deems advisable to relet the Premises, and relet the Premises or any part thereof for such term or terms (which may extend beyond the Lease Term) and at such rentals and upon such other terms and conditions as Landlord in its sole discretion deems advisable. Upon each such reletting all rentals received by Landlord therefrom shall be applied: first, to any indebtedness other than rent due hereunder from Tenant to Landlord; second, to pay any costs and expenses of reletting, including brokers' and attorneys' fees and costs of alterations and repairs; third, to rent due hereunder; and fourth, the residue, if any, shall be held by Landlord and applied in payment of future rent as it becomes due hereunder. No such reletting shall relieve Tenant or any guarantors from their obligations hereunder. If rentals received from such reletting during any month are less than that to be paid during that month by Tenant hereunder, Tenant shall immediately pay any such deficiency to Landlord.  In no event shall Tenant be entitled to any excess rent obtained by reletting the Premises over and above the rent reserved herein.

(c)     No Election. No re-entry or taking possession of the Premises by Landlord shall be construed as an election to terminate this Lease unless a written notice of such termination is given by Landlord to Tenant. Notwithstanding any such reletting or re-entry or taking possession, without termination, Landlord may at any time thereafter terminate this Lease for any prior breach or default. Pursuit of any of the foregoing remedies shall not preclude pursuit of any of the other remedies herein provided or any other remedies provided by at law or in equity, nor shall pursuit of any remedy herein provided constitute a forfeiture or waiver of any rent due to Landlord hereunder or of any damages accruing to Landlord. Notwithstanding anything herein to the contrary, Landlord shall have no obligation to relet or attempt to relet the Premises or any portion thereof following termination of this Lease, re-entry or repossession of the Premises; provided, however, in the event Landlord is ever held to have such a duty, Tenant agrees that Landlord shall, in connection with such efforts, not be required to do anything more than list the Premises for lease with a licensed real estate broker of Landlord's choosing (which may be an affiliate of Landlord) for a period of three (3) months. If no party acceptable to Landlord executes a lease with Landlord on terms reasonably acceptable to Landlord within this three (3) month period, Tenant agrees that Landlord shall conclusively have satisfied any such duty to release or mitigate. In no event will Landlord have any duty to lease the Premises before Landlord leases other vacant space which it has in the Project or other buildings owned by Landlord nor shall Landlord have any duty to lease to and Landlord will not be considered to be acting unreasonably in refusing to lease to any party if: (i) the prospective lessee has a financial condition which is unacceptable to Landlord or Landlord's lenders; (ii) the prospective lessee requires any alterations which are unacceptable to Landlord or Landlord's lenders; (iii) the prospective lessee requires tenant improvements to be paid by Landlord; or (iv) the prospective lessee requires terms different from this Lease or which are otherwise unacceptable to Landlord or Landlord's lender.

(d)     Lock Out. Upon the occurrence of an Event of Default under this Lease, Landlord shall be entitled to change or modify the locks at the Premises. Tenant agrees that entry may be gained for that purpose through use of a duplicate or master key or any other means, that same may be conducted out of the presence of Tenant if Landlord so elects, that no notice shall be required to be posted by Landlord on any door to the Premises (or elsewhere) disclosing the reason for such action or any other information, and that Landlord shall not be obligated to provide a key to the changed lock to Tenant unless Tenant shall have

first: (i) brought current all payments due to Landlord under this Lease; provided, however, that if Landlord has theretofore formally and permanently repossessed the Premises, or has terminated this Lease, then Landlord shall be under no obligation to provide a key to the new lock(s) to Tenant regardless of Tenant's payment of past-due rent or other past-due amounts, damages, or any other payment or amounts of any nature or kind whatsoever; (ii) fully cured and remedied to Landlord's satisfaction all other defaults of Tenant under this Lease (but if such defaults are not subject to cure, such as early abandonment or vacation of the Premises, then Landlord shall not be obligated to provide the new key to Tenant under any circumstances); and (iii) given Landlord security and assurances satisfactory to Landlord that Tenant intends to and is able to meet and comply with its future obligations under this Lease, both monetary and nonmonetary. The provisions of this Paragraph are intended to override and supersede any conflicting provisions of the Texas Property Code (including, without limitation, Chapter 93 thereof, and any amendments or successor statutes thereto), and of any other law, to the maximum extent permitted by applicable law.

      (e)    <u>Landlord's Performance for Tenant</u>. If Tenant shall continue in default in the performance of any of the covenants or agreements herein contained after the time limit for the curing thereof, then Landlord may perform the same for the account of Tenant. Any amount paid or expense or liability (together with interest thereon at the Maximum Rate from the date upon which any such expense shall have been incurred) incurred by Landlord in the performance of any such matter for the account of Tenant shall be deemed to be additional rent and the same (together with interest thereon at the Maximum Rate from the date upon which any such expense shall have been incurred) may, at the option of Landlord, be added to any rent then due or thereafter falling due hereunder or shall be payable by Tenant to Landlord on demand.

      (f)    <u>Application of Payments Received From Tenant</u>. Landlord shall have the right to apply any payments made by Tenant to the satisfaction of any debt or obligation of Tenant to Landlord according to Landlord's sole discretion and regardless of the instructions of Tenant as to application of any such sum, whether such instructions be endorsed upon Tenant's check or otherwise, unless otherwise agreed upon by both parties in writing. The acceptance by Landlord of a check or checks drawn by a party other than Tenant shall not affect Tenant's liability hereunder nor shall it be deemed an approval of any assignment or sublease of this Lease by Tenant.

      (g)    <u>Waiver of Rights of Redemption</u>. To the extent permitted by law, Tenant waives any and all rights of redemption granted by or under any present or future laws if Tenant is evicted or dispossessed for any cause, or if Landlord obtains possession of the Premises due to Tenant's default hereunder or otherwise.

      (h)    <u>No Waiver</u>. No delay or omission in the exercise of any right or remedy of Landlord on any default by Tenant shall impair such a right or remedy or be construed as a waiver. The receipt and acceptance by Landlord of delinquent rent shall not constitute a waiver of any other default; it shall constitute only a waiver of timely payment for the particular rent payment involved. No act or conduct of Landlord, including, without limitation, the acceptance of the keys to the Premises, shall constitute an acceptance of the surrender of the Premises by Tenant before the expiration of the Lease Term. Only a notice from Landlord to Tenant shall constitute acceptance of the surrender of the Premises and accomplish a termination of this Lease. Landlord's consent to or approval of any act by Tenant requiring Landlord's consent or approval shall not be deemed to waive or render unnecessary Landlord's consent to or approval of any subsequent act by Tenant. Any waiver by Landlord or any default must be in writing and shall not be a waiver of any other default concerning the same or any other provision of this Lease.

    **25.**    **Default by Landlord**. Landlord shall not be in default hereunder unless Landlord fails to perform any of its obligations hereunder within thirty (30) days after written notice from Tenant specifying such failure (unless such performance will, due to the nature of the obligation, require a period of time in

{1522.1/PGOR/06283442.27}

excess of thirty (30) days, then after such period of time as is reasonably necessary). All obligations of Landlord hereunder shall be construed as covenants, not conditions; and, except as may be otherwise expressly provided in this Lease, Tenant may not terminate this Lease for breach of Landlord's obligations hereunder. All obligations of Landlord under this Lease will be binding upon Landlord only during the period of its ownership of the Premises and not thereafter. The term "Landlord" in this Lease shall mean only the owner, for the time being of the Project, and in the event of the transfer by such owner of its interest in the Project, such owner shall thereupon be released and discharged from all obligations of Landlord thereafter accruing, but such obligations shall be binding during the Lease Term upon each new owner for the duration of such owner's ownership. Any liability of Landlord under this Lease shall be limited solely to its interest in the Project, and in no event shall any personal liability be asserted against Landlord in connection with this Lease nor shall any recourse be had to any other property or assets of Landlord.

**26.     Waiver of Jury Trial. TENANT AND LANDLORD WAIVE ANY RIGHT TO TRIAL BY JURY OR TO HAVE A JURY PARTICIPATE IN RESOLVING ANY DISPUTE, WHETHER SOUNDING IN CONTRACT, TORT, OR OTHERWISE, BETWEEN LANDLORD AND TENANT ARISING OUT OF THIS LEASE OR ANY OTHER INSTRUMENT, DOCUMENT, OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION HEREWITH OR THE TRANSACTIONS RELATED HERETO. LANDLORD AND TENANT ACKNOWLEDGE THE DELAY, EXPENSE AND UNCERTAINTY RELATING TO A JURY TRIAL INVOLVING A COMPLEX COMMERCIAL LEASE AS A BASIS FOR THIS PARAGRAPH.**

**27.     Estoppel Certificates.** Tenant and Landlord shall at any time, upon the request of the other party, execute, acknowledge and deliver a statement in writing certifying that this Lease is unmodified and in full force and effect (or if modified stating the nature of such modification and certifying that this Lease as modified is in full force and effect), the dates to which the rent and other charges are paid in advance, if any, and acknowledging that there are not, to the party's knowledge, any uncured defaults on the part of the other party, or specifying such defaults if any are claimed. The parties hereto agree that any such statement may be relied upon by any prospective purchaser or encumbrancer of all or any portion of the Project or the land or any assignee or sublessee of Tenant. A party's failure to deliver such statement within ten (10) days after request for the same, shall be conclusive that: (a) this Lease is in full force and effect; (b) this Lease has not been modified or amended other than expressly stated; (c) there are no uncured defaults in Landlord's performance; and (d) not more than one (1) month's rent or other charge has been paid in advance.

**28.     Environmental Requirements.**

        (a)     No Hazardous Materials. Tenant shall not cause, permit or allow any Hazardous Material (other than standard cleaning materials) to be brought upon, stored, used, processed, generated, disposed of on or released or discharged in or about the Premises or the Project by Tenant, its agents, employees, contractors or invitees without the prior written consent of Landlord, which Landlord shall not unreasonably withhold provided Tenant demonstrates to Landlord's satisfaction that such Hazardous Material is necessary or useful to Tenant's business and will be used, kept and stored in a manner that complies with all laws regulating any such Hazardous Material so brought upon or used or kept in or about the Premises or the Project, including any and all Environmental Laws (defined below). Tenant agrees that its operations or activities conducted at the Premises or the Project shall not violate any local, state or federal law, rule or regulation or duty under applicable common law pertaining to human health, safety, protection of the environment, natural resources, conservation, waste management or pollution, including any and all Environmental Laws.

        (b)     Hazardous Material. As used herein, the term "Hazardous Material" means any pollutant or contaminant (including, without limitation, asbestos or asbestos-containing materials, lead based paint, polychlorinated biphenyls, petroleum or petroleum products or byproducts, flammable

{1522.1/PGOR/06283442.27}

explosives, radioactive materials or infectious substances), toxic substance, regulated substance, hazardous waste, hazardous material, hazardous substance, oil, hydrocarbon, asbestos or similar item as defined in or pursuant to the Resource Conservation and Recovery Act, as amended, the Comprehensive Environmental Response, Compensation, and Liability Act, as amended, the Federal Clean Water Act, as amended, the Safe Drinking Water Act, as amended, the Federal Water Pollution Control Act, as amended, the Texas Water Code, as amended, the Texas Solid Waste Disposal Act, as amended, the Emergency Planning and Community Right to Know Act, the Endangered Species Act, the Toxic Substances Control Act , the Occupational Safety and Health Act, the Hazardous Materials Transportation Act or any other federal, state or local environmental or health and safety related, constitutional provisions, law, regulation, ordinance, rule, or bylaw, whether existing as of the date hereof, previously enforced or subsequently enacted (collectively the "Environmental Laws").

(c)     Notice of Certain Events and Curative Actions. Tenant shall immediately advise Landlord in writing of (i) any governmental or regulatory actions instituted or threatened under any Environmental Law affecting the Tenant or the Premises; (ii) all claims made or threatened by any third party against Tenant or the Premises or the Project relating to damage, contribution, cost recovery, compensation, loss or injury resulting from any Hazardous Materials; (iii) the discovery of any occurrence or condition on any real property adjoining or in the vicinity of the Premises that could cause the Premises or the Project to be classified in a manner which may support a claim under any Environmental Law; and (iv) the discovery of any occurrence or condition on the Premises or the Project or any real property adjoining or in the vicinity of the Premises or the Project which could subject Tenant, the Premises or the Project to any restrictions in ownership, occupancy, transferability or use of the Premises under any Environmental Law. Landlord may elect to join and participate in any settlements, remedial actions, legal proceedings or other actions initiated in connection with any claims under any Environmental Law and to have its reasonable attorneys' fees paid by Tenant. At its sole cost and expense, Tenant agrees when applicable or upon request of Landlord to promptly and completely cure and remedy every violation of an Environmental Law caused by Tenant, its agents, employees, contractors or invitees.

(d)     Environmental Review. In the event reasonable evidence exists of the occurrence or existence of the violation of any Environmental Law or the presence of any Hazardous Material on the Premises or the Project, caused by Tenant, its agents, employees, contractors, or invitees, Landlord (by its officers, employees and agents) at any time and from time to time may contract for the services of persons (the "Site Reviewers") to perform environmental site assessments ("Site Assessments") on the Premises, the Project or neighboring properties for the purpose of determining whether there exists on the Premises, the Project or neighboring properties any environmental condition which could reasonably be expected to result in any liability, cost or expense to Landlord. The Site Reviewers are hereby authorized to enter upon the Premises for purposes of conducting Site Assessments. The Site Reviewers are further authorized to perform both above and below the ground testing for environmental damage or the presence of Hazardous Materials and such other tests on the Premises, Project or neighboring properties as may be necessary to conduct the Site Assessments in the reasonable opinion of the Site Reviewers. Tenant agrees to supply to the Site Reviewers such historical and operational information regarding the Premises as may be reasonably requested by the Site Reviewers to facilitate the Site Assessments and will make available for meetings with the Site Reviewers appropriate personnel having knowledge of such matters. The results of Site Assessments shall be furnished to Tenant upon request. The cost of performing such Site Assessments shall be paid by Tenant.

(e)     **ENVIRONMENTAL INDEMNITY. IN ADDITION TO, AND WITHOUT LIMITATION ON THE GENERAL INDEMNITY OBLIGATIONS OF TENANT UNDER THIS LEASE, TENANT SPECIFICALLY AGREES THAT IT SHALL INDEMNIFY, DEFEND AND HOLD LANDLORD HARMLESS FROM ANY AND ALL CLAIMS, JUDGMENTS, DAMAGES, PENALTIES, FINES, COSTS, LIABILITIES OR LOSSES (INCLUDING, WITHOUT LIMITATION, DIMINUTION IN VALUE OF THE**

**PREMISES OR THE PROJECT, DAMAGES FOR THE LOSS OR RESTRICTION ON USE OF RENTABLE OR USABLE SPACE OR OF ANY AMENITY OF THE PREMISES OR THE PROJECT, AND SUMS PAID IN SETTLEMENT OF CLAIMS, ATTORNEYS' FEES, CONSULTANT FEES AND EXPERT FEES) WHICH ARISE DURING OR AFTER THE TERM AS A RESULT OF ANY BREACH BY TENANT OF ITS OBLIGATIONS UNDER THIS PARAGRAPH OR ANY CONTAMINATION OF THE PREMISES OR THE PROJECT RESULTING FROM THE PRESENCE OF HAZARDOUS MATERIALS ON OR ABOUT THE PREMISES CAUSED OR PERMITTED BY TENANT. THIS INDEMNIFICATION OF LANDLORD BY TENANT INCLUDES, WITHOUT LIMITATION, COSTS INCURRED IN CONNECTION WITH ANY INVESTIGATION OF SITE CONDITIONS OR ANY CLEAN UP, REMEDIAL, REMOVAL OR RESTORATION WORK REQUIRED BY ANY FEDERAL, STATE OR LOCAL GOVERNMENTAL AGENCY OR POLITICAL SUBDIVISION BECAUSE OF HAZARDOUS MATERIALS PRESENT IN THE SOIL OR GROUND WATER ON OR UNDER THE PREMISES OR THE PROJECT. WITHOUT LIMITING THE FOREGOING, IF THE PRESENCE OF ANY HAZARDOUS MATERIAL ON THE PREMISES OR THE PROJECT CAUSED OR PERMITTED BY TENANT RESULTS IN ANY CONTAMINATION OF THE PREMISES OR THE PROJECT, TENANT SHALL PROMPTLY TAKE ALL ACTIONS AT ITS SOLE COST AND EXPENSE AS ARE NECESSARY TO RETURN THE PREMISES OR THE PROJECT TO THE CONDITION EXISTING PRIOR TO THE INTRODUCTION OF ANY SUCH HAZARDOUS MATERIAL TO THE PREMISES, PROVIDED THAT LANDLORD'S APPROVAL OF SUCH ACTIONS SHALL FIRST BE OBTAINED. TENANT FURTHER AGREES TO DEFEND LANDLORD, ITS AGENTS, EMPLOYEES, AND ASSIGNS IN ANY ADMINISTRATIVE OR JUDICIAL PROCEEDING COMMENCED BY PRIVATE INDIVIDUALS OR GOVERNMENTAL ENTITIES SEEKING RECOVERY OF DAMAGES FOR PERSONAL INJURY OR PROPERTY DAMAGE, OR RECOVERY OF CIVIL PENALTIES OR FINES ARISING OUT OF, CONNECTED WITH, OR RELATING TO ANY BREACH BY TENANT OF ITS OBLIGATIONS UNDER THIS PARAGRAPH OR ANY CONTAMINATION OF THE PREMISES OR THE PROJECT RESULTING FROM THE PRESENCE OF HAZARDOUS MATERIALS ON OR ABOUT THE PREMISES OR THE PROJECT CAUSED OR PERMITTED BY TENANT. THE FOREGOING INDEMNITY SHALL SURVIVE THE EXPIRATION OR EARLIER TERMINATION OF THIS LEASE.**

     **29.**    **Rules and Regulations**. Tenant shall, at all times during the Lease Term and any extension thereof, comply with all reasonable rules and regulations at any time or from time to time established by Landlord covering use of the Premises and the Project. The current rules and regulations are attached hereto as Exhibit "D" and Exhibit "F." In the event of any conflict between said rules and regulations and other provisions of this Lease, the other terms and provisions of this Lease shall control. Landlord shall not have any liability or obligation for the breach of any rules or regulations by other tenants in the Project.

     **30.**    **Security Service**. Tenant acknowledges and agrees that, while Landlord may patrol the Project, Landlord is not providing any security services with respect to the Premises and that Landlord shall not be liable to Tenant for, and Tenant waives any claim against Landlord with respect to, any loss by theft or any other damage suffered or incurred by Tenant in connection with any unauthorized entry into the Premises or any other breach of security with respect to the Premises.

     **31.**    **Force Majeure**. Landlord shall not be held responsible for delays in the performance of

{1522.1/PGOR/06283442.27}

its obligations hereunder when caused by strikes, lockouts, labor disputes, acts of God, inability to obtain labor or materials or reasonable substitutes therefor, governmental restrictions, governmental regulations, governmental controls, delay in issuance of permits, enemy or hostile governmental action, civil commotion, fire or other casualty, and other causes beyond the reasonable control of Landlord ("Force Majeure").

**32.   Entire Agreement**. This Lease constitutes the complete agreement of Landlord and Tenant with respect to the subject matter hereof. No representations, inducements, promises or agreements, oral or written, have been made by Landlord or Tenant, or anyone acting on behalf of Landlord or Tenant, which are not contained herein, and any prior agreements, promises, negotiations, or representations are superseded by this Lease. This Lease may not be amended except by an instrument in writing signed by both parties hereto.

**33.   Severability**. If any clause or provision of this Lease is illegal, invalid or unenforceable under present or future laws, then and in that event, it is the intention of the parties hereto that the remainder of this Lease shall not be affected thereby. It is also the intention of the parties to this Lease that in lieu of each clause or provision of this Lease that is illegal, invalid or unenforceable, there be added, as a part of this Lease, a clause or provision as similar in terms to such illegal, invalid or unenforceable clause or provision as may be possible and be legal, valid and enforceable.

**34.   Brokers**. Tenant represents and warrants that it has dealt with no broker, agent or other person in connection with this transaction and that no broker, agent or other person brought about this transaction, other than the Broker, if any, set forth on the first page of this Lease, and Tenant agrees to indemnify and hold Landlord harmless from and against any claims by any other broker, agent or other person claiming a commission or other form of compensation by virtue of having dealt with Tenant with regard to this leasing transaction. Lessor represents that some of its partners and/or owners are Texas licensed Real Estate Brokers and Agents

**35.   Notices**. All notices or communications required or permitted to be given under this Lease shall be in writing and shall be transmitted by (a) personal delivery, (b) nationally recognized overnight courier service, (c) certified or registered mail, return receipt requested, postage prepaid, or (iv) electronic mail, along with a secondary form of transmission. Except where otherwise expressly provided to the contrary, all notices and communications shall be deemed to have been given and received by a party on (i) the date of delivery if transmitted by personal delivery, (ii) the first business day after the date of posting if delivered by a nationally recognized overnight courier service, (iii) three (3) days after the date of posting if transmitted by certified or registered mail, or (iv) if by electronic mail, the earlier of the date of written reply by the recipient or confirmation from the recipient or the deemed date of delivery of the secondary form of transmission.

Any notice to Tenant shall be sent to Tenant at the Premises and may include the email address next to Tenant's signature below. Any notice to Landlord shall be sent to Landlord at P.O. Box 522541, El Paso, Texas 79952, Email: ptgordon@vistastarinc.com and manager@vistastarinc.com. Landlord may by notice given aforesaid change its address for all subsequent notices.

**36.   Miscellaneous.**

(a) Any payments or charges due from Tenant to Landlord hereunder shall be applied to any outstanding charges on the Tenants account as determined in the sole discretion of the Landlord.

(b) If and when included within the term "Tenant", as used in this instrument, there is more than one person, firm or corporation, each shall be jointly and severally liable for the obligations of Tenant.

(c) This Lease may be executed in any number of counterparts, by original, electronic, scanned or faxed signature, each of which shall be deemed to be an original and all of which shall constitute one and the same agreement.

(d) Except as otherwise expressly provided in this Lease or as otherwise required by law, Landlord retains the absolute right to withhold any consent or approval.

(e) Neither this Lease nor a memorandum of lease shall be filed by or on behalf of Tenant in any public record. Landlord may in Landlord's sole discretion, prepare and file, and upon request by Landlord, Tenant will execute, a memorandum of lease.

(f) The normal rule of construction to the effect that any ambiguities are to be resolved against the drafting party shall not be employed in the interpretation of this Lease or any exhibits or amendments hereto.

(g) The submission by Landlord to Tenant of this Lease shall have no binding force or effect, shall not constitute an option for the leasing of the Premises, nor confer any right or impose any obligations upon either party until execution of this Lease by both parties.

(h) Words of any gender used in this Lease shall be held and construed to include any other gender, and words in the singular number shall be held to include the plural, unless the context otherwise requires. The captions inserted in this Lease are for convenience only and in no way define, limit or otherwise describe the scope or intent of this Lease, or any provision hereof, or in any way affect the interpretation of this Lease.

**(i) CONSTRUCTION AND INTERPRETATION OF THIS LEASE SHALL BE GOVERNED BY THE LAWS OF THE STATE OF TEXAS, EXCLUDING ANY PRINCIPLES OF CONFLICTS OF LAWS. LANDLORD AND TENANT CONSENT TO EXCLUSIVE JURISDICTION AND VENUE IN EL PASO COUNTY, TEXAS.**

(j) Time is of the essence as to the performance of Tenant's obligations under this Lease.

(k) All exhibits and addenda attached hereto are hereby incorporated into this Lease and made a part hereof. In the event of any conflict between such exhibits or addenda and the terms of this Lease, such exhibits or addenda shall control.

(l) In the event either party hereto initiates litigation to enforce the terms and provisions of this Lease, the non-prevailing party in such action shall reimburse the prevailing party for its reasonable attorneys' fees, filing fees, and court and other costs associated with such litigation or dispute. Without limitation on the foregoing, Tenant agrees that should Landlord ever file a forcible detainer action or a forcible entry and detainer action, Landlord shall be entitled to its reasonable attorney' fees and costs in such action, and Landlord shall not be required to give Tenant written notice to vacate or any other notice in order to recover such attorneys' fees and costs as provided in Section 24.006 of the Texas Property Code, as amended, or similar statutes.

**37.     Landlord's Lien/Security Interest**. Tenant hereby grants Landlord a security interest, and this Lease constitutes a security agreement, within the meaning of and pursuant to the Uniform Commercial Code of the state in which the Premises are situated as to all of Tenant's property situated in, or upon, or used in connection with the Premises (except merchandise sold in the ordinary course of business) as security for all of Tenant's obligations hereunder, including, without limitation, the obligation to pay rent. Such personality thus encumbered includes specifically all trade and other fixtures for the purpose of this Paragraph and inventory, equipment, contract rights, accounts receivable and the proceeds thereof. In order

{1522.1/PGOR/06283442.27}

to perfect such security interest, Tenant shall execute such financing statements and file the same at Tenant's expense at the state and county Uniform Commercial Code filing offices as often as Landlord in its discretion shall require; and Tenant hereby irrevocably appoints Landlord its agent for the purpose of executing and filing such financing statements on Tenant's behalf as Landlord shall deem necessary.

38.  **Security Deposit.** The Security Deposit shall be held by Landlord as security for the performance of Tenant's obligations under this Lease. The Security Deposit is not an advance rental deposit or a measure of Landlord's damages in case of Tenant's default. Upon each occurrence of an Event of Default, Landlord may use all or part of the Security Deposit to pay delinquent payments due under this Lease, and the cost of any damage, injury, expense or liability caused by such Event of Default, without prejudice to any other remedy provided herein or provided by law. Tenant shall pay Landlord on demand the amount that will restore the Security Deposit to its original amount. Landlord's obligation respecting the Security Deposit is that of a debtor, not a trustee; no interest shall accrue thereon. The Security Deposit shall be the property of Landlord, but shall be paid to Tenant when Tenant's obligations under this Lease have been completely fulfilled. Landlord shall be released from any obligation with respect to the Security Deposit upon transfer of this Lease and the Premises to a person or entity assuming Landlord's obligations under this Paragraph.

39.  **Sale by Landlord.** The term "Landlord" in this Lease shall mean only the owner, for the time being of the Premises. In the event of any sale of the Project or the Building by Landlord, or any part thereof, Landlord shall be and is hereby entirely freed and relieved of all liability under any and all of its covenants and obligations contained in or derived from this Lease arising out of any act, occurrence or omission occurring after the consummation of such sale; and the purchaser, at such sale or any subsequent sale of the Project or the Building shall be deemed, without any further agreement between the parties or their successors in interest or between the parties and any such purchaser, to have assumed and agreed to carry out any and all of the covenants and obligations of Landlord under this Lease. Furthermore, in the event of a sale or conveyance by Landlord of the Project or the Building, this Lease shall not be affected by any such sale, and Tenant agrees to attorn to the purchaser thereof.

40.  **Confidentiality.** Tenant agrees that except as may be required by law, it shall not, without the prior written consent of Landlord, make any public announcement about any of the terms, conditions, or provisions of this Lease, or modifications thereof, including without limitation, the Base Rent, Operating Expenses or other amounts due under this Lease (including, but not limited to reporting services such as "Co-Star", "Loop Net" or broker database). Tenant shall not transmit this Lease or any of the information contained in this Lease to any third party except Tenant's counsel, consultants, actual or prospective lenders and purchasers, and other advisors engaged to help Tenant or such lenders or purchasers in connection with this Lease pursuant to this Lease and/or any financing or refinancing for Tenant (collectively, the "Permitted Parties"), on a need-to-know basis, provided such Permitted Parties are advised of the confidentiality and nondisclosure obligations of Landlord and agree to be bound thereby. Tenant agrees to indemnify and hold Landlord harmless from and against any actual loss, injury, damage, claim, lien, cost or expenses, including attorneys' fees, arising from a breach of the foregoing confidentiality agreement. The covenants set forth in this Paragraph shall survive the termination or closing of this Lease.

41.  **Addendums.** The following addendums (if checked) are attached hereto and incorporated herein for all purposes (check as applicable):

    [ ]  Cost of Living Increase Addendum
    [ ]  Renewal Option Addendum
    [X]  Guaranty(s)
    [ ]  Construction Addendum
    [ ]  Broker Agreement

EXECUTION COPY

### 42.    Additional Provisions.

(a) Landlord agrees to complete the following repairs to the Leased Premises.

  (i)   Repair the existing lighting in the office and warehouse currently serving the premises.
  (ii)  Repaint the restrooms in the office area.
  (iii) Service the HVAC Systems servicing the office areas.

REPAIR ~~TWO~~ DOCK DOORS
THREE

[Signature page follows]

IN WITNESS WHEREOF, Landlord and Tenant have executed this Lease as of the day and year first above written.

**LANDLORD:**

Scot Properties, Ltd
By: Hapfam, Inc., General Partner

By: _____
Name: *Patrick Gordon*
Title: *President*

Address:
    Scot Properties, Ltd.
    P.O. Box 522541
    El Paso, Texas 79952
Email: ptgordon@vistastarinc.com
       manager@vistastarinc.com

**TENANT:**

Advanced Transportation Services, Inc.

By: _____
Name: ABRAHAM WARDY
Title: OWNER

Address: 1477 Lomaland, Suite D10
        El Paso, Texas 79935

Email:

ATS.Wardy@gmail.com

February 28, 2018 – Advanced Transportation Services

## Exhibit "A"

## PREMISES

Outlined in Red
(Not to Scale – For Location Reference Only)



February 28, 2018 – Advanced Transportation Services                                    EXECUTION COPY

## Exhibit "B"

## PROJECT

Trans Am Plaza



February 28, 2018 – Advanced Transportation Services                    EXECUTION COPY

## Exhibit "B-1"

## PROJECT LAND AND IMPROVEMENTS DESCRIPTION

A portion of Lot 3, Block 14, VISTA DEL SOL "UNIT TEN" REPLAT, an addition to the City of El Paso, El Paso County, Texas, according to the plat thereof on file, in Volume 39, Page 21, Real Property Records, El Paso County, Texas, being more particularly described by metes and bounds as follows:

Beginning at a point on the westerly right of way line of Lomaland Drive and being located North 15°30'01" East a distance of 655.27 feet, then North 74°30' West a distance of 45.00 feet, then northerly along a curve to the left an arc distance of 161.07 feet; curve having a radius of 1193.44 feet, a central angle of 7°43'59", and a long chord bearing North 11°37'02" East a distance of 160.95 feet; from a City of El Paso Monument at the point of intersection to the center line of said Lomaland Drive with the center line of Pelicano Drive in El Paso County, Texas:

Thence North 77°02'55" West a distance of 770.30 feet;

Thence North 11°06'05" East a distance of 565.00 feet;

Thence South 78°53'55" East a distance of 189.75 feet;

Thence South 76°10'00" East a distance of 396.25 feet to a point on said westerly right of way line;

Thence southerly along said right of way line, being a curve to the right, an arc distance of 606.51 feet to the point of beginning; curve having a radius of 1193.44 feet, a central angle of 29°07'04" and a long chord bearing South 6°47'30" East a distance of 600.00 feet.

Described parcel lies within Lot 3, Block 14 of Vista del Sol Subdivision, Unit 10 in said El Paso County, and contains 400092.31 square feet equal to 9.185 acres.

{1522.1/PGOR/06283442.27}

February 28, 2018 – Advanced Transportation Services          EXECUTION COPY

### Exhibit "C"
### INSURANCE CERTIFICATE EXAMPLE

*ACORD* **CERTIFICATE OF LIABILITY INSURANCE**

| DATE (MM/DD/YYYY) |
|---|
| 3/31/2017 |

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: Amanda Stephenson | | |
|---|---|---|---|
| USI Southwest CL El Paso | PHONE (A/C, No, Ext): 915 534-9449 | FAX (A/C, No): | |
| 2505 E Missouri Ave | E-MAIL ADDRESS: Amanda.Stephenson@usi.com | | |
| El Paso, TX 79903 | INSURER(S) AFFORDING COVERAGE | | NAIC # |
| 915 544-3111 | INSURER A: Insurance Company | | XXXXX |
| INSURED | INSURER B: Insurance Company | | XXXXX |
| TENANT NAME | INSURER C: Insurance Company | | XXXXX |
| TENANT ADDRESS | INSURER D: Insurance Company | | XXXXX |
| CITY, ST ZIP | INSURER E: | | |
| | INSURER F: | | |

| COVERAGES | CERTIFICATE NUMBER: | REVISION NUMBER: |
|---|---|---|

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSR | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | COMMERCIAL GENERAL LIABILITY | X | X | XXXXXXXXX | 04/01/2017 | 04/01/2018 | EACH OCCURRENCE | $1,000,000 |
| | CLAIMS-MADE X OCCUR | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $300,000 |
| | | | | | | | MED EXP (Any one person) | $10,000 |
| | | | | | | | PERSONAL & ADV INJURY | $1,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | GENERAL AGGREGATE | $2,000,000 |
| | POLICY X PROJECT X LOC | | | | | | PRODUCTS - COMP/OP AGG | $2,000,000 |
| | OTHER: | | | | | | | $ |
| D | AUTOMOBILE LIABILITY | X | X | XXXXXXXXX | 04/01/2017 | 04/01/2018 | COMBINED SINGLE LIMIT (Ea accident) | $1,000,000 |
| | X ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | ALL OWNED AUTOS SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | X HIRED AUTOS X NON-OWNED AUTOS | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| B | UMBRELLA LIAB X OCCUR | X | X | XXXXXXXXX | 04/01/2017 | 04/01/2018 | EACH OCCURRENCE | $1,000,000 |
| | EXCESS LIAB CLAIMS-MADE | | | | | | AGGREGATE | $1,000,000 |
| | DED X RETENTION $0 | | | | | | | $ |
| C | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY Y / N | | X | XXXXXXXXX | 04/01/2017 | 04/01/2018 | X PER STATUTE OTHER | |
| | ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? N | N/A | | | | | E.L. EACH ACCIDENT | $1,000,000 |
| | (Mandatory in NH) If yes, describe under | | | | | | E.L. DISEASE - EA EMPLOYEE | $1,000,000 |
| | DESCRIPTION OF OPERATIONS below | | | | | | E.L. DISEASE - POLICY LIMIT | $1,000,000 |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)

RE: LOCATION

The General Liability & Business Auto policies include an additional insured endorsement that provides additional insured status to the certificate holder, LANDLORD ENTITY and Scot Property Management, Inc. and their subsidiaries, related entities, partners, officers, directors and employees.

(See Attached Descriptions)

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| LANDLORD ENTITY and Scot Property Management, Inc. 4687 N Mesa, Suite 200 El Paso, TX 79912 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. AUTHORIZED REPRESENTATIVE |

© 1988-2014 ACORD CORPORATION. All rights reserved.

ACORD 25 (2014/01)          **1 of 2**          The ACORD name and logo are registered marks of ACORD

{1522.1/PGOR/06283442.27}

## DESCRIPTIONS (Continued from Page 1)

The General Liability, Business Auto & Workers' Compensation policies include a waiver of subrogation endorsement in favor of the same.

The General Liability, Business Auto & Workers' Compensation policies include an endorsement providing that 30 days notice of cancellation (or coverage change) will be furnished to the certificate holder, LANDLORD ENTITY and Scot Property Management, Inc. and their subsidiaries, related entities, partners, officers, directors and employees except for 10 days notice for nonpayment of premium.
The Umbrella Policy is Follow Form.



SAGITTA 25.3 (2014/01)    2  of 2

{1522.1/PGOR/06283442.27}

## Exhibit "D"

## RULES AND REGULATIONS

1.      Tenant shall not place or maintain any merchandise, vending machines or other articles in any vestibule or entry of the Premises, outside the Premises or in the Common Areas.

2.      Tenant shall store garbage, trash, rubbish and other refuse in rat-proof and insect-proof containers inside the Premises or at such other location as directed by Landlord. Tenant shall remove the same frequently and regularly, subject to the direction of Landlord by such means and methods and at such times and intervals as are designated by Landlord, all at Tenant's cost.

3.      Tenant shall not permit any excessive noise, audible sound system or objectionable visible advertising medium outside or within the Premises.

4.      Tenant shall keep all mechanical equipment free of vibration and noise, and in good working order and condition.

5.      Tenant shall not commit a nuisance upon the Premises, and shall not permit waste or cause odors to emanate or be dispelled from the Premises or in the Common Areas.

6.      Tenant shall not solicit business in the Common Areas nor distribute advertising matter in or upon the Common Areas.

7.      Tenant shall not permit the loading or unloading or the parking or standing of vehicles (including delivery vehicles) outside any area designated therefor, nor permit any use of vehicles which will interfere with the use of the Common Areas in the Project or interfere with traffic flow, nor permit its employees to park anywhere in the Project other than those areas designated from time to time by Landlord as "employee parking areas". Unless otherwise designated by Landlord, all parking in the Project shall be used on a non-exclusive basis with other tenants and patrons and guests in the Project. Tenant shall not store vehicles or trailers in the Common Areas. All vehicles in the Common Areas shall be functioning and used only for Tenant's business.

8.      Tenant shall not place a load on any floor in the Premises or Project which exceeds the floor load per square foot which such floor was designed to carry.

9.      Landlord shall have the exclusive right to use all or part of the roof, side and rear walls of the Premises and the Building for any purpose, including but not limited to erecting signs or other structures on or over all or any part of the same, erecting scaffolds and other aids to the construction and installation of the same, and installing, maintaining, using, repairing, and replacing pipes, ducts, conduits and wires leading through, to or from the Premises and serving other parts of the Project in locations which do not materially interfere with Tenant's authorized use of the Premises.

10.     Tenant shall have no right whatsoever to the exterior walls or the roof of the Premises or the Building or any portion of the Project outside the Premises, except as otherwise provided in this Lease. Tenant shall not install or place storage sheds, pods, storage containers or other improvements outside the Premises or in the Common Areas. All of Tenant's property must be stored inside the Premises.

11.     Tenant shall make no use of the Premises or the Project which would cause the premiums on the insurance carried by Landlord, if any, to be increased or which would cause such insurance to be cancelled.

{1522.1/PGOR/06283442.27}

12.     Any sidewalks, lobbies, passages and stairways shall not be obstructed or used by Tenant for any purpose other than ingress and egress to and from the Premises.

13.     Tenant shall keep in good working order (and without leaks), the kitchens and restrooms, toilets, urinals, sinks, faucets, plumbing or other service apparatus of any kind and shall only use such items for the purposes for which they were installed. Tenant shall not place rubbish, paper, rags, ashes, chemicals or other refuse or injurious substances in the drains or toilets, including those items which would cause pipes to clog. Tenant shall be responsible for any plumbing issues caused by Tenant's misuse.

14.     Tenant shall not permit dumping of waste or refuse on or about the Project or permit any Hazardous Materials to be placed in any drainage system or sanitary system in or about the Premises, Building or Common Areas.

15.     Tenant shall not impair in any way any fire safety systems relating to the Project.

16.     Neither Tenant, nor Tenant's employees, agents, invitees or contractors shall go on the roof of the Premises or the Building without Landlord's prior written consent. Tenant acknowledges that entering the roof could damage Landlord's roof warranties and Tenant shall be fully responsible for any such damages to Landlord.

17.     Tenant shall no cover or obstruct skylights, windows, doors and transoms. Tenant shall not install any window covering which would affect the exterior appearance of the Premises or the Building. Tenant shall properly maintain and clean any shades, blinds or curtains in the Premises.

18.     Tenant shall not hang, install, mount, suspend or attach anything from or to any sprinkler, plumbing, utility or other lines. If Tenant hangs, installs, mounts, suspends or attaches anything from or to any doors, windows, walls, floors or ceilings, Tenant shall repair any damage caused thereby. Tenant shall not seal the warehouse floors.

19.     Tenant, and Tenant's employees, agents and contractors shall not install electrical, signaling, telegraphic, telephonic, protective alarm or other wires, apparatus or devices to the Premises or Building, without Landlord's advance written consent. All wiring must be properly enclosed and clearly tagged at the distributing boards and junction boxes.

20.     Tenant shall not use the Building, the Premises or structures or vehicles in the Project as living or sleeping quarters.

21.     Tenant shall comply with all parking regulations promulgated by Landlord from time to time, including without limitation the following: (i) parking shall be limited to automobiles, passenger or equivalent vans, motorcycles, light four wheel pickup trucks and (in designated areas) bicycles; (ii) storage of recreational vehicles in the Project is prohibited; (iii) no vehicles shall be left in the parking lot overnight or for lengthy periods of time without Landlord's prior written approval; (iv) vehicles shall not be used for vending or any other business or other activity while parked in the parking areas; (v) tractor trailers shall be parked in areas designated for tractor trailer parking, not in dock loading and unloading areas; and (vi) all vehicles entering or parking in the parking areas shall do so at owner's sole risk and Landlord assumes no responsibility for any damage, destruction, vandalism or theft. Any vehicles which violate these parking regulations may be cited, towed at the expense of the owner, temporarily or permanently excluded from the parking areas. All vehicles shall follow Landlord's designate points of entrance and exit and turn-around and circulation routes for the Project.

22.    If at Tenant's request, Landlord consents to Tenant having a dumpster at the Project, Tenant shall locate the dumpster in the area designated by Landlord and shall keep and maintain the dumpster clean and painted with lids and doors in good working order and, at Landlord's request, locked. Tenant shall screen, at Tenant's sole cost and expense, the dumpster area at Landlord's request.

23.    If requested by Landlord, Tenant shall provide Landlord with a written identification of any vendors engaged by Tenant to perform services for Tenant at the Premises (examples: cleaners, security guards/monitors, trash haulers, telecommunications installers/maintenance).

24.    Tenant shall comply with any move-in/move-out rules provided by Landlord.

25.    Tenant shall cause all of Tenant's employees, agents and contractors to comply with these rules.

26.    Landlord reserves the right to rescind, suspend or modify any rules or regulations and to make such other rules and regulations as Landlord may from time to time determine. Notice of any action by Landlord referred to in this Paragraph, given to Tenant, shall have the same force and effect.

27.    Tenant shall promptly provide Landlord written notice of any defects in the water, lawn sprinkler, sewage, gas pipes, electrical lights and fixtures, heating apparatus, or any other service equipment affecting the Premises.

28.    Tenant shall not tamper, modify, any Building Systems, including heating, ventilation and air conditioning equipment (including HVAC or EVAP units, equipment or thermostats), including those items on the roof.

29.    Tenant shall return all keys to Landlord upon the termination of this Lease. Tenant will be charged for its failure to return all keys, including internal keys in the Premises.

30.    If Tenant has assumed responsibility for evaporative cooler maintenance with permission from Landlord, then this Paragraph shall apply. Tenant shall not permit any evaporative cooler or water lines serving such evaporative cooler to leak. Tenant shall regularly inspect and maintain any evaporative cooler to assure no leakage. Any water leaks discovered by Tenant or Landlord shall immediately be repaired by Tenant. Should Tenant not immediately repair any such leaks upon discovery by Tenant or verbal notification by Landlord, Landlord may, at Tenant's expense repair any water leaks without written notice to Tenant and Tenant shall be responsible for the cost of each repair as well as any administrative fee due to Landlord.

31.    If Tenant is a restaurant or food service(s) provider, Tenant shall additionally comply with the following items (i) through (viii) listed below. Notwithstanding the preceding sentence, Landlord reserves the right upon notice to Tenant to enter into a contract with a third party for either the maintenance, repair or services for all or any of the items listed below or other repair or maintenance costs associated with Tenant's restaurant operations. If Landlord enters into such a contract, Tenant agrees to reimburse Landlord for all costs associated with such contract within ten (10) days of a billing therefore, plus a fifteen percent (15%) fee for Landlord's overhead and administration.

(i)    Tenant shall, at its own expense, install commercial grade safeguards for the compilation of grease in the manner of installation of a G2 Grease Guard Rooftop Defense System (or equivalent system as approved).

{1522.1/PGOR/06283442.27}

(ii)    Tenant shall acquire and maintain an outdoor grease vat with regularly scheduled service pick-up times as required by need or as determined by Landlord.

(iii)   Tenant shall not cause or permit any odors, of any kind, to emanate from the Premises except as required by exterior ventilation. Tenant must construct the Premises so that odors do not escape into the interior Common Areas, if any, or other tenant's premises.

(iv)    Tenant shall be responsible for preventive maintenance costs associated with grease buildup. Tenant shall provide preventive maintenance service contracts for the following, at a minimum: (i) semi-annual contract for water jet cleaning of the sewer line from the Premises to its connection with the municipal sewer line; (ii) monthly cleaning of the grease traps in conjunction with daily automatic enzyme line treatments; (iii) monthly cleaning of the grease catch pans located on the roof or elsewhere; (iv) and monthly power washing of sidewalks, under and around designated outdoor trash receptacles, and any other areas which may become stained, soiled, or unsightly.

(v)     Tenant shall under no circumstances dispose of hot grease, butter, or other flammable liquids or oils with general trash.

(vi)    Tenant shall not dispose of any trash, refuse, food, or other restaurant products into trash receptacles utilized by other tenants of the Building and the Project. Tenant shall be required to maintain and contract for refuse service separately from the Building and the Project and separately from all other tenants and to pay all of the costs of such service.

(vii)   Tenant shall be required to maintain, at a minimum, a monthly service contract for the control of pests in and around the Premises and to pay all of the costs of such service.

(viii)  Tenant shall provide copies of all required service contracts to Landlord. Landlord may, at any time, request from Tenant or service provider documentation of the work performed.

Tenant acknowledges that entering the roof could damage Landlord's roof warranties and Tenant shall be fully responsible for any such damages to Landlord.

EXECUTION COPY

## Exhibit "E"

## SIGN CRITERIA

All signs are subject to terms and conditions set out in this Lease. These criteria have been established for the purpose of assuring conformity in the Project, and for the mutual benefit of all tenants. Conformance will be strictly enforced; and any installed nonconforming or unapproved signs must be brought into conformance at the sole cost and expense of the Tenant.

No sign, banner or other item shall be installed on the exterior of the Premises or the Building without the advance written consent of Landlord, which shall be unreasonably withheld. Tenant shall be responsible for the cost of installing, maintaining and removing and signs, including the cost of repairing the Building or pylon signs.

## Exhibit "F"

## MOVE-OUT CONDITIONS

Per the terms of this Lease, Tenant shall check and address prior to move-out of the Premises the following items. Landlord expects to receive the Premises in a well maintained condition, with normal wear and tear of certain areas acceptable. The following list is designed to assist Tenant in the move-out procedures but is not intended to be all inclusive.

1. All lighting is to be placed into good working order. This includes replacement of bulbs, ballasts, and lenses as needed.

2. All truck and dock doors and dock levelers should be serviced and placed in good operating condition and order. Any damaged or dented dock, truck and personnel doors shall be replaced. All doors which are replaced need to be painted to match the Building as approved by Landlord. The warehouse floor shall be in good condition without bolts or dents or cracks. Warehouse lighting shall be in good condition with bulbs functioning.

3. All structural steel columns in the warehouse and office should be inspected for damage. Repairs of this nature must be pre-approved by Landlord prior to implementation.

4. All heating, ventilation and air-conditioning systems (HVACs and EVAPs), including the Building Systems, shall be placed in good working order and condition, including the necessary replacement of any parts to return the unit to a well maintained condition. This includes warehouse heaters and exhaust fans. Upon move-out, Landlord shall at its option, perform an inspection by Landlord's agent or mechanical contractor to determine the working order and condition of such items.

5. All holes in the sheet rock walls shall be repaired prior to move-out. Electrical outlets and switches shall be in good condition.

6. The carpets and vinyl tiles should be in a clean condition and shall not have any holes or chips. Landlord will accept normal wear on these items provided they appear to be in a maintained condition.

7. The Premises should be returned in a clean condition which would include cleaning of kitchens, break rooms, restroom areas, windows, and other portions of the space. All trash shall be removed at Tenant's expense.

8. The warehouse should be in broom clean condition with all inventories and racking removed. There should be no protrusion of anchors from the warehouse floor and all holes should be appropriately patched. If machinery/equipment is removed, the electrical lines should be properly terminated at the nearest junction box. All demising walls shall be in the same condition as on the Commencement Date of this Lease.

9. All exterior windows with cracks or breakage should be replaced.

10. All keys for all locks on the Premises, including front doors, rear doors, and interior doors shall be delivered to Landlord at the time possession of the Premises ends. If any keys are not returned, then Landlord may re-key the Premises at Tenant's expense.

11.  Items that have been added by Tenant and affixed to the Building will remain the property of Landlord, unless agreed otherwise. This included but is not limited to mini-blinds, air conditioners, electrical, water heaters, cabinets, flooring, etc.

12.  All electrical systems should be left in a safe condition that conforms to code. Bare wires and dangerous installations should be corrected prior to move-out. Any electrical systems, circuit breakers, or boxes modified or tampered with by Tenant shall be repaired or replaced at Tenant's expense.

13.  All plumbing fixtures should be in good working order, including the water heater. Faucets and toilets should not leak.

14.  All dock bumpers and dock systems shall be left in place and well secured and in good condition. The parking lot around the Premises will be in good repair. All pylons damaged by Tenant or Tenant's contractors or invitees shall be repaired at Tenant's expense.

15.  All signs shall be removed and the Building and pylons shall be properly repaired.

February 28, 2018 – Advanced Transportation Services                    EXECUTION COPY

ADDENDUM I

**GUARANTY ADDENDUM**

ATTACHED TO AND A PART OF THE
LEASE AGREEMENT BETWEEN

Scot Properties, Ltd.

And

Advanced Transportation Services, Inc.

**GUARANTY**

The undersigned guarantors ("Guarantor") whether one or more, hereby jointly and severally guarantee to Scot Properties, Ltd. ("Landlord") and its successors and assigns, the full and faithful performance and observance by Advanced Transportation Services, Inc., its personal representatives, heirs, executors, successors and assigns ("Tenant"), of all terms, covenants, conditions, agreements, restrictions, and limitations of that certain Lease Agreement dated _____3/6/2018_____ by and between Landlord and Tenant for the Premises commonly referred to as 1477 Lomaland, Suite D-10 & D-8 (the "Lease") including without limitation the payment of all rent, together with the payment of all costs, attorneys' fees and other expenses incurred by Landlord in enforcing such performance and observation.

If the undersigned Guarantor is a corporation, Guarantor represents that the Board of Directors of Guarantor has, by duly authorized and adopted resolution, determined that the execution of this Guaranty may reasonably be expected to benefit, directly or indirectly, Guarantor. If the Guarantor is an individual, said Guarantor represents that he (or she) will receive substantial benefit and consideration if said Lease is entered into with Tenant.

Guarantor further covenants that: (1) the liability of the Guarantor is primary, shall not be subject to deduction for any claim or offset, counterclaim or defense which Tenant or Guarantor may have against Landlord, and Landlord may proceed against Guarantor separately or jointly, before, after or simultaneously with any proceeding against Tenant for default; (2) this Guaranty shall not be terminated or impaired in any manner whatsoever by reason of the assertion by the Landlord against Tenant of any of the rights or remedies reserved to Landlord pursuant to the provisions of this Lease, by reason of any summary or other proceeding against Tenant, or by reason of any extension of time or indulgence granted by Landlord to Tenant; (3) Guarantor expressly waives any requirement of notice of nonpayment, nonperformance or nonobservance or proof of notice or demand; and (4) this Guaranty shall be absolute and unconditional and shall remain and continue in full force and effect as to any and all renewals, extensions, amendments, additions, assignments, subleases, transfers or other modifications of the Lease. All obligations and liabilities of Guarantor pursuant to this Guaranty shall be binding on the heirs, executors, personal representatives, successors, and assigns of the Guarantor. **This Guaranty is performable in El Paso County, Texas and is governed by and construed in accordance with the laws of the State of Texas.**

**THIS IS A GUARANTY OF PAYMENT AND PERFORMACE AND NOT OF COLLECTION. IF THIS GUARANTY IS EXEUTED BY MORE THAN ONE GUARANTOR, THE OBOLIGATIONS OF EACH GUARANTOR UNDER THIS GUARANTY SHALL BE JOINT AND SEVERAL.**

**Guarantor acknowledges the delay, expense and uncertainty associated with a jury trial involving this Guaranty, and in recognition of these inherent problems the undersigned Guarantor hereby waives its rights to a jury trial and agrees that any litigation regarding this Guaranty will be tried without a jury.**

{1522.1/PGOR/06283442.27}

February 28, 2018 – Advanced Transportation Services                    EXECUTION COPY

This Guaranty shall be effective as a waiver of, and Guarantor expressly waives, any and all rights to which Guarantor may otherwise have been entitled under any suretyship laws in effect from time to time, including, (without limitation) any rights pursuant to Rule 31 of the Texas Rules of Civil Procedure, Section 17.001 of the Texas Civil Practice and Remedies Code, and Chapter 34 of the Texas Business and Commerce Code.

GUARANTOR

_____
Abe Wardy, Individually
Home Address: 12308 RED
SUN EL PASO TX 79936
Phone No. 915-726-2620
Social Security No. ████████████
Driver's License No._____

STATE OF _Texas_                       §
COUNTY OF _El Paso_                     §

BEFORE ME, the undersigned authority, a Notary Public in and for the State of _Texas_, on this day personally appeared _ATS I, INC_, known to me to be the person whose name is subscribed to the foregoing instrument acknowledged to me that he/she executed same of the purposes and considerations therein expressed.

WITNESS my hand and seal this _6th_ day of _March_, 20_18_.

┌─────────────────────────────────┐
│        ADRIANA G. RANGEL         │
│  Notary Public, State of Texas   │
│    Comm Expires 05-01-2020       │
│     Notary ID 12650447-0         │
└─────────────────────────────────┘

_____
Notary Public Signature

FIRST LEASE AMENDMENT                                                    JANUARY 28, 2020

## FIRST LEASE AMEDNEMNT

THIS FIRST LEASE AMENDMENT (the "Agreement") is entered into this 30 day of JAN, 20 2 0, by and among Scot Properties, Ltd., a Texas limited partnership ("Landlord") and Advanced Transportation Services, Inc. ("Tenant") and Abraham Wardy ("Guarantor").

## RECITALS

A.  Landlord, Tenant, and Guarantor are parties to that certain Lease Agreement dated March 6, 2018 (hereinafter referred to as the "Lease"), for the premise located at 1477 Lomaland, Suite D8-D10, El Paso, Texas 79935 (the "Premises");

B.  Landlord, Tenant, Guarantor desire to amend the Lease by decreasing the Premises to remove 1477 Lomaland, Suite D-8, El Paso, Texas, consisting of approximately 4,896 SF (the "Reduction Area").

C.  Landlord, Tenant, and Guarantor desire to renew and extend all of Tenant's duties, obligations and liabilities under the Lease, subject to the terms of the Agreement.

D.  Unless otherwise specified, capitalized terms in the Lease shall have the same meaning in this Agreement.

## AGREEMENT

In consideration of the mutual covenants herein provided, and other good and valuable consideration, the receipt of which is hereby acknowledged, the parties agree as follows:

1.  **Reduction of the Premises**.  Landlord and Tenant hereby agree to reduce the size of Premises to remove the approximately 4,896 SF located at 1477 Lomaland, Suite D-8 (defined above as the "Reduction Area") commencing February 1, 2020 and ending on the Termination Date in the Lease.  The total Premises size will reduce to be approximately 10,404 square feet, consisting of 1477 Lomaland, Suite D10, and all references to Premises under the Lease shall mean the space located at 1477 Lomaland, Suite D10.  Landlord shall not provide any allowances.

2.  **Adjustment to Tenant's Proportionate Share of Building and Project**.  Tenant's Proportionate Share of Project under the Lease is amended to be 7.40%. Tenant's Proportionate Share of Building under the Lease is amended to be 34.00%.

3.  **Base Rent and Costs**.  Beginning with the monthly rent payment due February 1, 2020, Tenant shall pay Base Monthly Rent of $2,905.70 per month ($34,868.40 per year) ("Base Rent").  Beginning with the monthly rent payment due March 1, 2020, Tenant shall pay Base Monthly Rent of $2,992.87 per month ($35,914.45 per year) as Base Rent.  Tenant shall continue to be responsible for all expenses relating to the Premises (reduced by the Reduction Area), including Taxes, Insurance, and Operating Expenses ("CAM"), payable monthly as with the original Lease.  Beginning February 1, 2020, the estimated monthly Taxes, Insurance and Operating Expenses ("CAM") payment for the Premises (reduced by the Reduction Area) shall be $1,734.00.

4.  **Past Due Balance.**  Tenant acknowledges that there is a currently a past due balance of $11,846.93. Tenant has agreed to make additional payments of $2,000.00 per week beginning February 1, 2020 toward the past due balance.  This weekly payment in in addition to the Monthly Base Rent and Costs referred to in paragraph 3 above. It will be a default under the Lease if Tenant fails to pay such past due amount as reflected in this Section 4.

5.  **Brokers.**  No other broker has been retained to act as Tenant's exclusive real estate representative in connection with the negotiation of this Agreement.  The parties acknowledge and agree that no discussions or

1

ADVANCED TRANSPORATION SERVICES, INC.          **EXHIBIT**          1477 LOMALAND, SUITE D-10

2

**FIRST LEASE AMENDMENT**                                          JANUARY 28, 2020

negotiations were had with any brokers or agents concerning this Amendment. Vista Star Realty (**"Authorized Broker"**) is the only authorized broker for Landlord. Landlord and Tenant each agree to indemnify and hold the other harmless from and against any and all claims, loss or expense (including reasonable attorneys' fees and costs) for a brokerage commission or other compensation arising out of their respective dealings with any real estate broker or agent other than the Authorized Broker. Lessor represents that some of its partners and/or owners are real estate brokers and agents licensed by the Texas Real Estate Commission.

      6.    **Abandoned Property.** If at any time during the term of this lease, Tenant abandons the Premises or any part thereof, Landlord may, at its option, enter the Premises by any means without being liable for any prosecution therefore, and without becoming liable to Tenant for damages or for any payment of any kind whatever, and may, at its discretion, as agent for Tenant, re-let the Premises, or any part thereof, for the whole or any part of the then unexpired term, and may receive and collect all rent payable by virtue of such re-letting, and, at Landlord's option, hold Tenant liable for any difference between the rent that would have been payable under this lease during the balance of the unexpired term, if this Lease had continued in force, and the net rent for such period realized by Landlord by means of such re-letting. If Landlord's right of re-entry is exercised following abandonment of the Premises by Tenant, then Landlord may consider any personal property, inventory or equipment belonging to Tenant and left on the Premises to also have been abandoned, in which case Landlord may dispose of all such personal property, inventory or equipment, in any manner Landlord shall deem proper and is hereby relieved of all liability for doing so. "Abandonment" is defined as any absence of Tenant from the Premises for five (5) consecutive days while all or any of the rent or other amounts payable and due is unpaid. Abandonment also includes a failure on the part of the Tenant to respond to telephone calls, emails or text messages regarding the leased premises, while money is owed, for a period of 5 days. Landlord is not obligated to provide notice to Tenant of the Landlord's intent to retain, destroy, deem the inventory, equipment, or remaining property to be junk, or dispose of any property left on the premises. Any notice of default, lock-out or termination of the lease shall be considered notice to Tenant of Landlord's intent to retain, destroy, deem the inventory or personal property or equipment, to be junk, or dispose of any property left on the Premises. Landlord, may, but is not required to, store any of Tenant's property away from the Premises, and charge reasonable storage fees for the property which is equal to a minimum of 50% of the rent owed under the lease or the actual storage costs incurred by Landlord, whichever is greater. Landlord may also charge as additional costs, any costs incurred by Landlord for moving the property left on site or disposing of any items or property determined to be junk, and will not be responsible for any damage or loss of property that occurs as a result of any move or disposal. Landlord, may, but is not required to, keep said stored property for a period of 30 days, in which case, Tenant will be obligated to pay all sums due under the lease as well as the storage fee, moving costs or disposal costs, prior to obtaining access to the property. This provision also applies to any items left on the premises at the end of the Term of the Lease. Landlord may retain, destroy, deem the inventory or remaining property to be junk, or dispose of any property left on the Premises in any manner, at the sole discretion of Landlord, at the end of the Term, including termination as result of Tenant's actions. Landlord shall have no responsibility for any items left on the Premises after Abandonment, termination of the Lease, or the end of the Term of the Lease.

      7.    **Governing Law.** This Agreement shall be governed by, and construed in accordance with, the laws of the State of Texas without regard to choice of law principles. Jurisdiction and venue shall be in El Paso County, Texas.

      8.    **Tenant Confirmation and Estoppel.** Tenant ratifies and confirms the terms of the Lease and that Landlord is not in default under the Lease.

      9.    **Entire Agreement.** This Agreement and the Lease contain the entire agreement of the parties concerning the subject matter of this Agreement and supersedes any prior written or oral agreement. There are no representations, agreements, arrangements, understandings, oral or written, between and among the parties relating to the subject matter contained in this Agreement that are not full expressed herein.

ADVANCED TRANSPORATION SERVICES, INC.                    1477 LOMALAND, SUITE D-10

FIRST LEASE AMENDMENT                                           JANUARY 28, 2020

10.     **Counterparts and Delivery**. This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original, and all of such counterparts shall constitute one agreement. Executed copies of this Agreement may be delivered by facsimile or email, and the Parties hereto agree to accept and be bound by facsimile signatures or scanned signatures transmitted via email hereto, which signatures shall be considered as original signatures with the transmitted Agreement having the binding effect as an original signature on an original document.

11.     **Severability**. If any clause or provision of this Agreement is illegal, invalid or unenforceable under present or future laws, then and in that event, it is the intention of the Parties.

12.     **Ratification.**   Except as modified by this Agreement, the terms and provisions of the lease Agreement are hereby ratified and affirmed.

Executed this the 30 day of JAN , 20 20 .

**"TENANT"**

Advanced Transportation Services, Inc.

By: _____
Name: _Abraham Wardy_____
Its: _____

**"LANDLORD"**

Scot Properties, Ltd.

By:_ HapFam, Inc._____
Its:_ General Partner ____

By: _____
Name: _Patrick Gordon_____
Title:_ President_____

**"GUARANTOR"**

_____
Abraham Wardy, Individually
Home Address:_ 12308 REDSUN Dr.
EL Paso, TX, 75938
Phone No._ 915-721-2620
Social Security No. ▮▮▮▮▮▮▮
Driver's License No. ▮▮▮▮▮▮▮

**FIRST LEASE AMENDMENT**                                          **JANUARY 28, 2020**

## EXHIBIT A
## CURRENT SPACE



NOTE:
EXISTING CONDITIONS HERE REVIEWED JANUARY 10, 2013.
SOME SPACES WITHIN THE BUILDING HAD LIMITED ACCESS.
DIMENSIONS ARE APPROXIMATE AND MUST BE FIELD VERIFIED
PRIOR TO ANY NEW WORK.

4

ADVANCED TRANSPORATION SERVICES, INC.                    1477 LOMALAND, SUITE D-10

**FIRST LEASE AMENDMENT**                                     JANUARY 28, 2020



EXHIBIT B
REDUCTION AREA

EXISTING CONDITIONS
2ND FLOOR PLAN

ATS RETAINS RIGHTS
FOUR ADLIC DOORS
LOCATED STE- D10

(Highlighted in Yellow)

ADVANCED TRANSPORTATION SERVICES, INC.                    1477 LOMALAND, SUITE D-10

**FIRST LEASE AMENDMENT**                                    **JANUARY 28, 2020**



EXHIBIT C
REMAINING AREA

EXISTING CONDITIONS
2ND FLOOR PLAN
1/16" = 1'-0"

6

SECOND LEASE AMENDMENT                                                          JANUARY 29, 2021

## SEDOND LEASE AMEDNEMNT

THIS SECOND LEASE AMENDMENT (the "Agreement") is entered into this __1__ day of __March__ 20__21__, by and among Scot Properties, Ltd., a Texas limited partnership ("Landlord") and Advanced Transportation Services, Inc. ("Tenant").

## RECITALS

A. WHEREAS, Landlord and Tenant are Parties to that certain Lease Agreement dated March 6, 2018, as amended by the First Lease Amendment dated January 30, 2020 (hereinafter referred to as the "Lease"), for the premise located at 1477 Lomaland, Suite D-10, El Paso, Texas 79935 (the "Premises").

B. Landlord and Tenant desire to renew and extend all of Tenant's duties, obligations and liabilities under the Lease, subject to the terms of the Agreement.

C. Unless otherwise specified, capitalized terms in the Lease shall have the same meaning in this Agreement.

## AGREEMENT

In consideration of the mutual covenants herein provided, and other good and valuable consideration, the receipt of which is hereby acknowledged, the parties agree as follows:

1.  Extension of Lease. The term provided in the Lease is hereby adjusted commencing on March 1, 2021 and shall end on February 29, 2024.

2.  Consent to Extension. Landlord and Tenant hereby approves and consents to the extension of the term of the Lease.

3.  Base Rent and Costs. Beginning with the monthly rental payment due March 1, 2021, Tenant shall pay Base Monthly Rental of $2,992.87 per month ($35,914.45 /annum) and will automatically increase by 3.00% on each annual anniversary date, based on the immediately preceding year ("Base Rent"). In addition, Tenant shall continue to be responsible for Taxes, Insurance, and common area maintenance ("CAM") as provided in the Lease Agreement.

4.  Notice. All notices under this Agreement to the parties shall be provided in following manner:

All notices or communications required or permitted to be given under this Lease shall be in writing and shall be transmitted by (a) personal delivery, (b) nationally recognized overnight courier service, (c) certified or registered mail, return receipt requested, postage prepaid, or (iv) electronic mail, along with a secondary form of transmission. Except where otherwise expressly provided to the contrary, all notices and communications shall be deemed to have been given and received by a party on (i) the date of delivery if transmitted by personal delivery, (ii) the first business day after the date of posting if delivered by a nationally recognized overnight courier service, (iii) three (3) days after the date of posting if transmitted by certified or registered mail, or (iv) if by electronic mail, the earlier of the date of written reply by the recipient or confirmation from the recipient or the deemed date of delivery of the secondary form of transmission.

Any notice to Tenant shall be sent to Tenant at the Premises. Any notice to Landlord shall be sent to Landlord at P.O. Box 522541, El Paso, Texas 79952, Email: manager@vistastarinc.com. Landlord may by notice given aforesaid change its address for all subsequent notices.

5.  Abandoned Property. If at any time during the term of this lease, Tenant abandons the Premises or

ADVANCED TRANSPORTATION SYSTEMS, INC.          **EXHIBIT 3**          1477 LOMALAND, SUITE D-10

SECOND LEASE AMENDMENT                                                                    JANUARY 29, 2021

any part thereof, Landlord may, at its option, enter the Premises by any means without being liable for any prosecution therefore, and without becoming liable to Tenant for damages or for any payment of any kind whatever, and may, at its discretion, as agent for Tenant, re-let the Premises, or any part thereof, for the whole or any part of the then unexpired term, and may receive and collect all rent payable by virtue of such re-letting, and, at Landlord's option, hold Tenant liable for any difference between the rent that would have been payable under this lease during the balance of the unexpired term, if this Lease had continued in force, and the net rent for such period realized by Landlord by means of such re-letting. If Landlord's right of re-entry is exercised following abandonment of the Premises by Tenant, then Landlord may consider any personal property, inventory or equipment belonging to Tenant and left on the Premises to also have been abandoned, in which case Landlord may dispose of all such personal property, inventory or equipment, in any manner Landlord shall deem proper and is hereby relieved of all liability for doing so. "Abandonment" is defined as any absence of Tenant from the Premises for five (5) consecutive days while all or any of the rent or other amounts payable and due is unpaid. Abandonment also includes a failure on the part of the Tenant to respond to telephone calls, emails or text messages regarding the leased premises, while money is owed, for a period of 5 days. Landlord is not obligated to provide notice to Tenant of the Landlord's intent to retain, destroy, deem the inventory, equipment, or remaining property to be junk, or dispose of any property left on the premises. Any notice of default, lock-out or termination of the lease shall be considered notice to Tenant of Landlord's intent to retain, destroy, deem the inventory or personal property or equipment, to be junk, or dispose of any property left on the Premises. Landlord, may, but is not required to, store any of Tenant's property away from the Premises, and charge reasonable storage fees for the property which is equal to a minimum of 50% of the rent owed under the lease or the actual storage costs incurred by Landlord, whichever is greater. Landlord may also charge as additional costs, any costs incurred by Landlord for moving the property left on site or disposing of any items or property determined to be junk, and will not be responsible for any damage or loss of property that occurs as a result of any move or disposal. Landlord, may, but is not required to, keep said stored property for a period of 30 days, in which case, Tenant will be obligated to pay all sums due under the lease as well as the storage fee, moving costs or disposal costs, prior to obtaining access to the property. This provision also applies to any items left on the premises at the end of the Term of the Lease. Landlord may retain, destroy, deem the inventory or remaining property to be junk, or dispose of any property left on the Premises in any manner, at the sole discretion of Landlord, at the end of the Term, including termination as result of Tenant's actions. Landlord shall have no responsibility for any items left on the Premises after Abandonment, termination of the Lease, or the end of the Term of the Lease.

      6.      Brokerage. The parties acknowledge and agree that no discussions or negotiations were had with any brokers or agents concerning this Agreement other than those set out here. Vista Star Realty, LLC ("**Authorized Broker**") is the only authorized broker for Landlord. Landlord and Tenant each agree to indemnify and hold the other harmless from and against any and all claims, loss or expense (including reasonable attorneys' fees and costs) for a brokerage commission or other compensation arising out of their respective dealings with any real estate broker or agent other than the Authorized Broker or Tenant's Authorized Broker. Lessor represents that some of its partners and/or owners are Texas licensed Real Estate Brokers and Agents.

      7.      Governing Law. This Agreement shall be governed by, and construed in accordance with, the laws of the State of Texas without regard to choice of law principles. Jurisdiction and Venue shall be in El Paso County, Texas.

      8.      Tenant Confirmation and Estoppel. Tenant ratifies and confirms the terms of the Lease and that Landlord is not in default under the Lease and Tenant is in full compliance with the terms of the Lease.

      9.      Entire Agreement. This Agreement and the Lease contain the entire agreement of the parties concerning the subject matter of this Agreement, and supersedes any prior written or oral agreement. There are no representations, agreements, arrangements, understandings, oral or written, between and among the parties relating to the subject matter contained in this Agreement that are not full expressed herein.

ADVANCED TRANSPORTATION SYSTEMS, INC.                                    1477 LOMALAND, SUITE D-10

SECOND LEASE AMENDMENT                                                    JANUARY 29, 2021

     10.     <u>Severability</u>. If any clause or provision of this Agreement is illegal, invalid or unenforceable under present or future laws, then and in that event, it is the intention of the Parties hereto that the remainder of this Agreement shall not be affected thereby. It is also the intention of the Parties to this Agreement that in lieu of each clause or provision of this Agreement that is illegal, invalid or unenforceable, there be added, as a part of this Agreement, a clause or provision as similar in terms to such illegal, invalid or unenforceable clause or provision as may be possible and be legal, valid and enforceable.

     11.     <u>Counterparts and Delivery</u>. This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. Counterparts may be delivered via facsimile, electronic mail (including pdf or any electronic signature complying with the U.S. federal ESIGN Act of 2000, e.g., www.docusign.com) or other transmission method and any counterpart so delivered shall be deemed to have been duly and validly delivered and be valid and effective for all purposes.

     12.     <u>Ratification</u>. Except as modified by this Agreement, the terms and provisions of the Lease are hereby ratified and affirmed.

Executed this the <u>1</u> day of <u>March</u>, 20 <u>21</u>.

**"TENANT"**                                          **"LANDLORD"**

**Advanced Transportation Services, Inc.**            **Scot Properties, Ltd.**

By: *Abraham Wardy*                                   By: HapFam, Inc.
    Abraham Wardy (Feb 25, 2021 15:04 MST)            Its: General Partner
Name: Abrahan
Its:
                                                   By: *P.H Go.*
                                                   Name: Patrick Gordon
                                                   Title: President

**"GUARANTOR"**

Abraham Wardy

Abraham Wardy, Individually
Home Address: 12308 Red Sun Dr
EL Paso, Texas
Phone No. 9157262620
Social Security No. ████████
Driver's License No. ████████

ADVANCED TRANSPORTATION SYSTEMS, INC.                     1477 LOMALAND, SUITE D-10

# 2021 01 - 2nd Lease Amendment ATS

**Final Audit Report**                                                                 2021-03-02

| | |
|---|---|
| Created: | 2021-02-15 |
| By: | Daisy Recio (drecio@vistastarinc.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAA5yXbikoHq9OE3Un9TTo4mu2AXpK_H8X6 |

## "2021 01 - 2nd Lease Amendment ATS" History

📄 Document created by Daisy Recio (drecio@vistastarinc.com)
   2021-02-15 - 7:43:46 PM GMT- IP address: 69.194.178.234

📧 Document emailed to Abraham Wardy (ats.wardy@gmail.com) for signature
   2021-02-15 - 7:47:31 PM GMT

📄 Email viewed by Abraham Wardy (ats.wardy@gmail.com)
   2021-02-25 - 10:55:19 PM GMT- IP address: 66.249.80.43

✍️ Document e-signed by Abraham Wardy (ats.wardy@gmail.com)
   Signature Date: 2021-02-25 - 10:58:11 PM GMT - Time Source: server- IP address: 76.183.219.205

📧 Document emailed to Patrick Gordon (ptgordon@vistastarinc.com) for signature
   2021-02-25 - 10:58:13 PM GMT

📄 Email viewed by Patrick Gordon (ptgordon@vistastarinc.com)
   2021-03-02 - 2:27:58 PM GMT- IP address: 99.60.156.165

✍️ Document e-signed by Patrick Gordon (ptgordon@vistastarinc.com)
   Signature Date: 2021-03-02 - 2:29:25 PM GMT - Time Source: server- IP address: 99.60.156.165

✔️ Agreement completed.
   2021-03-02 - 2:29:25 PM GMT

**Adobe Sign**