**IN THE UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

|  |  |
|---|---|
| In re:<br><br>Advance Transportation Services, Inc,<br><br>Debtor. | Case No. 21-30906<br><br>Chapter 11<br><br>Hon. H. Christopher Mott |

**PENSKE TRUCK LEASING CO., L.P.'S EXPEDITED MOTION FOR AN ORDER
DIRECTING THE IMMEDIATE TURNOVER OF ITS PROPERTY OR, IN THE
ALTERNATIVE, RELIEF FROM THE AUTOMATIC STAY AND WAIVER OF THE
THIRTY DAY STAY REQUIREMENT OF 11 U.S.C. § 362(e)**

Penske Truck Leasing Co., L.P. ("**Penske**"), by and through its undersigned attorneys, pursuant to 28 U.S.C. § 959(b), sections 362(d)(1) and 362(d)(2) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**"), Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and L. Rule 4001(a) of the Bankruptcy Local Rules of this United States Bankruptcy Court for the Western District of Texas ("**Court**") respectfully files this *Expedited Motion For an Order Directing the Immediate Turnover of Its Property or, in the Alternative, Relief from the Automatic Stay and Waiver of the Thirty Day Stay Requirement of 11 U.S.C. § 362(e)* ("**Motion**"), in support of this Motion relies on the Declaration of Sean McCartney ("**McCartney Declaration**") filed contemporaneously with this Motion as Exhibit 1, and respectfully states as follows:

**I. SUMMARY OF MOTION**

1.       Penske seeks an order directing Advance Transportation Services, Inc. ("**Debtor**"), or anyone in possession of Penske's vehicles formerly leased to the Debtor, to immediately

turnover such vehicles to Penske, and that expressly authorizes Penske to take all lawful action to repossess its vehicles.

2.      Penske leased approximately eighteen trucks and other vehicles to the Debtor. The Debtor repeatedly defaulted under the lease agreement by failing to pay amounts due. After attempting to work with the Debtor on a payment plan to cure past-due arrearages, the Debtor again failed to meet its payment obligations. Finally, on November 22, 2021, Penske terminated the lease and demanded the immediate return of its vehicles.  Rather than do so, the Debtor filed its chapter 11 petition on November 30, 2021 ("**Petition Date**"). Filing a bankruptcy petition does not revive a terminated agreement or create new property rights for a debtor.  The lease was terminated prepetition, and the Debtor has no legal or equitable right to possess Penske's property.

3.      The automatic stay is inapplicable in this case. The Debtor, like all debtors in possession, must manage and operate the property in its possession according to the requirements of applicable non-bankruptcy law. Here, applicable non-bankruptcy law compels the Debtor to return Penske's property, and failure to do so renders the Debtor's bankruptcy estate potentially liable for conversion. The automatic stay is simply irrelevant to the Debtor's affirmative obligation to surrender property that belongs to a third party and that the Debtor has no right to possess.

4.      To the extent this Court concludes that the Debtor's bare possession of Penske's property is an interest to which the automatic stay applies, cause exists to modify the stay to facilitate the return of Penske's property. The Debtor simply has no equitable or legal right to continue to possess Penske's property and is harming Penske every day by preventing Penske from leasing or renting the vehicles to its customers. The Debtor presumably continues to operate Penske's vehicles since the Petition Date, yet has paid Penske nothing during that time. In addition, the Debtor stopped bringing the vehicles in to Penske for regular preventative maintenance since October 31, 2021. The risk of mechanical failure is increasing, along with all of the potential harms

to the Debtor, its bankruptcy estate, Penske, and innocent third parties. Finally, the Debtor has no equity in the vehicles. They therefore cannot be used to support any reorganization.

## II. JURISDICTION AND VENUE

5.     This Court has jurisdiction pursuant to 28 U.S.C. §§ 157(b) and 1334. Venue is proper in this Western District of Texas pursuant to 28 U.S.C. § 1409. This Motion constitutes a core proceeding under 28 U.S.C. §§ 157(b).

## III. BACKGROUND

**A.     Penske Leased Vehicles to the Debtor**

6.     On or about July 7, 2016, Penske and the Debtor entered into the Vehicle Lease Service Agreement (together with all schedules, the "**Lease**"). A true and correct copy of the Lease is attached to the McCartney Declaration as "Exhibit A". McCartney Declaration at ¶ 3.

7.     Pursuant to the Lease, Penske leased the following eighteen units to the Debtor:

| Type | Unit Number |
|------|-------------|
| Leased Vans | 336598 |
| | 336597 |
| | 270819 |
| | 225103 |
| | 223596 |
| | 225102 |
| | 225104 |
| | 225101 |
| Trailer | 225765 |
| | 168717 |
| Tractors | 329183 |
| | 319732 |
| | 316029 |
| | 183519 |
| | 126906 |

| | 682164 |
| | 682162 |
| High Cube Van | 263886 |

*Id*. at ¶ 4.

**B.** **The Debtor Defaulted under the Lease and Penske Terminated the Agreement Prior to the Petition Date**

8.      Pursuant to the Lease, the Debtor was required to pay lease charges to Penske within seven days of the date of Penske's invoice via automated clearing house ("**ACH**") debits initiated by Penske. *Id*. at ¶ 5, Ex. A at 2 & 22. The Debtor repeatedly defaulted under its payment obligations in May and June 2021, during which time multiple ACH debits were rejected for insufficient funds. The total amount of the invoices issued under the Lease during this period was $50,452.08. *Id*. at ¶ 5. The Debtor's failures to pay amounts due under the Lease constitute events of default under the Lease. *See Id.* at ¶ 5, Ex. A at 3, § 13(a).

9.      Penske attempted to work with the Debtor on repayment of the unpaid balance. On or about June 18, 2021, Penske and the Debtor entered into a Payment Agreement, a copy of which is attached as "Exhibit B" to the McCartney Declaration. In the Payment Agreement, the Debtor acknowledged that it was in arrears for past due invoices for May and June 2021 in the amount of $50,452.08. *See Id.* at ¶ 6, Ex. B at 1.  Penske and the Debtor agreed that the Debtor would make catch-up payments to Penske starting on June 29, 2021 via ACH debits. *Id*.

10.      The Debtor defaulted under the Payment Agreement on September 14, 2021, when the ACH debit was rejected for insufficient funds. Over the ensuing weeks, several additional ACH debits were rejected, resulting in additional unpaid regular lease charges for September 2021. Penske notified the Debtor of its defaults via letter dated September 28, 2021 and demanded immediate payment of $51,102.35. *Id*. at ¶ 7.

11.    The Debtor subsequently made some payments to Penske in October and early November 2021.[1] *Id.* at ¶ 8. However, the Debtor also continued to accrue ongoing lease and other charges under the Lease. Between September 28, 2021 and November 12, 2021, the Debtor did not pay Penske an amount sufficient to cure the defaults that existed as of September 28, 2021 and also keep current on charges incurred over that time. *Id.* at ¶ 9.

12.    The Debtor's payments to Penske ceased entirely after November 12, 2021. The attempted ACH debits on November 19, 2021 and November 26, 2021 were rejected for insufficient funds. *Id.* at ¶ 10.

13.    The Lease provides that upon the occurrence of an event of default, Penske may immediately terminate the Lease. *Id.* at ¶ 11, Ex A at 4, § 13(b).  Following the multiple events of default described above.   Penske terminated the Lease by letter dated November 22, 2021 ("**Termination Letter**"). The Termination Letter was delivered by overnight UPS on November 23, 2021.[2] *Id.* A true and correct copy of the Termination Letter with proof of delivery is attached to the McCartney Declaration as "Exhibit C". *Id.*

14.    Immediately following an event of default, Penske may demand the immediate return of its vehicles, with or without terminating the Lease. *Id.* at ¶ 12, Ex A at 3, § 13(b). Penske demanded the immediate return of its Vehicles in the Termination Letter. *Id.* at ¶ 12, Ex C. Penske

---

[1] Several of these payments were made by check. Payment by check is not permitted under the terms of the Payment Agreement and the Lease, both of which require payment by ACH. *See Id.* at ¶ 8, Ex. A. at 22, Ex B at 1. In Penske's experience, financially distressed customers sometimes unilaterally switch to payment by check in order to "float" their payment obligations to Penske. *Id.* at ¶ 8.

[2] The Termination Letter was sent to two separate locations for the Debtor. These locations include the address listed for the Debtor in the Lease and another location Penske believed the Debtor was operating. *Id.* at ¶ 11.

also demanded the return of its Vehicles by email dated November 22, 2021, a copy of which is attached to the McCartney Declaration as "Exhibit D". *Id*. at ¶ 12, Ex. D.

15.    The Lease provides that upon termination of the Lease, the Debtor must return Penske's Vehicles to Penske.  *Id*. at ¶ 13, Ex A at 1, § 1(c).

16.    Despite Penske's repeated demands, the Debtor refused to surrender the Vehicles or pay past or ongoing amounts due under the Lease. Instead, the Debtor filed its chapter 11 bankruptcy petition on November 30, 2021. As of the Petition Date, an amount of not less than $63,262.39 was due and owing to Penske. *Id*. at ¶ 14.

17.    The Debtor has continued to use and possess fifteen of Penske's vehicles since the Petition Date, yet has paid nothing to Penske.[3] *Id*. at ¶ 15. As of December 22, 2021, the Debtor had accrued an additional $35,742.88 in post-petition charges. *Id*. at ¶ 17.

18.    Penske repeated its demand for the return of its Vehicles after the Petition Date. The Debtor has refused to return the remainder of Penske's Vehicles despite the pre-petition termination of the Lease and Penske's repeated demands for the return of its Vehicles. *Id*. at ¶ 18.

19.    In addition, the Debtor ceased bringing Penske's Vehicles in for regular preventative maintenance services, despite being obligated to do so under the Lease and weekly notices from Penske personnel. Preventative maintenance services dating as far back as October 31, 2021 have not been performed. These Vehicles remain in the Debtor's possession and, presumably, in operation on the roads.  *Id*. at ¶ 19.

---

[3] Prior to the Petition Date, the Debtor brought units 270819, 225765, and 168717 to Penske for service, and these units remain in Penske's possession. *Id*. at ¶ 16.

## IV. RELIEF REQUESTED

20.     Penske seeks entry of an order (a) directing the Debtor and any other person or entity in possession of Penske's Vehicles to immediately turnover possession of such Vehicles to Penske, and (b) permitting Penske to take all lawful action to obtain immediate possession of the Vehicles including, without limitation, by repossession, and/or judicial process.

## V. BASIS FOR REQUESTED RELIEF

21.     The automatic stay does not apply because the Debtor has no legal or equitable right to possess the Vehicles. In fact, applicable non-bankruptcy law obligates the Debtor to return Penske's property immediately. If the Court concludes that the automatic stay somehow applies in this case, cause exists to modify the automatic stay so that Penske may obtain possession of its Vehicles. The Debtor has no right to possess the Vehicles and has paid nothing for them since November 12, 2021. Meanwhile, the harm to Penske grows with each passing day its inventory remains unavailable for other customers.  The Debtor has failed to bring the Vehicles in for preventative maintenance, increasing the risk of mechanical failure and corresponding, potentially catastrophic harm to the Debtor, its creditors, Penske, and innocent third parties. Finally, the Debtor has no equity in the Vehicles. They are not necessary, or even available, for an effective reorganization.

**A.     The Automatic Stay Is Irrelevant to the Debtor's Obligation to Return Penske's Property**

22.     A debtor in possession must manage and operate the property in its possession as it would according to the requirements of applicable non-bankruptcy law.  *See* 28 U.S.C. § 959(b). Under applicable non-bankruptcy law, the Debtor became obligated to return Penske's Vehicles on November 22, 2021, when Penske terminated the Lease and demanded the return of its property.

23.     As noted above, the Lease provides that upon termination of the Lease, the Debtor becomes obligated to return Penske's Vehicles.  *Id.* at ¶ 13, Ex A at 1, § 1(c).

24.     Further, under Texas Law, revocation of a license to possess property, including a truck lease, requires the return the property, and failure to do so renders the lessee potentially liable for conversion. *See, Rente Co. v. Truckers Exp., Inc.*, 116 S.W.3d 326, 332-34 (Tex. Ct. App. 2003) (finding a claim of conversion could lie where a lessee to a truck lease retained possession of the trucks after the lessors' termination of the lease and demand for the trucks' return); *see also Lifesize, Inc. v. Chimene*, 1:16-CV-1109-RP, 2017 WL 1532609, at *1, *7, *11 (W.D. Tex. Apr. 26, 2017) (concluding that a conversion claim could lie where a former employee retained company property after the company had terminated the employment contract giving rise to the employee's rights in the property).

25.     Here, Penske terminated the Lease and demanded the Vehicles' return on November 22, 2021. Thus, the Debtor became obligated to return Penske's Vehicles on that date under the terms of the Lease and applicable non-bankruptcy law.  Pursuant to 28 U.S.C. § 959(b), a former lessee of Penske's vehicles has an affirmative obligation to return such vehicles to Penske when the lease was terminated prepetition. *In re LAX In-Flite Serv., LLC*, Case No. 21-bk-10956-NB, slip op. at 10 (Bankr. C.D. Cal. Apr. 30, 2021) ("**LAX In-Flite**").

26.     More generally, the automatic stay is inapplicable when the debtor has no legal or equitable interest in property. The filing of a Chapter 11 petition operates as a stay of "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). The definition of "property of the estate" under 11 U.S.C. § 541 encompasses all equitable and legal interests the debtor may have in property as of the commencement of the case. 11 U.S.C. § 541(a)(1); *Affiliated Computer Sys., Inc. v. Sherman (In re Kemp),* 52 B.R. 546, 550 (5th Cir. 1995). However, "there is hardly any question that an

entity which has no legal or equitable interest in the property and has nothing more but a bare possession has no interest which qualified to be the 'properties of the estate.'" *Matter of Terramar Min. Corp.*, 70 B.R. 35, 38 (Bankr. M.D. Fla. 1987); *see also In re Perl*, 811 F.3d 1120, 1130 (9th Cir. 2016) ("[T]he Sheriff's lockout did not violate the automatic stay because no legal or equitable interests in the property remained to become part of the bankruptcy estate."); *In re Monroe*, 183 B.R. 667, 669 (Bankr. D.R.I. 1995); LAX In-Flite, at 9 (no automatic stay applied when Penske terminated lease prepetition); *but see In re Las Torres Development, LLC*, 408 B.R. 876, 888 (Bankr. S.D. Tex. 2009) (bare possession of rent absolutely assigned to lender is a minimal property right included in property of bankruptcy estate when petition was filed and there had been no prior to event of default). Here, the Debtor's bankruptcy estate does not contain any legal or equitable right to possess Penske's vehicles. The automatic stay is inapplicable.

27. The Debtor is obligated to return Penske's Vehicles, notwithstanding the imposition of the automatic stay on the Petition Date. The Lease was terminated prepetition, ending all of the Debtor's legal and equitable rights in the Vehicles. As a result, the automatic stay imposed by the filing of the Debtor's bankruptcy petition does not affect the Debtor's affirmative obligation to return Penske's property or prevent Penske from repossessing its property from the Debtor or any other person or entity not entitled to such possession.

**B.      Cause Exists to Grant Penske Relief from the Automatic Stay**

28. Pursuant to 11 U.S.C. § 362(d)(1), this Court may grant relief from the automatic stay upon a showing of "cause". The Bankruptcy Code does not define the term "cause"; therefore, courts must determine when relief from stay is appropriate on a case-by-case basis. *In re Omni Lion's Run*, 578 B.R. 394, 397 (W.D. Tex. 2017) (citing *In re Reitnauer*, 152 F.3d 341, 343 n.4 (5th Cir. 1998)). The automatic stay should be lifted for cause when the property at issue is not property of the bankruptcy estate. *In re Xenon Anesthesia of Texas, PLLC*, 510 B.R. 106, 109–10

(Bankr. M.D.N.C. July 11, 2016) (cause existed to grant relief from automatic stay where the automatic stay was alleged to protect a non-debtor party and non-estate property from state court litigation).

29.     Where a debtor has only bare possession of property, including Penske trucks following termination or expiration of the relevant lease, owners of the property, including Penske, are entitled to relief from the automatic stay to proceed to enforce their rights against the property involved. *See In re Yellowstone Transportation Group, Inc.*, Case No. 21-30050, slip op. at 2–3, (Bankr. W.D. N.C. Mar. 16, 2021) (terminating automatic stay with respect to vehicles leased by Penske to debtor where lease terminated prepetition); LAX In-Flite, at 9-10 (finding that even if the automatic stay applied, cause existed to modify the automatic stay to permit Penske to repossess its vehicles when the lease was terminated prepetition); *In re Buanno Transport Company, Inc.*, Case No. 18-60283, slip op. at 3, (Bankr. N.D.N.Y. July 24, 2019) (modifying automatic stay to direct turnover of Penske vehicles and repossession of same by Penske following post-petition expiration of Penske's lease); *Terramar*, 70 B.R. at 38 (finding cause to permitting lessor to repossess its vehicles held by debtor with only bare possession of vehicles); *In re Alexandria Invs., Inc.*, 38 B.R. 781, 785 (Bankr. D. Md. 1984) (permitting lessor to evict tenant with only possession of property and without valid leasehold interest); *In re Acorn Invs.*, 8 B.R. 506, 510 (Bankr. S.D. Cal. 1981).

30.     Here, cause exists to terminate the automatic stay with respect to Penske's Vehicles. Penske properly terminated the Lease prior to the Petition Date. The Debtor has no non-bankruptcy right to continue possession of the Vehicles. The harm to Penske is increasing with each day it is unable to lease or rent the Vehicles to its customers. In addition, the harm to the Debtor's bankruptcy estate is also increasing as the Debtor is potentially liable for a conversion claim. Finally, the Debtor has failed to bring the Vehicles in for necessary preventative maintenance,

increasing the risks of mechanical failure or worse while the Vehicles are in operation. To minimize the harm to Penske, the Debtor's creditors, and innocent third parties who share the roads with these Vehicles, the Debtor or any person or entity in possession of the Vehicles should be ordered to immediately turnover possession of the Vehicles to Penske and Penske should be entitled to exercise its rights and remedies under relevant non-bankruptcy law to obtain possession of its Vehicles immediately.

**C.    The Debtor Has No Equity in the Vehicles and They Are Not Necessary for an Effective Reorganization**

31.    Section 362(d)(2) of the Bankruptcy Code provides, in relevant part,

> [o]n request of a party in interest and, after notice and hearing, the Court shall grant relief from the automatic stay provided under subsection (a) of this section such as terminating, annulling, modifying or conditioning such stay… with respect to a stay of an act against property under subsection (a) of this section if – (A) the debtor does not have an equity in such property; and (B) such property is not necessary to an effective reorganization.

11 U.S.C. § 362(d)(2).

32.    As noted above, numerous courts have concluded that bare possession does not create an interest in property of the estate.  The Lease was a true lease, and Penske is the owner of the Vehicles.  The Lease has been terminated.  Thus, the Debtor has no legal or equitable interest in the Vehicles.  Without any interest, the Debtor lacks any equity in the Vehicles and the Vehicles are not necessary for an effective reorganization.  *See Alexandria Invs., Inc.*, 38 B.R. at 785 (where debtor had merely bare possession, it lacked any equity in subject property and property was not necessary to effective reorganization).  Accordingly, Penske is entitled to relief from the automatic stay pursuant to section 362(d)(2) of the Bankruptcy Code.

33.    For the reasons set forth above, cause exists to except from the fourteen (14)-day stay provisions of Federal Rule of Bankruptcy Procedure 4001(a)(3), any interim or final order(s)

granting Penske stay relief. Absent an exception to the fourteen-day stay, Penske will suffer additional irreparable harm as set forth herein.

## VI. WAIVER OF STAY

34. To the extent the Court concludes this Motion seeks relief with respect to property of the Debtor's estate, Penske waives the thirty day stay set forth in section 362(e) of the Bankruptcy Code.

**WHEREFORE**, Penske Truck Leasing Co., L.P. respectfully requests that the Court enter an order substantially in the form of proposed order attached to this Motion as Exhibit 2 (a) directing the Debtor and any other person or entity in possession of Penske's Vehicles to immediately turnover possession of such Vehicles to Penske, (b) permitting Penske to take all lawful action to obtain immediate possession of the Vehicles including, without limitation, by repossession, and/or judicial process, and (c) granting any other such relief the Court deems just and appropriate.

Dated: December 23, 2021

FAEGRE DRINKER BIDDLE & REATH LLP

*/s/ Vincent P. Slusher*
Vincent P. Slusher
State Bar No. 00785480
Kristen L. Perry
State Bar No. 24090015
1717 Main Street, Suite 5400
Dallas, TX 75201
Telephone: (469) 357 2500
Facsimile: (469) 327 0860
vince.slusher@faegredrinker.com
kristen.perry@faegredrinker.com

AND

Joseph N. Argentina, Jr.
*(Pro Hac Vice admission pending)*
One Logan Square, Suite 2000
Philadelphia, PA 19103-6996
Tel:  (215) 988-2700
Fax: (215) 988-2757
Joseph.Argentina@faegredrinker.com

*Attorneys for Penske Truck Leasing Co., L.P.*