IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| In re | § | |
| | § | |
| ADVANCE TRANSPORTATION | § | Case No. 21-30906-HCM-11 |
| SERVICES INCORPORATED, | § | |
| Debtor. | § | |

## SMALL BUSINESS DEBTOR'S PLAN OF REORGANIZATION

TO THE HONORABLE H. CHRISTOPHER MOTT, UNITED STATES BANKRUPTCY JUDGE:

Now comes ADVANCE TRANSPORTATION SERVICES INCORPORATED the Debtor-in-Possession in these proceedings under Subchapter V of Chapter 11, Title 11, United States Code, and through its attorney E.P. BUD KIRK files this Small Business Plan of Reorganization, and would show:

### Table of Contents

I.     Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

II.    A Brief History of the Business Operations of the Debtor . . . . . . . . . . . . . . . . . . . . . 3

III.   A Liquidation Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

IV.    Projections by the Debtor of its Ability to Make Payments under this
       Plan of Reorganization . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

V.     Debts to be Dealt with by the Plan, and the Distribution Function in this Case. . . . . 7

VI.    Voting on the Plan, Objecting to the Plan, and the Confirmation Process . . . . . . . . . 9

VII.   Allowance and Disallowance of Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

VIII.  Treatment of Administrative Expense Claims, Subchapter V Trustee's Fees, and
       Priority Tax Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

IX.    Classified Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

X.     Executory Contracts and Unexpired Leases . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

XI.    General Provisions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

XII.   General Provisions:  Claims Filing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

XIII.  General Provisions:  Effect of Confirmation;  Vesting of Assets . . . . . . . . . . . . . . . 20

XIV.   General Provisions:  Treatment of Secured Claims, Attorney's Fees
       Upon Secured Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

XV.    General Provisions:  Powers Retained by the Debtor . . . . . . . . . . . . . . . . . . . . . . . 21

XVI.   General Provisions:  Duration of the Plan;  Liquidation Test;
       Subsequent Modifications . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

XVII.  General Provisions:  Timing of Payments, Pre-Payments . . . . . . . . . . . . . . . . . . . . 22

XVIII. Default . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

XIX.   Effect of this Plan on Terms and Conditions of Secured Creditors'
       Loan Documents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

XX.    Discharge . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

**Exhibits**

EXHIBIT "1"   Definitions

EXHIBIT "2"   Schedules

EXHIBIT "3"   Monthly Operating Report

EXHIBIT "4"  U.S.C. § 1141

EXHIBIT "5"  U.S.C. § 1191

EXHIBIT "6"  U.S.C. § 1129

## I. INTRODUCTION

The Debtor filed for Chapter 11 protection on November 30, 2021, in the United States Bankruptcy Court for the Western District of Texas, El Paso Division ("the Court"). The Court's jurisdiction over this case arises under 28 U.S.C. § 1334(a) and (b). If you have received this Plan of Reorganization (hereinafter "the Plan"), that is because you are believed to hold a claim against the Debtors, for which a treatment in payment is proposed in the Plan. You have a right to vote upon the Plan, which is explained below at Article VI of this Plan. If the Plan is accepted by the required number of creditors and approved by the Court, you should receive payments according to the Plan upon your allowed claim in these proceedings. In reading this Plan you should be aware that there are Definition (capitalized words that ordinarily are not capitalized) in it that may be different from everyday usage of these terms. The Definitions are gathered alphabetically in Plan Exhibit "1." You are also encouraged to consult your own attorney for advice about the acceptance or rejection of this Plan.

## II. A BRIEF HISTORY OF THE BUSINESS OPERATIONS OF THE DEBTOR

ADVANCE TRANSPORATION SERVICES INCORPORATED was formed on September 5, 2019 with the intention of taking over the business operations of a Wyoming corporation called ATSI, INC. whose registered agent ABRAHAM WARDY resided at 12308 Red Sun Dr., El Paso, Texas 79938. The business operated from a trucking depot at 1477 Lomaland, in El Paso which has about 15,000 square feet of warehouse space containing 4 offices and 3 service bays, with enough exterior parking for 20 commercial vehicles. The landlord is SCOT PROPERTIES, LTD., with whom the Debtor has already assumed the unexpired lease.

As of September 5 of 2019, the Wyoming corporation ATSI, INC. was operating a short-distances transportation company, sending trucks and trailers into El Paso County, into West Texas, into the States of New Mexico and Arizona, and sometimes into California. Although ATSI, INC. owned a handful of tractors and a few 53' dry vans, most of its fleet of commercial vehicles was leased: a set of 19 recent-vintage tractors and trailers leased from PENSKE

TRUCK LEASING, INC., and a set of about 20 older 53' dry vans (years 1997-2003) leased from EP LEASING, INC.

The Wyoming corporation, due to the popularity of names close to the start of the alphabet had never been able to register to do business in Texas—that was one of the reasons for starting a second corporation with the cumbersome name ADVANCE TRANSPORTATION SERVICES INCORPORATED. The Texas Secretary of State's Office already had a half-dozen charters granted to business using the initials ATSI, INC. or close variants of the same. The other reason for starting the new Texas corporation—with its name laboriously spelled out in full—was that a creditor of the Wyoming corporation had obtained a judgment against ATSI, INC. and had served a writ of garnishment, trapping the funds that were in ATSI, INC.'s El Paso bank account.

The garnishing creditor S.W.I.T. had taken a judgment for $450,000.00 for leases of commercial vehicles to ATSI, INC. Over time ATSI, INC. would negotiate a settlement with S.W.I.T. compromising the debt at $150,000, which sum the Texas corporation afterwards reduced, in installments, down to $70,000 as of the time this Chapter 11 case was filed. ATSI settled two other debts at roughly the same time, to CBA-World Global which is now paid down to $3,700 and BFS Capital which is now paid down to $14,000.

Several of ATSI, INC.'s creditors—lessors whose long-term ties to the debtor were not as material as S.W.I.T.'s had been—put the Texas corporation onto their books as though there were no change in corporate identity. (The landlord SCOT PROPERTIES, LTD. was one.) The Texas corporation also borrowed from new lenders who, being aware of the existence of both corporations, insisted on getting signatures as to both corporations (E ADVANCE, LLC and ON DECK CAPITAL.)

After September 5 of 2019 the Texas corporation went right on with the contracts which ATSI, INC. had formed, generally servicing them on a current basis, insofar as the conditions of

4

the pandemic permitted after March of 2020. The scope of the business—short-distance hauling—stayed the same.

The bulk of the Texas corporation's business, came over time to be going on through the vehicles leased from PENSKE TRUCK LEASING. The PENSKE fleet—still nominally under contract with the Wyoming corporation—was newer, less expensive to operate, and more reliable. The business—putting aside for the moment whether it was the Texas or the Wyoming corporation--got into accounting disputes with PENSKE, however, and those disputes culminated into a settlement agreement of sorts, in June of 2021. In the settlement, which was signed with ATSI, INC., the Debtor had to agree that it owed PENSKE arrearages of over $70,000.00, and would make up those arrearages in the near future.

The master Lease Servicing Agreement with PENSKE was the subject of still more accounting disputes in Fall of 2021. On November 22, 2021, PENSKE TRUCK LEASING, INC. formally terminated the LSA ("Lease Servicing Agreement")—a master lease agreement to which individual vehicles had been added over time.

The Texas corporation filed for Chapter 11 relief on November 20, 2021, in hopes of still exercising the options to purchase the rental vehicles that were contained in the PENSKE Lease Service Agreement. A closer look at the Settlement papers of June 2021 revealed, however, that the Debtor was not within feasible reach of any of the purchase options still afforded by the LSA. (Each of the vehicles that had been added to the LSA had to have five years of monthly payments made before the purchase option was exercisable.) PENSKE TRUCK LEASING responded to the Chapter 11 filing with a Motion to terminate the automatic stay and repossess its 19 newer vehicles on December 23, 2021. The stay was lifted by agreement so that PENSKE could peacefully repossess its vehicles on January 14, 2022. The repossessing took place without incident.

The Debtor has continued in business since using its older leased trailers, as well as

5

hiring some "owner-operators"—drivers who own their own tractors and drive on as independent contractors to had ATSI's tractors. Current demand for trucking services is strong. If it stays that way, a reorganization should be feasible.

## III. A LIQUIDATION ANALYSIS

<u>Equipment</u>. The assets of the business are depicted in the Debtor's Schedules A and B, which are hereto attached as Exhibit "2."

The initial Schedules, on their first page, listed the Debtor's bank accounts as holding $2,115.00.

<u>Land and building</u>. ADVANCE TRANSPORTATION SERVICES INCORPORATED rents its only location.

<u>Inventory</u>. As of petition date ADVANCE TRANSPORTATION SERVICES INCORPORATED had no inventory.

<u>Accounts receiveable</u>. As of petition date ADVANCE TRANSPORTATION SERVICES INCORPORATED had approximately $60,000 in accounts receivable.

<u>Bank balances</u>. As of petition date ADVANCE TRANSPORTATION SERVICES INCORPORATED had approximately $2,115.00 in its bank accounts.

<u>Intangibles</u>. ADVANCE TRANSPORTATION SERVICES INCORPORATED may have some value as a going concern, but its debts overwhelm both its assets and its stock value. Its trade name value fluctuates: following a cash outlay for advertising, there is an uptick in business volume. It is an ephemeral increase, and not a very durable intangible. The business also has some organizational value if it could be sold as a going concern. Again, the amount of debt takes away from that. The business method adopted by ADVANCE TRANSPORTATION

SERVICES INCORPORATED is not proprietary.

_Liens on the foregoing assets._  There are only a few liens upon the Debtor's assets.  E ADVANCE, LLC is owed approximately $25,000, secured by accounts receivable.  ON DECK CAPITAL, INC. is owed approximately $27,000.00 secured by accounts receiveable.

## IV. PROJECTIONS BY THE DEBTOR OF ITS ABILITY
## TO MAKE PAYMENTS UNDER THIS PLAN OF REORGANIZATION

Attached hereto as Exhibit "3" is the Debtor's most recent Monthly Operating Report, for December, 2021.  It is admittedly a small sample;  petition date was November 30, 2021.

There is a major step toward restructuring of this trucking enterprise that has to be taken before its future earnings can be considered.  There are two corporations with the common enterprise.

A companion Chapter 11 Subchapter V case was filed for the Wyoming corporation on February 25, 2022.  The Wyoming corporation's case is to be either consolidated with or jointly administered with, the Texas corporation.

## V. DEBTS TO BE DEALT WITH BY THE PLAN,
## AND THE DISTRIBUTION FUNCTION IN THIS CASE

The following is a brief sketch of the claims that are contending for payment in this case:

Priority claims:

| | |
|---|---|
| $859,461.19 | IRS (this is an estimated claim that should come down substantially as returns become filed by the accounting firm hired in the case.) |
| $2,066.44 | Texas Workforce Commission |

7

Secured claims:

| | |
|---|---|
| $32,748.23 | City of El Paso |
| $27,923.04 | On Deck Capital, Inc. |
| $6,500.00 | Scot Properties, Ltd. |
| $25,001.00 | CIT |
| $25,000.00 | E Advance Services |

General unsecured claims:

| | |
|---|---|
| $176,845.39 | Penske Truck Leasing Co., L.P. |
| $8,497.40 | EP Leasing, LLC |
| $25,000.00 | American Express |
| $9,333.33 | Bank of America |
| $9,333.33 | Bank of America |
| $9,333.33 | Bank of America |
| $14,000.00 | BFS Capital |
| $150,500.00 | Celtic Bank |
| 35,908.58 | Kabbage |
| $4,627.00 | LoanBuilder |
| $46,000.00 | Regal Capital |
| $70,000.00 | S.W.I.T. |
| $13,571.03 | Vista Star Scott Properties |
| $3,700.00 | World Global Capital |
| $29,980.00 | Yes Capital |

The treatments of these debts are specified in Articles VIII-IX, below.

The Subchapter V Trustee BRAD ODELL is to have the distribution function in this case, even if the Plan is confirmed on a consensual basis. That is because ADVANCE TRANSPORATION SERVICES INCORPORATED's management already has all the supervisory tasks they can handle. Because the distribution task is simple, and the creditors are not overly numerous, and the Trustee does not have a large support staff to maintain, the Trustee's surcharge upon the Debtors' regular Plan payment to the Trustee shall be 5%, deducted as each Debtors' payments comes in. As for his pre-confirmation fees and expenses, the Subchapter V Trustee is to submit his fee and expense application within 45 days of the Order Confirming the Plan in this case, and once his fees and expenses are approved, they shall be paid by the Debtors in six level monthly payments starting on the 15th day of the month following

8

their approval by the Court.

## VI. VOTING ON THE PLAN, OBJECTING TO THE PLAN, AND THE CONFIRMATION PROCESS

The Court has not yet confirmed this Plan. This section describes the procedures pursuant to which the Plan will or will not be confirmed.

1.     <u>Time and Place of the Hearing to Confirm the Plan.</u>

The hearing is set for _____, 2022 at _____ o'clock \_\_\_.m. in the United States Bankruptcy Court for the Western District of Texas, El Paso Division, 511 E. San Antonio Street, Fourth Floor, El Paso, Texas 79901.

2.     <u>Deadline For Voting to Accept or Reject the Plan.</u>

If you are entitled to vote to accept or reject the Plan, vote on the enclosed ballot and return the ballot in the enclosed envelope to the attorney for the Debtor, E.P. BUD KIRK, 600 Sunland Park Drive, Building Four, Suite 400, El Paso, Texas 79912.

Your ballot must be RECEIVED by 5:00 o'clock p.m. MT on _____ or it will not be counted.

3.     <u>Deadline for Objecting to the Confirmation of the Plan.</u>

Objections to the confirmation of the Plan must be filed with the Court and served upon the Debtors' attorney, E.P. BUD KIRK, at 600 Sunland Park Drive, Building 4, Suite 400, El Paso, Texas 79912, on or before 5:00 o'clock p.m. MT on _____.

If you want additional information about the Plan, you should contact the Debtors' attorney, E.P. BUD KIRK, telephone number (915) 584-3773, facsimile number (915) 581-3452, or email budkirk@aol.com.

To be confirmable, a Small Business Debtor Subchapter V Plan must meet the requirements listed in § 1191 of the Code. These include the requirements that the Plan must be proposed in good faith; that at least one impaired class of claims must accept the plan, without counting votes of insiders; the Plan must distribute to each creditor and equity interest holder at least as much as the creditor or equity interest holder would receive in a Chapter 7 liquidation case, unless the creditor or equity interest holder votes to accept the Plan; and that the Plan must be feasible. The Court must also find that creditors were adequately informed by the Debtor's history of the business, schedules of assets and debts, cash flow deposits and projections, and a liquidation analysis. These requirements are not the only requirements listed in § 1191, and they are not the only requirements for confirmation. A full copy of Code § 1191 is hereto attached as Exhibit "5."**

"Creditors" have a voice in whether a Plan of Reorganization gets confirmed. "Creditors" are those persons or entities to whom the debtor owes a debt. The debt can be one for which a timely and allowed proof of claim had been filed, or the debt can be one which the Debtor listed on his schedules D (secured claims), E (priority claims), F (general unsecured claims), or G (unexpired leases and executory contracts). Whether proof of claim is timely is discussed in this Plan at its Article VII. A proof of claim is deemed allowed until someone-- usually but not always the Debtor--files an objection to it. While the objection is pending, the creditor has no voting rights and no rights to object to the Plan. To regain those rights, the creditor must either win the objection hearing, or if the hearing will not take place prior to the Court's confirmation decision, the creditor must file a motion to have the proof of claim "estimated" by the Court for voting purposes or for the purposes of objecting to the Plan.

Those creditors who do not have voting rights, are those holding administrative claims under 11 U.S.C. § 503, and those holding priority claims for taxes under 11 U.S.C. § 507(a)(8). Their only means of opposing a Plan, is to object to confirmation by pointing out why the Plan or Plan proponent does not fulfill the requirements of 11 U.S.C. § 1191. If they do not object, then

---

** Section 1191 refers to § 1129 for much of its content, and § 1129 is also appended hereto.

they are deemed to have accepted the Plan.

Claims for administrative expenses and priority taxes are not supposed to be assigned to Classes in a Chapter 11 Plan, because Classes imply voting rights. Some differentiation among non-classified claims is useful, however, because their required treatment under the Bankruptcy Code can be different. For instance, administrative claims are supposed to be paid in full, or according to strict contract terms, when confirmation occurs.*** Priority taxes, in contrast, must be paid in full within five years of petition date, with interest at the prevailing rate in the tax law. *** In order to describe and arrange these non-voting claims for Plan treatment, this Plan will refer to them as "non-voting claims, Group A" for administrative claims, and "non-voting claims, Group B" for priority tax claims.

For creditors with voting rights, the Bankruptcy Code has tallying rules. Votes "count" only if the claim is "impaired." A claim is "impaired" if its rights outside of the bankruptcy case are hindered or reduced by the Plan someway. An unimpaired claim does not count, either as an acceptance or as a rejection of the Plan. Votes are counted according to classes. To win a class, the Plan proponent has to achieve two separate goals. The first is called "majority": winning a majority of the votes cast within the class. The second, called "numerosity": winning at least two-thirds of the dollars voted in each class.

If the Plan proponent wins each voting Class, and the Court finds that the Plan complies with the requirements of 11 U.S.C. § 1191, then the Plan is confirmable. (A finding that the Plan complies with § 1191 necessarily means that the Court has overruled any objections to confirmation.)

If the Plan proponent does not win all of the voting classes, but wins at least one impaired

---

*** Unless the creditor consents to some deferral of payment.

11

class, and that Class was not won because of an insiders**** vote, then the Plan proponent may request "cram down."***** In "cram down," the Court has to find that the Plan satisfies all the requirements of §§ 1191 and 1129(a) have been met, except for voting acceptance in § 1129(a)(8). And then the Court, if it finds that the Plan is "fair and equitable" to each rejecting class, can confirm the Plan despite the opposing votes.

**You should consult your own attorney if a "cramdown" confirmation will affect your claim or equity interest, as the variations on what is "fair and equitable" are numerous and complex.**

Generally, it is rare for a debtor to get a high rate of voting participation in the Plan confirmation process. Occasionally, the level of creditor apathy is such, that whole classes of claims may go without votes. In the event that at least one class has actually voted to accept the Plan, and one or more other classes attract no votes at all, the debtor will ask the Bankruptcy Court to rule that each class which had no votes cast at all, is "deemed" to have accepted the Plan. *See In re Cypresswood Land Partners, 1*, 409 B.R. 396 (S.D. Tex. 2009)(Bohm, B.J.), *following In re Ruti-Sweetwater, Inc.*, 836 F.2d 1263 (10th Cir. 1988) and construing Code § 1126(b)(1) together with § 1129(b); *See also In re Trevarrow Lanes, Inc.*, 183 B.R. 475 (Bankr. E.D. Mich. 1995), *holding* that Code Sections 1129(a)(10) and 1129(b), read together, preclude the reading of § 1129(a)(8) as requiring votes in all classes. Otherwise, the creditors who do not care enough to bother to vote, can make confirmation impossible to achieve. *Cypresswood Land Partners*, 409 B.R. at 430. THEREFORE IF YOU DISAPPROVE OF THE PLAN, YOU SHOULD VOTE TO REJECT IT, OR YOUR SILENCE WILL BE COUNTED AS A

---

**** An insider is a relative or close business associate of the Debtor or of the Debtor's principal ABRAHAM J. WARDY.

***** This expression, one of hundreds of everyday figures of speech that have carried over from farming generations, comes from the practice of cramming grain down a goose's neck. Unless force-fed, geese will not ingest much at one meal.

"DEEMED" ACCEPTANCE.******

## VII. ALLOWANCE AND DISALLOWANCE OF CLAIMS

Allowed Claims. Bankruptcy claims arise from debts. Debts become allowed claims when the creditor files a timely proof of claim with the Bankruptcy Court, or, in Chapter 11 cases, when the Debtor schedules the claim and does not indicate on the Schedules that the claim is contingent, unliquidated, or disputed. If the Schedules in a Chapter 11 case show that the debt is contingent, unliquidated, or disputed, the creditor must file a timely proof of claim. The amount of the proof of claim shall supersede the amount scheduled by the Debtor.

A proof of claim, once filed, or once scheduled by a Chapter 11 Debtor as non-contingent, liquidated, and undisputed, can be objected to by the Debtor or any other party in interest. The filing of the objection operates to disallow the claim temporarily, until the Bankruptcy Court rules upon the objection.

See Article IX below for a discussion of claim timeliness. OR In the instant case, the period for filing claims by non-governmental units expired on October 14, 2020.

Delay of Distribution on a Disputed Claim. No distribution will be made on account of a disputed claim until after such claim is allowed by a final non-appealable order. At that point the claimant is to receive any distributions they would have received if no objection had been filed and the claim had been presented in the ultimately-allowed amount.

Settlement of Disputed Claims. The Debtor will have the power and authority to settle or

---

****** Debtor does not mean to suggest that a sole accepting class can be a "deemed" class to satisfy § 1129(a)(10). *And see In re Adelphia Communications Corporation*, 368 B.R. 140 (Bankr. S.D. N.Y. 2007), *holding* that where a plan expressly and conspicuously informed creditors that non-voting classes would be presumed to have accepted the plan, "deemed acceptance" was appropriate.

adjust a claim that is under objection, with Court approval and, if required by the Court, compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

## VIII. TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS, SUBCHAPTER V TRUSTEE'S FEES, AND PRIORITY TAX CLAIMS

Unclassified Claims. Under Code § 1123(a)(1), administrative expense claims and priority tax claims are not in classes. Neither are United States Trustee's fees in a class of claims. Non-classified claims do not have voting rights, but they have objection rights.

The following chart lists the Debtors' estimated administrative expenses, and their proposed treatment under the Plan.

| Type | Estimated Amount Owed | Proposed Treatment |
|---|---|---|
| Expenses Arising in the Ordinary Course of Business After the Petition Date | | Paid in full on the Effective Date of the Plan, or according to regular terms of obligation if later. |
| The Value of Goods Received in the Ordinary Course of Business Within 20 Days Before the Petition Date. | N/A | Paid in full on the Effective Date of the Plan, or according to terms of obligation if later. |
| Estimated Professional Fees, subject to approval of the Court.<br><br>Debtor's Attorney E.P. BUD KIRK<br><br>Subchapter V Trustee Brad Odell | <br><br><br>$<br><br>$ | First payment is to come from the attorney's retainer. The Subchapter V Trustee shall pay the unpaid balance of the Debtor's Attorney's fees, in at-least-level installments over a period not to exceed twelve months, commencing 15 days after those fees are approved by the Court or 15 days after Confirmation Effective Date, whichever is later.<br><br>The pre-Confirmation Effective Date fees and Expenses of the Subchapter V Trustee are to be paid in at-least-level monthly installments over a period not to exceed twelve months, commencing on the 15th day of the month following Confirmation Effective Date or 15 days after those fees and expenses are approved by the Court, |

| | | whichever is later. |
|---|---|---|
| Clerk's Office Fees | $250.00 | Paid in full on the Effective Date of the Plan |
| **TOTAL** | $ | |

Priority Tax Claims. Priority tax claims are unsecured income, employment, and other taxes described by § 507(a)(8) of the Code. Unless the holder of such a § 507(a)(8) priority tax claim agrees to different terms, it must receive the present value of such claim, in regular installments paid over a period not exceeding 5 years from the date of the order of relief (the first day of the case). The following chart lists the Debtor's estimated § 507(a)(8) priority tax claims and their proposed treatment under the Plan:

| Description (name and type of tax) | Estimated Amount Owed | Date of Assessment | Treatment |
|---|---|---|---|
| IRS | $859,501.72 | | Parts of this claim have been estimated by the IRS because the Debtor did not file the returns. The returns are being prepared. Once the claim is fixed, it will be paid over 60 months in level payments with 3% interest from Effective Date forward. |
| Texas Workforce Commission | $2,066.44 | 4.25% | Paid in full in 48 level installments with statutory interest per annum from Effective Confirmation Date forward. |

## THE GROUPS AND CLASSES OF CLAIMS

Administrative Claim, Group A. The Subchapter V Trustee shall pay the unpaid balance of the Debtor's Attorney's fees, in at-least-level installments over a period not to exceed twelve months, commencing 15 days after those fees are approved by the Court or 15 days after Confirmation Effective Date, whichever is later.

Administrative Claim, Group B. The pre-Confirmation Effective Date fees and Expenses of the Subchapter V Trustee are to be paid in at-least-level monthly installments over a period not to exceed twelve months, commencing on the 15th day of the month following Confirmation Effective Date or 15 days after those fees and expenses are approved by the Court, whichever is

15

later.

## IX. CLASSIFIED CLAIMS

**Class 1. The secured claim of The City of El Paso Tax Collector,** The Debtor does not own enough property to support a tax lien for $32,748.23. Nearly all of the Debtor's equipment is leased. The Debtor will propose repayment that is in reasonable proportion to what it owns.

**Class 2. The secured claim of On Deck Capital, Inc.** The Trustee shall pay the secured claim of On Deck Capital, Inc. in the allowed amount of $27,923.04 in level payments of $797.15 over 36 months including 4% interest per annum beginning on petition date, starting on the 15th day after confirmation effective date.

**Class 3. The secured claim of E Advance, LLC.** The Trustee shall pay the secured claim of Scot Properties, Ltd. in the allowed amount of $25,000.00 in 36 level monthly installments of $738.10 each including 4% interest, starting on the 15th day after confirmation effective date.

**Class 4. The secured claim of CIT.** The Trustee shall pay the secured claim of CIT in the allowed amount of $25,001.00 in 36 level monthly installments including 4% interest, starting on the 15th day after confirmation effective date.

**Class 5. The secured claim of Scot Properties, LLC.** This is a "cure" debt upon assumed unexpired lease of the Debtors truck yard, 1477 Lomaland. The weekly "cure payments at $500.00 each for an estimated 37 weeks, starting February 4, 2022.

**Class 6. Cure payment to EP LEASING.** The cure amount of this assumed lease is $8,497.40, which is assumed to be for prepetition arrearages. The cure will be made in 48 installments of $177.00 each starting 20 days after Effective Date of Confirmation.

**Class 7. The general unsecured claims filed or scheduled in amounts of $5,000.00 or**

16

more. These claims shall be paid pro rata in a pool that is to grow to $100,000 as the Debtor contributes to it in 50 monthly payments of $2,000 each, to commence on the first anniversary of Effective Confirmation Date.

Class 8.   Administrative Convenience Class.   The Trustee shall pay the claims of any general unsecured creditors under $5,000.00 a total dividend of 50 per cent of their allowed amounts, in two equal payments on the 70th and 140th day after Confirmation Effective Date. This is an administrative convenience class.

## X. PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Assumed Executory Contracts and Unexpired Leases.

(a)   The Debtor is assuming its unexpired leases in Classes 5 and 6 of this Plan with Scot Properties, LTD and EP Leasing, LLC.  There are no other leases to be assumed.

(b)   Upon the Effective Date of this Plan the Debtor will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not expressly assumed under section 6.01(a) above, or assumed previously with Court approval.  A proof of claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than thirty (30) days after the Effective Date of this Plan, unless the Court has already set an earlier deadline.  Any such claim shall be subject to objection until the 60th day after Effective Date and shall be relegated to Plan Class 9, where it shall share *pro rata* in the distribution already provided there.

## XI. GENERAL PROVISIONS

At any time during the term of this Plan, the Debtor may pre-pay any creditor.  If the pre-payment places the Debtor "ahead" of where the Debtor would be on its amortization of the claim, the Debtor may, at its option, "bank" the pre-payment and not send any more payments

for that claim to the creditor until the passage of time in the claim's theoretical model******* amortization has used up the pre-payment. If the Debtor is able to sell a retained real property or machinery or a vehicle or any exempt item during the term of this Plan, the sale shall not require Court approval, but all liens retained thereon under this Plan shall be paid from the closing. Debtor shall also bring current any overdue Plan payments to other creditors from the closing. Debtor shall have discretion to apply or not apply any remaining sale proceeds to unaccrued Plan payments or to hold such proceeds for costs of future operations and to pay taxes arising from the sale.

Administrative Expense Claims. Each holder of an administrative expense claim allowed under § 503 of the Code will be paid in full on the Effective Date of this Plan (as defined in Article VII below) in cash, or upon the original contract terms, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.

Definitions and Rules of Construction. The definitions and rules of construction set forth in " 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan. Other definitions important for the meaning of this Plan are the definitions in Exhibit "1."

Effective Date of Plan. The Effective Date of this Plan is the first business day following the date that is fourteen days after the entry of the order of confirmation. If, however, a stay of the confirmation order is in effect on that date, due to an appeal from order of confirmation, the Effective Date will be the first business day after the date on which the stay of the confirmation order expires or is otherwise terminated.

Severability. If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other

---

******* A theoretical model amortization would be, that every Plan payment to a creditor will have been made on time, and to the exact penny provided for in that Class.

provision of this Plan.

**Binding Effect**. The rights and obligations of any entity named or referred to in this Plan will be binding upon that entity, and will inure to the benefit or burden of the successors or assigns of, such entity, unless the case law applying Bankruptcy Code § 1141 and/or the case law construing the Fifth Amendment to the U.S. Constitution provide to the contrary.

**Captions**. The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

**Controlling Effect**. Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Texas govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

**Corporate Governance**. If the Debtor is a corporate entity, the Debtor shall be governed, as to its internal affairs, by the Texas Business Organizations Code and other applicable Texas statutes.

**Partnership Governance**. If the Debtor is a limited or a general partnership, the debtor's internal affairs shall be governed by the Texas Uniform Revised Partnership Act or the Texas Uniform Revised Limited Partnership Act, whichever applies.

## XII. GENERAL PROVISIONS: CLAIMS FILING

All claims must be filed in accordance with Bankruptcy Rule 3002. In Chapter 11 cases, non-governmental unit creditors who have not been scheduled by the Debtor as non-contingent, liquidated, and undisputed claimants, must file claims before the Bar Date set in the Notice to Creditors by the Clerk of the Court (December 27, 2021), or they will be excluded from Plan

distribution. (Governmental unit creditors have a bar date set by the Code at 180 days after petition date, or April 13, 2022.) In order to enable distribution to commence or to permit the allowance of a claim to be determined, the Debtor may file a Proof of Claim within 30 days after the Bar Date on behalf of any creditor who has not filed a claim under the Bankruptcy Rules, or may schedule an omitted creditor as non-contingent, liquidated, and undisputed, at any time before the case is closed. An omitted creditor who had no knowledge of the Bankruptcy filing may also file a late claim, within 90 days of discovering the filing. Omitted creditors shall be entitled after filing, to catch up on distribution they would have received had their claims been timely.

## XIII. GENERAL PROVISIONS: EFFECT OF CONFIRMATION; VESTING OF ASSETS

The effect of confirmation in this case will depend on whether the Plan is accepted by all classes of voting creditors and confirmed over any objections, under 11 U.S.C. § 1191(a). If that is the case, then confirmation will leave assets vested in the estate and subject to the liens retained thereon; except that the Debtor shall not retain any property that is being surrendered to lienholders under this Plan. At confirmation all non-surrendered assets which were property of the estate, shall vest in the Debtor, free and clear of the claims and liens and interests of creditors, except as expressly preserved in the Plan. The Debtor shall no longer have to get prior Court approval to sell or refinance or borrow upon particular assets, as if they were still property of the estate. *See* 11 U.S.C. § 1141 (copy hereto attached as Exhibit "9.") If this is an individual's case, exempt property will have already vested in the Debtor through the Debtor's claims of exemption, and not through this Plan. If confirmation has to be achieved through 11 U.S.C. § 1191(b) however, due to rejecting classes or objections, then all assets will remain property of the estate, unless exempt in an individual's case. A court order shall be necessary to sell any non-exempt assets, if confirmation has to be obtained under § 1191(b).

## XIV. GENERAL PROVISIONS: TREATMENT OF SECURED CLAIMS, ATTORNEY'S FEES UPON SECURED CLAIMS

General Provisions for All Secured Claims: The status of secured claims shall be determined in accordance with Section 506 of the Bankruptcy Code and Bankruptcy Rule 3002. Claims originally scheduled as secured but which are later found by the Court to be unsecured will be treated as unsecured.

The value, as of the Effective Date of this Plan, of property to be distributed under the Plan on account of secured claims is not less than the allowed amount of such claims. The holders of all secured claims described above shall retain their liens on the collateral which is security for such claims, except where otherwise expressly stated in this Plan.

Any secured claimant who wishes to recover attorney's fees must file a proof of claim therefor with notice to the Debtor before the thirtieth day after the Effective Date of this Plan. Debtor shall in turn have until the sixtieth day after the Effective Date of this Plan, to object to any claim for attorney's fees. To the extent the attorney's fees are allowed, the Debtor shall spread the payment of the claim for attorney's fees over the entire term of the loan amortization, in level amounts. 11 U.S.C. § 506. The Debtor shall add to the Plan's stated periodic payments on the pertinent claim, as stated within the Class treatment above, any additional amount approved after Effective Date, needed to amortize the allowed attorney's fees.

Secured creditors should also read Article XIX below, concerning the impact of this Plan upon the covenants of their loan documents.

## XV. GENERAL PROVISIONS: POWERS RETAINED BY THE DEBTOR

The Debtor shall have the right to exercise all avoidance, litigation, and turnover powers conferred upon Trustees (or Debtors-in-Possession) under the Bankruptcy Code. The Debtor may object to any claim at any time during the case, provided, if the objection is based on pre-confirmation events and is made post-confirmation, the Debtor disclosed the grounds of the

21

objection prior to voting on confirmation, either in the accompanying Disclosure Statement or in this Plan.

## XVI. GENERAL PROVISIONS: DURATION OF THE PLAN; LIQUIDATION TEST; SUBSEQUENT MODIFICATIONS

This Plan shall reach its conclusion on the fifth anniversary of Confirmation Effective Date. General unsecured creditors' estimated recovery percentage is 11.6% of the allowed amounts of their claims.

The Court may, from time to time during the first 36 months of the Plan, modify this Plan to increase or reduce the amount of the installments provided by the Plan, or to extend or shorten the time for any such payments when it shall be made to appear, after hearing upon such notice as the Court may specify, that the circumstances of the Debtor so warrant or require; provided, however, that nothing in this Plan shall be construed to prevent the granting of the discharge of the Debtor as provided in Sections 1141(d)(1)(A), 1191(a), and if applicable,1191(b) and 1192 of the Bankruptcy Code (copies hereto attached as Exhibit "4" and Exhibit "5").

## XVII. GENERAL PROVISIONS: TIMING OF PAYMENTS, "BANKING" OF PRE-PAYMENTS

At any time during the term of this Plan, the Debtor may pre-pay any creditor. If the pre-payment places the Debtor "ahead" of where the Debtor would be on its amortization of the claim, the Debtor may, at its option, "bank" the pre-payment and not send any more payments for that claim to the creditor until the passage of time in the claim's theoretical model* amortization has used up the pre-payment. If the Debtor is able to sell a retained real property or machinery or a vehicle or any exempt item during the term of this Plan, the sale shall not require Court approval, but all liens retained thereon under this Plan shall be paid from the closing.

---

· A theoretical model amortization would be, that every Plan payment to a creditor will have been made on time, and to the exact penny provided for in that Class.

Debtor shall also bring current any overdue Plan payments to other creditors from the closing. Debtor shall have discretion to apply or not apply any remaining sale proceeds to unaccrued Plan payments or to hold such proceeds for costs of future operations and to pay taxes arising from the sale.

## XVIII. DEFAULT

The due dates for the Debtor's payments under this Plan, shall be subject to a grace period of 10 days for contractual secured creditors and 30 days for governmental unit creditors and general unsecured creditors. Once the grace period has run, any contractual creditor who has not received payment that was due from the Debtor, may resort to the remedies contained in its contract, security agreement, deed of trust, or note, and proceed accordingly, giving the Debtor any notice and opportunity to cure required by applicable law. However, with regard to the claims of the INTERNAL REVENUE SERVICE, the following terms of default apply:

## INTERNAL REVENUE SERVICE

The debt owed by the Debtor to the INTERNAL REVENUE SERVICE ("IRS") is a non-dischargeable debt, except as otherwise provided for in the Code, and that if the Debtor defaults, the IRS is not subject to the provisions of the Bankruptcy Code so that the IRS can take whatever actions are necessary to collect said debt in the event of default; the federal tax liens survive the Plan confirmation, a bankruptcy discharge, and dismissal of the case. The liens continue to be enforceable against all of the Debtor's property under federal law.

A failure by the Debtor to make a payment to the IRS pursuant to the terms of the Plan and/or failure to remain current on filing and paying post-confirmation taxes, shall be an event of default, and as to the IRS, there is an event of default if payment is not received by the 15th day of each month. If there is a default, the IRS must send written demand for payment, and said payment must be received by the IRS within 15 days of

23

the date of the demand letter. The Debtor can receive up to three notices of default from the IRS, however, on the third notice of default from the IRS the third notice cannot be cured, and the IRS may accelerate its allowed claim(s), past and future, and declare the outstanding amount of such claim(s) to be immediately due and owing and pursue any and all available state and federal rights and remedies. These default provisions pertain to the entire claim(s) of the IRS, secured, unsecured priority, and unsecured general.

The IRS is bound by the provisions of the confirmed Plan and is barred under 11 U.S.C. § 1141 from taking any collection actions against the Debtor for prepetition claims during the duration of the Plan (provided there is no default as to the IRS). The period of limitations on collection remains suspended under 26 U.S.C. § 6503(h) for the tax periods being paid under the Plan and terminates on the earlier of (1) all required payments to the IRS having been made, or (2) 30 days after the date of the demand letter (described above) for which the Debtor failed to cure the default.

## XIX. EFFECT OF THIS PLAN ON TERMS AND CONDITIONS OF SECURED CREDITORS' LOAN DOCUMENTS

The terms and conditions of this Plan shall supersede each secured creditor's loan document covenants, insofar as the following are concerned:

a) The existence of any conditions of default which occurred prior to petition date, unless the Plan specifically provides for that particular creditor a cure of arrearages in addition to the maintenance of regular pre-bankruptcy contractual payments;

b) Due dates for loan payments and loan maturity;

c) Amounts of loan balances and installment payments;

d) Interest rates;

e) Default interest rates;

f) Attorney's fees, except for services to be performed in the future that are

not directly related to the bankruptcy case or Plan; and

g) Loan document clauses allowing debt acceleration if the lender deems itself insecure, if bankruptcy has been filed, if pre-confirmation taxes are being paid through the Plan, or if some cross-default is being cured through the Plan.

This Plan shall not modify the existing covenants of any loan documents of the creditors in the Secured Classes, governing the following particulars:

h) The maintaining of insurance upon the collateral;

i) The payment of property taxes for years not covered by the Plan;

j) Keeping the collateral in good condition;

k) The furnishing of financial information, in forms commonly kept such as copies of financial statements, cash flow reports, and income tax returns, at reasonable intervals;

l) Allowing the lender to inspect the collateral at reasonable times after a reasonable period of notice;  and

m) Terms or conditions required for the securitization of uniform instruments for real estate loans in federally-sponsored mortgage programs.

The intention of this Article XIX is two-fold:  first, to prevent the lender from searching for or harboring a reason to declare the loan in default, once there is no more access for the Debtor to the Bankruptcy Court to adjust the borrowing relationship;  second, to eliminate as far as can practically be done, the need or perceived need for the drafting of a new set of loan papers, which directly costs the lender for its own attorney's fees and indirectly burdens the Debtor by adding legal expenses to the loan balance.

## XX. DISCHARGE

Discharge.  The operation and effect of the bankruptcy discharge in this case will depend

upon whether this Plan is accepted by all the impaired classes that vote. If it is so accepted, then the discharge will be according to 11 U.S.C. § 1129(a) and all subparagraphs of § 1129(a) except subparagraph (15), and for a corporate debtor, such as PTSI, paragraphs 11 U.S.C. § 1141(d)(1)(A), (d)(3), and (d)(6) also govern the discharge. In order to satisfy § 1129(a)(1), the Plan will have to obtain the consent of the Texas Comptroller to a less-than-full payment of the uncollected sales taxes owed to the Comptroller. (The Plan already provides for full payment of taxes collected in a fiduciary capacity under Tex. Tax Code § 116 and 11 U.S.C. §§ 523(a)(1) and 507(a)(8)(C). If this Plan has to be confirmed under 11 U.S.C. § 1191(b) because not all impaired voting classes accept it, then the discharge shall be governed by 11 U.S.C. §§ 1191(b), (c), and (d), as well as § 1192. That means in this case that secured claims must be paid in full value of their collateral, with interest; and that all claims must receive all of the Debtor's projected disposable income over the life of the Plan.

Date: 2/28/2022  **ADVANCE TRANSPORTATION SERVICES INCORPORATED**

ABRAHAM J. WARDY
Its: President

/s/
E.P. BUD KIRK
Texas State Bar No. 11508650
600 Sunland Park Drive
Bldg. Four, Suite 400
El Paso, TX 79912
(915) 584-3773
(915) 581-3452 facsimile
budkirk@aol.com

Attorney for the Debtor

## CERTIFICATE OF SERVICE

  I do hereby certify that on the 28th day of February, 2022, I did cause a copy of the foregoing Small Business Debtor's Plan of Reorganization to be mailed by postage pre-paid U.S. Mail to U.S. Trustee, P.O. Box 1539, San Antonio, TX 78205-1539; to the Subchapter V Trustee, c/o Brad W. Odell, 1500 Broadway, Suite 700 Lubbock, Texas 79401; to Scot Properties, Ltd., c/o Harrel L. Davis, P.O. Box 1322, El Paso, TX 79947-1322; to Advance Transportation Services, c/o Abraham J. Wardy, 12308 Red Sun Dr., El Paso, TX 79938; to City of El Paso, c/o Don Stecker, 112 E. Pecan Street, Ste. 2200, San Antonio, TX 78205; to S.W.I.T., c/o Patrick Sicotte, 15851 Dallas Parkway, Suite 800, Addison, Texas 75001; to EP Leasing, LLC, c/o James M. Feuille, Scotthulse, PC, P.O. Box 99123, El Paso, TX 7999-9123; to On Deck Capital, 1400 Broadway 25th Floor, New York, NY 10018-5225; to Texas Workforce Commission, mail TWC, 101 E. 15th Street, Austin, TX 78778; and emailed to Internal Revenue Service, c/o Minerva Garcia, Minerva.Garcia@irs.gov.

/s/
E.P. BUD KIRK

4981-MC-022422

27

# EXHIBIT "1"

**EXHIBIT "1"**

**LIST OF DEFINITIONS**

The following terms when used in this Plan have the following meanings:

1.   <u>Administrative Expenses</u>:  Claims and expenses for supplying services or goods to the Debtor post-petition, which are allowed under Bankruptcy Code Section 503.

2.   <u>Allowed Claims</u>:  Those claims which have been filed on or before the Bar Date with the Court or scheduled by the Debtor as liquidated, non-contingent, and undisputed, and which are not the subject of an Objection by the Debtor which is either pending or finally sustained by the Court.

3.   <u>Bar Dates</u>:  The last day to file a timely Proof of Claim in this case on account of a pre-petition debt.  To date the Court has set February 8, 2022 as the Bar Date for filing Proofs of Claim for non-governmental creditors.  The Bar Date for governmental creditors is set by statute at 180 days after petition date, or, in this case, April 29, 2022. Parties in interest should assume that if they have not filed Proofs of Claim by the applicable date, or been scheduled with an allowed claim by the Debtor, their claims will not be allowed.

4.   <u>Claim</u>:  A debt scheduled by the Debtor as liquidated, non-contingent, and undisputed, or a Proof of Claim filed before the applicable Bar Date, which is allowed pursuant to 11 U.S.C. § 502.

5.   <u>Chapter 11</u>:  Chapters 11 of the Bankruptcy Code.

6.   <u>Code</u>.  The Bankruptcy Code (Title 11, United States Code).

7.   <u>Confirmation</u>:  Entry by the Court of an Order Confirming the Plan at or after a hearing pursuant to Subchapter V of Chapter 11 of the Bankruptcy Code.

8.   <u>Confirmation Effective Date</u>:  *See* "Effective Date," below.

9.   <u>Court</u>:  The United States Bankruptcy Court for the Western District of Texas, El Paso Division, including the United States Bankruptcy Judge presiding in the Chapter 11 case of the Debtor.

10.  <u>Creditor</u>:  The holder of an Allowed Claim in these proceedings.

11.  <u>Debtor</u>:  ADVANCE TRANSPORTATION SERVICES INCORPORATED ("Debtor," also the "Debtor-in-Possession).

12.  <u>Effective Date of Plan</u>.  The effective date of this Plan is the first business day following

the date that is fourteen days after the entry of the order of confirmation. If, however, a stay of the confirmation order is in effect on that date, due to an appeal from the order of confirmation, the Effective Date will be the first business day after the date on which the stay of the confirmation order expires or is otherwise terminated. No stay of the confirmation order is to be granted without the posting of a bond, or an order excusing the posting of a bond according to the Federal Rules of Bankruptcy Procedure.

13. <u>Fiscal Year</u>: The Debtor operate on a calendar year which ends December 31st.

14. <u>General Unsecured Claims</u>: Claims that are without collateralization and not entitled to priority under 11 U.S.C. § 507.

15. <u>IRS</u>: The United States Internal Revenue Service.

16. <u>Impaired</u>: A class of claims is said to be impaired if members of the class will not be paid in full or restored to fully current contractual status as of confirmation Effective Date.

17. <u>Insider</u>: A person or entity closely related to the Debtor in business or family matters, within the definitional standards of 11 U.S.C. § 101(31).

18. <u>Payment</u>: Distribution by the Debtor of funds to creditors at the intervals and in the amounts proposed under the Plan.

19. <u>Petition Date</u>: November 30, 2021, the date of filing of the petition by the Debtor in these proceedings.

20. <u>Plan</u>: The Plan of Reorganization, filed by the Debtor on February ____, 2022, and as it may be afterwards amended or supplemented or modified as permitted by the Bankruptcy Code. The Plan may be modified or corrected prior to Confirmation upon application of the Debtor pursuant to Section 1127 of the Bankruptcy Code, if the modification does not materially and adversely change any claimholders' rights, or if claimholders who are materially and adversely affected accept the change after notice. The Plan can be modified after confirmation pursuant to 11 U.S.C. § 1127(b) or (f), after notice to all parties in interest and a hearing. The Plan in the case of a corporation, LLC, or limited partnership can be modified post-confirmation only if "substantial consummation" has not occurred yet, through payments made or property transferred.

21. <u>Priority Claim</u>: Any claim entitled to priority pursuant to Section 507 of the Bankruptcy Code.

22. <u>Schedules</u>: The lists of assets and liabilities filed by the Debtor in these Chapter 11 proceedings, as such lists may have been amended by the Debtor.

2

23. <u>Secured Claim</u>: Any claim secured by the property of the Debtor under a duly perfected security interest or statutory lien filed of record according to law, to the extent of the value of the collateral. Texas property tax claims also are secured claims but they arise without any filing, by operation of law each January 1.

24. <u>Secured Creditors</u>: All creditors of the Debtor who hold a lien, security interest, or other encumbrance which has been properly perfected as required by law with respect to property owned by the Debtor.

25. <u>Section</u>: (Sometimes indicated by the symbol §). References to sections in the Bankruptcy Code, unless some other code or statute is specified.

26. <u>Tax Claim</u>: Any allowed claim filed by a governmental unit for taxes.

27. <u>Unsecured Tax Penalty Claim</u>: An uncollateralized claim for federal tax penalties, of the type that would have fourth priority of distribution in a Chapter 7 liquidation, behind the claims of general unsecured creditors.

# EXHIBIT "2"

Fill in this information to identify the case:

Debtor name   **Advance Transportation Services Incorporated**

United States Bankruptcy Court for the:   WESTERN DISTRICT OF TEXAS

Case number (if known)   **21-30906**

☐ Check if this is an amended filing

# Official Form 206A/B
## Schedule A/B: Assets - Real and Personal Property
12/15

Disclose all property, real and personal, which the debtor owns or in which the debtor has any other legal, equitable, or future interest. Include all property in which the debtor holds rights and powers exercisable for the debtor's own benefit. Also include assets and properties which have no book value, such as fully depreciated assets or assets that were not capitalized. In Schedule A/B, list any executory contracts or unexpired leases. Also list them on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G).

Be as complete and accurate as possible. If more space is needed, attach a separate sheet to this form. At the top of any pages added, write the debtor's name and case number (if known). Also identify the form and line number to which the additional information applies. If an additional sheet is attached, include the amounts from the attachment in the total for the pertinent part.

For Part 1 through Part 11, list each asset under the appropriate category or attach separate supporting schedules, such as a fixed asset schedule or depreciation schedule, that gives the details for each asset in a particular category. List each asset only once. In valuing the debtor's interest, do not deduct the value of secured claims. See the instructions to understand the terms used in this form.

| Part 1: | Cash and cash equivalents |
|---|---|

1. Does the debtor have any cash or cash equivalents?

☐ No. Go to Part 2.
☑ Yes Fill in the information below.

All cash or cash equivalents owned or controlled by the debtor

Current value of debtor's interest

3.   Checking, savings, money market, or financial brokerage accounts *(Identify all)*

| | Name of institution (bank or brokerage firm) | Type of account | Last 4 digits of account number | |
|---|---|---|---|---|
| 3.1. | Western Heritage | checking | 0260 | $315.00 |
| 3.2. | Western Heritage | checking | 0686 | $1,800.00 |

4.   Other cash equivalents *(Identify all)*

5.   Total of Part 1.
Add lines 2 through 4 (including amounts on any additional sheets). Copy the total to line 80.

$2,115.00

| Part 2: | Deposits and Prepayments |
|---|---|

6. Does the debtor have any deposits or prepayments?

☑ No. Go to Part 3.
☐ Yes Fill in the information below.

| Part 3: | Accounts receivable |
|---|---|

10. Does the debtor have any accounts receivable?

☐ No. Go to Part 4.
☑ Yes Fill in the information below.

11.   Accounts receivable

| Debtor | **Advance Transportation Services Incorporated** | Case number *(if known)* 21-30906 |
|---|---|---|
| | Name | |

| 11a. 90 days old or less: | 60,000.00 | - | 0.00 | = .... | $60,000.00 |
|---|---|---|---|---|---|
| | face amount | | doubtful or uncollectible accounts | | |

| 12. | **Total of Part 3.** | $60,000.00 |
|---|---|---|
| | Current value on lines 11a + 11b = line 12. Copy the total to line 82. | |

**Part 4:  Investments**

**13. Does the debtor own any investments?**

☑ No. Go to Part 5.
☐ Yes Fill in the information below.

**Part 5:  Inventory, excluding agriculture assets**

**18. Does the debtor own any inventory (excluding agriculture assets)?**

☑ No. Go to Part 6.
☐ Yes Fill in the information below.

**Part 6:  Farming and fishing-related assets (other than titled motor vehicles and land)**

**27. Does the debtor own or lease any farming and fishing-related assets (other than titled motor vehicles and land)?**

☑ No. Go to Part 7.
☐ Yes Fill in the information below.

**Part 7:  Office furniture, fixtures, and equipment; and collectibles**

**38. Does the debtor own or lease any office furniture, fixtures, equipment, or collectibles?**

☐ No. Go to Part 8.
☑ Yes Fill in the information below.

| General description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| 39. Office furniture | | | |
| Office furniture | $0.00 | | $2,000.00 |
| Books and paintings | $0.00 | | $200.00 |
| 40. Office fixtures | | | |
| 41. Office equipment, including all computer equipment and communication systems equipment and software | | | |
| Uniforms, protective gear | $0.00 | | $500.00 |
| Equipment | $0.00 | | $2,500.00 |

42. **Collectibles** *Examples:* Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; china and crystal; stamp, coin, or baseball card collections; other collections, memorabilia, or collectibles

| 43. | **Total of Part 7.** | $5,200.00 |
|---|---|---|
| | Add lines 39 through 42. Copy the total to line 86. | |

Software Copyright (c) 1996-2021 Best Case, LLC - www.bestcase.com         Best Case Bankruptcy

| Debtor | **Advance Transportation Services Incorporated** | Case number *(if known)* __21-30906__ |
|---|---|---|
| | Name | |

44. Is a depreciation schedule available for any of the property listed in Part 7?
☑ No
☐ Yes

45. Has any of the property listed in Part 7 been appraised by a professional within the last year?
☑ No
☐ Yes

**Part 8:    Machinery, equipment, and vehicles**

46. Does the debtor own or lease any machinery, equipment, or vehicles?

☐ No. Go to Part 9.
☑ Yes Fill in the information below.

| General description<br>Include year, make, model, and identification numbers<br>(i.e., VIN, HIN, or N-number) | Net book value of<br>debtor's interest<br>(Where available) | Valuation method used<br>for current value | Current value of<br>debtor's interest |
|---|---|---|---|
| 47. Automobiles, vans, trucks, motorcycles, trailers, and titled farm vehicles | | | |
| 47.1.  2019 Ford Transit | | FMV | $38,000.00 |
| 47.2.  2006 INTL. TDAC VIN-6880 | | FMV | $5,000.00 |
| 47.3.  2006 INTL TDAC VIN-5596 | | FMV | $5,000.00 |
| 47.4.  2016 Freightliner Tractor VIN-9713<br>(lease-to-own) | | FMV | $0.00 |
| 47.5.  2017 Hyundai Trailer VIN-9011<br>(lease-to-own) | | FMV | $0.00 |
| 47.6.  2017 Freightliner Tractor VIN-3366<br>(lease-to-own) | | FMV | $0.00 |
| 47.7.  2019 Freightliner Truck VIN-6205<br>(lease-to-own) | | FMV | $0.00 |
| 47.8.  2019 Freightliner Truck VIN-6136<br>(lease-to-own) | | FMV | $0.00 |
| 47.9.  2019 Freightliner Truck VIN-6137<br>(lease-to-own) | | FMV | $0.00 |
| 47.10.  2019 Freightliner Truck VIN-6138<br>(lease-to-own) | | FMV | $0.00 |
| 47.11.  2019 Freightliner Truck VIN-6139<br>(lease-to-own) | | FMV | $0.00 |
| 47.12.  2019 Hyundai Trailer VIN-5047<br>(lease-to-own) | | FMV | $0.00 |

Software Copyright (c) 1996-2021 Best Case, LLC - www.bestcase.com          Best Case Bankruptcy

| Debtor | **Advance Transportation Services Incorporated** | | Case number *(if known)* **21-30906** | |
|---|---|---|---|---|
| | Name | | | |

| | | | | |
|---|---|---|---|---|
| 47.13. | **2019 General Motors VIN-0468** (lease-to-own) | | FMV | $0.00 |
| 47.14. | **2019 International VIN-6628** (lease-to-own) | | FMV | $0.00 |
| 47.15. | **2018 Freightliner Tractor VIN-4028** (lease-to-own) | | FMV | $0.00 |
| 47.16. | **2018 Freightliner Tractor VIN-8606** (lease-to-own) | | FMV | $0.00 |
| 47.17. | **2019 Freightliner Tractor VIN-7261** (lease-to-own) | | FMV | $0.00 |
| 47.18. | **2020 International Truck VIN-8160** (lease-to-own) | | FMV | $0.00 |
| 47.19. | **2020 International Truck VIN-8161** | | FMV | $0.00 |
| 47.20. | **2014 Freightliner Tractor VIN-2860** (lease-to-own) | | FMV | $0.00 |
| 47.21. | **2014 Freightliner Tractor VIN-2862** (lease-to-own) | | FMV | $0.00 |

48. Watercraft, trailers, motors, and related accessories *Examples:* Boats, trailers, motors, floating homes, personal watercraft, and fishing vessels

49. Aircraft and accessories

50. Other machinery, fixtures, and equipment (excluding farm machinery and equipment)

| | | | | |
|---|---|---|---|---|
| | Tools | | FMV | $10,000.00 |
| | Machinery (two forklifts, wrapping machine) | | FMV | $25,000.00 |

51. **Total of Part 8.**
Add lines 47 through 50.  Copy the total to line 87.

| | $83,000.00 |
|---|---|

52. **Is a depreciation schedule available for any of the property listed in Part 8?**
☑ No
☐ Yes

53. **Has any of the property listed in Part 8 been appraised by a professional within the last year?**
☑ No
☐ Yes

Official Form 206A/B                    Schedule A/B Assets - Real and Personal Property                    page 4

Software Copyright (c) 1996-2021 Best Case, LLC - www.bestcase.com                    Best Case Bankruptcy

| Debtor | **Advance Transportation Services Incorporated** | Case number *(if known)* __21-30906__ |
|---|---|---|
| | Name | |

---

**Part 9:**   **Real property**

**54. Does the debtor own or lease any real property?**

☑ No.  Go to Part 10.
☐ Yes Fill in the information below.

---

**Part 10:**   **Intangibles and Intellectual property**

**59. Does the debtor have any interests in intangibles or intellectual property?**

☑ No.  Go to Part 11.
☐ Yes Fill in the information below.

---

**Part 11:**   **All other assets**

**70. Does the debtor own any other assets that have not yet been reported on this form?**
    Include all interests in executory contracts and unexpired leases not previously reported on this form.

☑ No.  Go to Part 12.
☐ Yes Fill in the information below.

---

**Official Form 206A/B**                    Schedule A/B Assets - Real and Personal Property                    page 5

Debtor   **Advance Transportation Services Incorporated**          Case number *(if known)*  **21-30906**
       Name

| Part 12: | Summary |
| --- | --- |

In Part 12 copy all of the totals from the earlier parts of the form

| Type of property | Current value of personal property | Current value of real property |
| --- | --- | --- |
| 80. Cash, cash equivalents, and financial assets. *Copy line 5, Part 1* | $2,115.00 | |
| 81. Deposits and prepayments. *Copy line 9, Part 2.* | $0.00 | |
| 82. Accounts receivable. *Copy line 12, Part 3.* | $60,000.00 | |
| 83. Investments. *Copy line 17, Part 4.* | $0.00 | |
| 84. Inventory. *Copy line 23, Part 5.* | $0.00 | |
| 85. Farming and fishing-related assets. *Copy line 33, Part 6.* | $0.00 | |
| 86. Office furniture, fixtures, and equipment; and collectibles. *Copy line 43, Part 7.* | $5,200.00 | |
| 87. Machinery, equipment, and vehicles. *Copy line 51, Part 8.* | $83,000.00 | |
| 88. Real property. *Copy line 56, Part 9*..................................................................> | | $0.00 |
| 89. Intangibles and intellectual property. *Copy line 66, Part 10.* | $0.00 | |
| 90. All other assets. *Copy line 78, Part 11.* | + $0.00 | |
| 91. Total. Add lines 80 through 90 for each column | $150,315.00 | + 91b. $0.00 |
| 92. Total of all property on Schedule A/B. Add lines 91a+91b=92 | | $150,315.00 |

Software Copyright (c) 1996-2021 Best Case, LLC - www.bestcase.com        Best Case Bankruptcy

Fill in this information to identify the case:

Debtor name   **Advance Transportation Services Incorporated**

United States Bankruptcy Court for the:   WESTERN DISTRICT OF TEXAS

Case number (if known)   **21-30906**

☐ Check if this is an
amended filing

## Official Form 206D
## Schedule D: Creditors Who Have Claims Secured by Property                    12/15

Be as complete and accurate as possible.

1. Do any creditors have claims secured by debtor's property?

☐ No. Check this box and submit page 1 of this form to the court with debtor's other schedules. Debtor has nothing else to report on this form.

☑ Yes. Fill in all of the information below.

**Part 1:    List Creditors Who Have Secured Claims**

2. List in alphabetical order all creditors who have secured claims. If a creditor has more than one secured claim, list the creditor separately for each claim.

| | Column A | Column B |
| --- | --- | --- |
| | Amount of claim | Value of collateral that supports this claim |
| | Do not deduct the value of collateral. | |

| | | |
| --- | --- | --- |
| **2.1  CIT** <br> Creditor's Name <br> **10201 Centuarion Parkway North** <br> **Suite 100** <br> **Jacksonville, FL 32256** <br> Creditor's mailing address | Describe debtor's property that is subject to a lien | $25,001.00 | $38,000.00 |

Describe the lien

Is the creditor an insider or related party?
☑ No
☐ Yes

Is anyone else liable on this claim?
☐ No
☑ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

Creditor's email address, if known

Date debt was incurred
**-6000**
Last 4 digits of account number

Do multiple creditors have an interest in the same property?
☑ No
☐ Yes. Specify each creditor, including this creditor and its relative priority.

As of the petition filing date, the claim is:
Check all that apply
☐ Contingent
☐ Unliquidated
☐ Disputed

| | | | | |
| --- | --- | --- | --- | --- |
| **2.2  E Advance Services** <br> Creditor's Name <br> **122 East 42nd Street, Ste. 2112** <br> **New York, NY 10168** <br> Creditor's mailing address | Describe debtor's property that is subject to a lien <br> **accounts receiveable** | $25,000.00 | $60,000.00 |

Describe the lien

Is the creditor an insider or related party?
☑ No
☐ Yes

Is anyone else liable on this claim?
☑ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

Creditor's email address, if known

Date debt was incurred

Last 4 digits of account number

Do multiple creditors have an interest in the same property?

As of the petition filing date, the claim is:
Check all that apply

| Debtor | **Advance Transportation Services Incorporated** | Case number (if known) | **21-30906** |
|---|---|---|---|
| | Name | | |

☑ No
☐ Yes. Specify each creditor, including this creditor and its relative priority.

☐ Contingent
☐ Unliquidated
☐ Disputed

---

| 2.3 | **El Paso County Tax Assessor/Collector** | Describe debtor's property that is subject to a lien | $4,500.00 | $0.00 |
|---|---|---|---|---|

Creditor's Name

**Personal property tax**

**301 Manny Martinez Dr.
El Paso, TX 79905**

Creditor's mailing address

Describe the lien

Creditor's email address, if known

Is the creditor an insider or related party?
☑ No
☐ Yes

Date debt was incurred

Is anyone else liable on this claim?
☑ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

Last 4 digits of account number

Do multiple creditors have an interest in the same property?
☑ No
☐ Yes. Specify each creditor, including this creditor and its relative priority.

As of the petition filing date, the claim is:
Check all that apply
☐ Contingent
☐ Unliquidated
☐ Disputed

---

| 2.4 | **Franco Factoring** | Describe debtor's property that is subject to a lien | $0.00 | $0.00 |
|---|---|---|---|---|

Creditor's Name

**Invoices purchased**

**6929 Imperial Ridge Dr.
El Paso, TX 79912-7616**

Creditor's mailing address

Describe the lien

Creditor's email address, if known

Is the creditor an insider or related party?
☑ No
☐ Yes

Date debt was incurred

Is anyone else liable on this claim?
☑ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

Last 4 digits of account number

Do multiple creditors have an interest in the same property?
☑ No
☐ Yes. Specify each creditor, including this creditor and its relative priority.

As of the petition filing date, the claim is:
Check all that apply
☐ Contingent
☐ Unliquidated
☐ Disputed

---

| 2.5 | **Penske** | Describe debtor's property that is subject to a lien | $8,500.00/week | $0.00 |
|---|---|---|---|---|

Creditor's Name

**Nineteen vehicle leases with options to purchase at lease endings**

**P.O. Box 563
Reading, PA 19603**

Creditor's mailing address

Describe the lien

Creditor's email address, if known

Is the creditor an insider or related party?
☑ No
☐ Yes

Date debt was incurred

Is anyone else liable on this claim?
☑ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

---

Official Form 206D

Additional Page of Schedule D: Creditors Who Have Claims Secured by Property

page 2 of 3

Software Copyright (c) 1996-2021 Best Case, LLC - www.bestcase.com

Best Case Bankruptcy

| Debtor | **Advance Transportation Services Incorporated** | | Case number (if known) | **21-30906** |
|---|---|---|---|---|
| | Name | | | |

Last 4 digits of account number

| Do multiple creditors have an interest in the same property? | As of the petition filing date, the claim is: |
|---|---|
| ☑ No | Check all that apply |
| ☐ Yes. Specify each creditor, including this creditor and its relative priority. | ☐ Contingent |
| | ☐ Unliquidated |
| | ☐ Disputed |

| 2.6 | **Penske Truck Leasing** | Describe debtor's property that is subject to a lien | | $0.00 | $0.00 |
|---|---|---|---|---|---|
| | Creditor's Name | **Duplicate address** | | | |

**11451 Chito Samaniego Dr.
El Paso, TX 79936**
Creditor's mailing address

Describe the lien

_____
Creditor's email address, if known

Is the creditor an insider or related party?
☑ No
☐ Yes

**Date debt was incurred**

Is anyone else liable on this claim?
☐ No
☑ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**Last 4 digits of account number**
**0179**

| Do multiple creditors have an interest in the same property? | As of the petition filing date, the claim is: |
|---|---|
| ☑ No | Check all that apply |
| ☐ Yes. Specify each creditor, including this creditor and its relative priority. | ☐ Contingent |
| | ☐ Unliquidated |
| | ☐ Disputed |

3.  Total of the dollar amounts from Part 1, Column A, Including the amounts from the Additional Page, If any.   | **$63,001.00** |

**Part 2:   List Others to Be Notified for a Debt Already Listed in Part 1**

List in alphabetical order any others who must be notified for a debt already listed in Part 1. Examples of entities that may be listed are collection agencies, assignees of claims listed above, and attorneys for secured creditors.

If no others need to notified for the debts listed in Part 1, do not fill out or submit this page. If additional pages are needed, copy this page.

| Name and address | On which line in Part 1 did you enter the related creditor? | Last 4 digits of account number for this entity |
|---|---|---|

**Fill in this information to identify the case:**

Debtor name  **Advance Transportation Services Incorporated**

United States Bankruptcy Court for the:  **WESTERN DISTRICT OF TEXAS**

Case number (if known)  **21-30906**

☐ Check if this is an
amended filing

# Official Form 206E/F
## Schedule E/F: Creditors Who Have Unsecured Claims                                    12/15

Be as complete and accurate as possible. Use Part 1 for creditors with PRIORITY unsecured claims and Part 2 for creditors with NONPRIORITY unsecured claims.
List the other party to any executory contracts or unexpired leases that could result in a claim. Also list executory contracts on *Schedule A/B: Assets - Real and
Personal Property* (Official Form 206A/B) and on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G). Number the entries in Parts 1 and
2 in the boxes on the left. If more space is needed for Part 1 or Part 2, fill out and attach the Additional Page of that Part included in this form.

**Part 1:    List All Creditors with PRIORITY Unsecured Claims**

1. Do any creditors have priority unsecured claims? (See 11 U.S.C. § 507).

   ☐ No. Go to Part 2.

   ☑ Yes. Go to line 2.

2. List in alphabetical order all creditors who have unsecured claims that are entitled to priority in whole or in part. If the debtor has more than 3 creditors
   with priority unsecured claims, fill out and attach the Additional Page of Part 1.

|  |  | Total claim | Priority amount |
|---|---|---|---|
| **2.1** Priority creditor's name and mailing address<br>**Internal Revenue Service**<br>**Centralized Insolvency Office**<br>**P.O. Box 7346**<br>**Philadelphia, PA 19101-7346** | As of the petition filing date, the claim is:<br>*Check all that apply.*<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | **$13,500.00** | **$0.00** |
| Date or dates debt was incurred | Basis for the claim:<br>**941 taxes 1st, 2d, 3d Qtrs. 2021** | | |
| Last 4 digits of account number **8613**<br>Specify Code subsection of PRIORITY<br>unsecured claim: 11 U.S.C. § 507(a) (8) | Is the claim subject to offset?<br>☑ No<br>☐ Yes | | |
| **2.2** Priority creditor's name and mailing address<br>**IRS Insolvency Office**<br>**300 E. 8th Street, Mail Stop**<br>**5026AUS**<br>**Austin, TX 78701** | As of the petition filing date, the claim is:<br>*Check all that apply.*<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | **$0.00** | **$0.00** |
| Date or dates debt was incurred | Basis for the claim:<br>**Duplicate address** | | |
| Last 4 digits of account number<br>Specify Code subsection of PRIORITY<br>unsecured claim: 11 U.S.C. § 507(a) (8) | Is the claim subject to offset?<br>☑ No<br>☐ Yes | | |

**Part 2:    List All Creditors with NONPRIORITY Unsecured Claims**

3. List in alphabetical order all of the creditors with nonpriority unsecured claims. If the debtor has more than 6 creditors with nonpriority unsecured claims, fill
   out and attach the Additional Page of Part 2.

Amount of claim

| Debtor | **Advance Transportation Services Incorporated** | | Case number (if known) | **21-30906** |
|---|---|---|---|---|
| | Name | | | |

| 3.1 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $25,000.00 |
|---|---|---|---|
| | **American Express**<br>P.O. Box 650448<br>Dallas, TX 75265-0048 | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred _<br>Last 4 digits of account number _ | Basis for the claim: _<br><br>Is the claim subject to offset? ■ No ☐ Yes | |

| 3.2 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $9,333.33 |
|---|---|---|---|
| | **Bank of America**<br>P.O. Box 15019<br>Wilmington, DE 19850 | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred _<br>Last 4 digits of account number **4530** | Basis for the claim: _<br><br>Is the claim subject to offset? ■ No ☐ Yes | |

| 3.3 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $9,333.33 |
|---|---|---|---|
| | **Bank of America**<br>P.O. Box 15019<br>Wilmington, DE 19850 | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred _<br>Last 4 digits of account number **9393** | Basis for the claim: _<br><br>Is the claim subject to offset? ■ No ☐ Yes | |

| 3.4 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $9,333.33 |
|---|---|---|---|
| | **Bank of America**<br>P.O. Box 15019<br>Wilmington, DE 19850 | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred _<br>Last 4 digits of account number **4064** | Basis for the claim: _<br><br>Is the claim subject to offset? ■ No ☐ Yes | |

| 3.5 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $14,000.00 |
|---|---|---|---|
| | **BFS Capital**<br>1970 Oakcrest Ave, Suite 217<br>Saint Paul, MN 55113 | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred **-5178**<br>Last 4 digits of account number _ | Basis for the claim: _<br><br>Is the claim subject to offset? ■ No ☐ Yes | |

| 3.6 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $150,500.00 |
|---|---|---|---|
| | **Celtic Bank**<br>268 South State Street<br>Salt Lake City, UT 84111 | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred **-7200**<br>Last 4 digits of account number _ | Basis for the claim: _<br><br>Is the claim subject to offset? ■ No ☐ Yes | |

| 3.7 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $8,330.00 |
|---|---|---|---|
| | **EP Leasing, LLC**<br>P.O. Box 290775<br>El Paso, TX 79935 | ☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| | Date(s) debt was incurred _<br>Last 4 digits of account number _ | Basis for the claim: **Trailer leases**<br><br>Is the claim subject to offset? ■ No ☐ Yes | |

| Debtor | **Advance Transportation Services Incorporated** | Case number (if known) | **21-30906** |
|---|---|---|---|
| | Name | | |

| 3.8 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply* | $35,908.58 |
|---|---|---|---|

**Kabbage**
505 Lakeland Plaza Ste #347
Cumming, GA 30040

Date(s) debt was incurred _
Last 4 digits of account number _

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: _

Is the claim subject to offset? ■ No ☐ Yes

| 3.9 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $4,627.00 |
|---|---|---|---|

**LoanBuilder**
3505 Silverside Rd. Suite 200
Wilmington, DE 19810

Date(s) debt was incurred _
Last 4 digits of account number **3386**

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: _

Is the claim subject to offset? ■ No ☐ Yes

| 3.10 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $27,924.00 |
|---|---|---|---|

**On Deck Capital**
1400 Broadway 25th Floor
New York, NY 10018-5225

Date(s) debt was incurred _
Last 4 digits of account number _

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: _

Is the claim subject to offset? ■ No ☐ Yes

| 3.11 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply* | $29,980.00 |
|---|---|---|---|

**Prime Advance**
525 Walker Street
Bloomington, IN 47403

Date(s) debt was incurred _
Last 4 digits of account number _

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: _

Is the claim subject to offset? ■ No ☐ Yes

| 3.12 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $104,930.00 |
|---|---|---|---|

**Regal Capital**
525 Walker Street
Bloomington, IN 47403

Date(s) debt was incurred _
Last 4 digits of account number _

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: _

Is the claim subject to offset? ■ No ☐ Yes

| 3.13 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $70,000.00 |
|---|---|---|---|

**S.W.I.T.**
2959 Irving, Blvd.
Dallas, TX 75247

Date(s) debt was incurred _
Last 4 digits of account number **0179**

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: _

Is the claim subject to offset? ■ No ☐ Yes

| 3.14 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply* | $0.00 |
|---|---|---|---|

**United States Attorney**
Civil Process Clerk-
Internal Revenue Service
601 N.W. Loop 410, Suite 600
San Antonio, TX 78216

Date(s) debt was incurred _
Last 4 digits of account number _

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: **Notice only**

Is the claim subject to offset? ■ No ☐ Yes

| Debtor | Advance Transportation Services Incorporated | Case number (if known) | 21-30906 |
|---|---|---|---|
| | Name | | |

**3.15** Nonpriority creditor's name and mailing address

**United States Attorney General**
**Department of Justice**
**950 Pennsylvania Avenue, N.W.**
**Washington, DC 20530**

Date(s) debt was incurred _

Last 4 digits of account number _

As of the petition filing date, the claim is: *Check all that apply*

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **Notice only**

Is the claim subject to offset? ■ No ☐ Yes

$0.00

---

**3.16** Nonpriority creditor's name and mailing address

**Vista Star Scot Properties**
**P.O. Box 522541**
**El Paso, TX 79952**

Date(s) debt was incurred _

Last 4 digits of account number _

As of the petition filing date, the claim is: *Check all that apply*

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: _

Is the claim subject to offset? ■ No ☐ Yes

$12,173.00

---

**3.17** Nonpriority creditor's name and mailing address

**World Global Capital**
**116 Nassau Street, Suite 804**
**New York, NY 10038**

Date(s) debt was incurred _

Last 4 digits of account number _

As of the petition filing date, the claim is: *Check all that apply.*

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim: _

Is the claim subject to offset? ■ No ☐ Yes

$3,700.00

---

**3.18** Nonpriority creditor's name and mailing address

**Yes Capital**
**525 Walker Street**
**Bloomington, IN 47403**

Date(s) debt was incurred _

Last 4 digits of account number _

As of the petition filing date, the claim is: *Check all that apply.*

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:  **Merchant Loan**

Is the claim subject to offset? ■ No ☐ Yes

$29,980.00

---

**Part 3:  List Others to Be Notified About Unsecured Claims**

4. List in alphabetical order any others who must be notified for claims listed in Parts 1 and 2. Examples of entities that may be listed are collection agencies, assignees of claims listed above, and attorneys for unsecured creditors.

If no others need to be notified for the debts listed in Parts 1 and 2, do not fill out or submit this page. If additional pages are needed, copy the next page.

| Name and mailing address | On which line in Part1 or Part 2 is the related creditor (if any) listed? | Last 4 digits of account number, if any |
|---|---|---|

---

**Part 4:  Total Amounts of the Priority and Nonpriority Unsecured Claims**

5. Add the amounts of priority and nonpriority unsecured claims.

| | | | Total of claim amounts |
|---|---|---|---|
| 5a. Total claims from Part 1 | 5a. | $ | 13,500.00 |
| 5b. Total claims from Part 2 | 5b. + | $ | 545,052.58 |
| 5c. Total of Parts 1 and 2 Lines 5a + 5b = 5c. | 5c. | $ | 558,552.58 |

**Fill in this information to identify the case:**

Debtor name   __Advance Transportation Services Incorporated__

United States Bankruptcy Court for the:   __WESTERN DISTRICT OF TEXAS__

Case number (if known)   __21-30906__

☐ Check if this is an amended filing

## Official Form 206G
## Schedule G: Executory Contracts and Unexpired Leases                    12/15

Be as complete and accurate as possible. If more space is needed, copy and attach the additional page, number the entries consecutively.

1.  **Does the debtor have any executory contracts or unexpired leases?**
    ☐ No. Check this box and file this form with the debtor's other schedules. There is nothing else to report on this form.
    ■ Yes. Fill in all of the information below even if the contacts of leases are listed on *Schedule A/B: Assets - Real and Personal Property* (Official Form 206A/B).

2. **List all contracts and unexpired leases**

**State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease**

| 2.1. | State what the contract or lease is for and the nature of the debtor's interest | Nineteen 53' dryvans | |
|---|---|---|---|
| | State the term remaining | | EP Leasing, LLC<br>P.O. Box 290775<br>El Paso, TX 79935 |
| | List the contract number of any government contract | _____ | |

| 2.2. | State what the contract or lease is for and the nature of the debtor's interest | Eighteen tractors and trailers | |
|---|---|---|---|
| | State the term remaining | | Penske Truck Leasing<br>11451 Chito Samaniego Dr.<br>El Paso, TX 79936 |
| | List the contract number of any government contract | _____ | |

| 2.3. | State what the contract or lease is for and the nature of the debtor's interest | 1477 Lomaland, Ste. D<br>El Paso, TX 79935 | |
|---|---|---|---|
| | State the term remaining | | Vista Star Scot Properties<br>P.O. Box 522541<br>El Paso, TX 79952 |
| | List the contract number of any government contract | | |

**Fill in this information to identify the case:**

Debtor name **Advance Transportation Services Incorporated**

United States Bankruptcy Court for the: **WESTERN DISTRICT OF TEXAS**

Case number (if known) **21-30906**

☐ Check if this is an amended filing

# Official Form 206H
## Schedule H: Your Codebtors                                12/15

Be as complete and accurate as possible. If more space is needed, copy the Additional Page, numbering the entries consecutively. Attach the Additional Page to this page.

**1. Do you have any codebtors?**

☐ No. Check this box and submit this form to the court with the debtor's other schedules. Nothing else needs to be reported on this form.

■ Yes

**2. In Column 1, list as codebtors all of the people or entities who are also liable for any debts listed by the debtor in the schedules of creditors, Schedules D-G. Include all guarantors and co-obligors. In Column 2, identify the creditor to whom the debt is owed and each schedule on which the creditor is listed. If the codebtor is liable on a debt to more than one creditor, list each creditor separately in Column 2.**

Column 1: Codebtor

Column 2: Creditor

| | Name | Mailing Address | Name | Check all schedules that apply: |
|---|---|---|---|---|
| 2.1 | Abraham Wardy | 12308 Red Sun<br>El Paso, TX 79938 | CIT | ■ D __2.1__<br>☐ E/F ____<br>☐ G ____ |
| 2.2 | Abraham Wardy | 12308 Red Sun<br>El Paso, TX 79938 | Internal Revenue Service | ☐ D ____<br>■ E/F __2.1__<br>☐ G ____ |
| 2.3 | Abraham Wardy | 12308 Red Sun<br>El Paso, TX 79938 | Penske Truck Leasing | ■ D __2.6__<br>☐ E/F ____<br>☐ G ____ |
| 2.4 | Abraham Wardy | 12308 Red Sun<br>El Paso, TX 79938 | S.W.I.T. | ☐ D ____<br>■ E/F __3.13__<br>☐ G ____ |
| 2.5 | Abraham Wardy | 12308 Red Sun<br>El Paso, TX 79938 | EP Leasing, LLC | ☐ D ____<br>■ E/F __3.7__<br>☐ G ____ |

Software Copyright (c) 1996-2021 Best Case, LLC - www.bestcase.com                    Best Case Bankruptcy

# EXHIBIT "2A"

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

|  |  |  |
|---|---|---|
| In re | § | |
| | § | |
| **ADVANCE TRANSPORTATION** | § | Case No. 21-30906-HCM-11 |
| **SERVICES INCORPORATED,** | § | |
| Debtor. | § | |

## AMENDMENT TO SCHEDULES A/B

Now comes the Debtor ADVANCE TRANSPORTATION SERVICES INCORPORATED and files this its Amendment to Schedules A/B hereto attached.

The undersigned officer for the Debtor declares that he has read the attached Amendment to Schedules A/B and that it is true and correct to the best of his knowledge, information, and belief.

Date: 1/26/2022          ADVANCE TRANSPORTATION SERVICES INCORPORATED

ABRAHAM J. WARDY
Its: President

/s/

E.P. BUD KIRK
Texas State Bar No.  11508650
600 Sunland Park Dr.
Building Four, Ste. 400
El Paso, TX  79912
(915) 584-3773
(915) 581-3452 facsimile
budkirk@aol.com

Attorney for Debtor

## CERTIFICATE OF SERVICE

I do hereby certify that on the _2/6th_ day of January, 2022, I did cause a copy of the foregoing Amendment to Schedules A/B to be mailed by postage pre-paid U.S. Mail to U.S. Trustee, P.O. Box 1539, San Antonio, TX 78205-1539; to the Subchapter V Trustee, c/o Brad W. Odell, 1500 Broadway, Suite 700 Lubbock, Texas 79401; to Scot Properties, Ltd., c/o Harrel L. Davis, P.O. Box 1322, El Paso, TX 79947-1322; to Advance Transportation Services, c/o Abraham J. Wardy, 12308 Red Sun Dr., El Paso, TX 79938; to City of El Paso, c/o Don Stecker, 112 E. Pecan Street, Ste. 2200, San Antonio, TX 78205; and to all parties in interest as shown on the attached list.

/s/ _E. P. Bud Kirk_

E.P. BUD KIRK

4981-MC-012522

American Express
P.O. Box 650448
Dallas, TX 75265-0048

BFS Capital
1970 Oakcrest Ave, Suite 217
Saint Paul, MN 55113

Celtic Bank
268 South State Street
Salt Lake City, UT 84111

CIT
10201 Centuarion Parkway North
Suite 100
Jacksonville, FL 32256

E Advance Services
122 East 42nd Street, Ste. 2112
New York, NY 10168

EP Leasing, LLC
P.O. Box 290775
El Paso, TX 79935

Franco Factoring
6929 Imperial Ridge Dr.
El Paso, TX 79912-7616

Internal Revenue Service
Centralized Insolvency Office
P.O. Box 7346
Philadelphia, PA 19101-7346

IRS Insolvency Office
300 E. 8th Street, Mail Stop 5026AUS
Austin, TX 78701

Kabbage
505 Lakeland Plaza Ste #347
Cumming, GA 30040

LoanBuilder
3505 Silverside Rd. Suite 200
Wilmington, DE 19810

On Deck Capital
1400 Broadway 25th Floor
New York, NY 10018-5225

Penske
P.O. Box 563
Reading, PA 19603

Penske Truck Leasing
11451 Chito Samaniego Dr.
El Paso, TX 79936

People's Premium Finance
600 SW Jefferson, Suite 204
Lee Summit, MO 64063

Prime Advance
161 Kings Highway
Brooklyn, NY   11223

Regal Capital
161 Kings Highway
Brooklyn, NY   11223

S.W.I.T.
2959 Irving, Blvd.
Dallas, TX 75247

United States Attorney
Civil Process Clerk-
Internal Revenue Service
601 N.W. Loop 410, Suite 600
San Antonio, TX 78216

United States Attorney General
Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, DC 20530

Vista Star Scot Properties
P.O. Box 522541
El Paso, TX 79952

World Global Capital
116 Nassau Street, Suite 804
New York, NY 10038

Yes Capital
161 Kings Highway
Brooklyn, NY   11223

S.W.I.T.
c/o Corey W. Haugland
609 Montana Avenue
El Paso, TX   79902

**Fill in this information to identify the case:**

Debtor name **Advance Transportation Services Incorporated**

United States Bankruptcy Court for the: **WESTERN DISTRICT OF TEXAS**

Case number (if known) **21-30906**

☐ Check if this is an amended filing

# Official Form 206A/B
## Schedule A/B: Assets - Real and Personal Property

12/15

Disclose all property, real and personal, which the debtor owns or in which the debtor has any other legal, equitable, or future interest. Include all property in which the debtor holds rights and powers exercisable for the debtor's own benefit. Also include assets and properties which have no book value, such as fully depreciated assets or assets that were not capitalized. In Schedule A/B, list any executory contracts or unexpired leases. Also list them on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G).

Be as complete and accurate as possible. If more space is needed, attach a separate sheet to this form. At the top of any pages added, write the debtor's name and case number (if known). Also identify the form and line number to which the additional information applies. If an additional sheet is attached, include the amounts from the attachment in the total for the pertinent part.

For Part 1 through Part 11, list each asset under the appropriate category or attach separate supporting schedules, such as a fixed asset schedule or depreciation schedule, that gives the details for each asset in a particular category. List each asset only once. In valuing the debtor's interest, do not deduct the value of secured claims. See the instructions to understand the terms used in this form.

**Part 1:      Cash and cash equivalents**

**1. Does the debtor have any cash or cash equivalents?**

☐ No. Go to Part 2.
☑ Yes Fill in the information below.

All cash or cash equivalents owned or controlled by the debtor

Current value of debtor's interest

3.   Checking, savings, money market, or financial brokerage accounts *(Identify all)*

| | Name of institution (bank or brokerage firm) | Type of account | Last 4 digits of account number | |
|---|---|---|---|---|
| 3.1. | Western Heritage | checking | 0260 | $315.00 |
| 3.2. | Western Heritage | checking | 0686 | $1,800.00 |

4.   Other cash equivalents *(Identify all)*

5.   Total of Part 1.
Add lines 2 through 4 (including amounts on any additional sheets). Copy the total to line 80.

$2,115.00

**Part 2:      Deposits and Prepayments**

**6. Does the debtor have any deposits or prepayments?**

☑ No. Go to Part 3.
☐ Yes Fill in the information below.

**Part 3:      Accounts receivable**

**10. Does the debtor have any accounts receivable?**

☐ No. Go to Part 4.
☑ Yes Fill in the information below.

11.   Accounts receivable

Software Copyright (c) 1996-2021 Best Case, LLC - www.bestcase.com                    Best Case Bankruptcy

| Debtor | **Advance Transportation Services Incorporated** | | Case number *(if known)* **21-30906** |
|---|---|---|---|
| | Name | | |

| 11a. 90 days old or less: | 60,000.00 | - | 0.00 | = .... | $60,000.00 |
|---|---|---|---|---|---|
| | face amount | | doubtful or uncollectible accounts | | |

| 12. | **Total of Part 3.** | $60,000.00 |
|---|---|---|
| | Current value on lines 11a + 11b = line 12.  Copy the total to line 82. | |

**Part 4:    Investments**

**13. Does the debtor own any investments?**

☑ No.  Go to Part 5.
☐ Yes Fill in the information below.

**Part 5:    Inventory, excluding agriculture assets**

**18. Does the debtor own any inventory (excluding agriculture assets)?**

☑ No.  Go to Part 6.
☐ Yes Fill in the information below.

**Part 6:    Farming and fishing-related assets (other than titled motor vehicles and land)**

**27. Does the debtor own or lease any farming and fishing-related assets (other than titled motor vehicles and land)?**

☑ No.  Go to Part 7.
☐ Yes Fill in the information below.

**Part 7:    Office furniture, fixtures, and equipment; and collectibles**

**38. Does the debtor own or lease any office furniture, fixtures, equipment, or collectibles?**

☐ No.  Go to Part 8.
☑ Yes Fill in the information below.

| | General description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|---|
| 39. | Office furniture | | | |
| | Office furniture | $0.00 | | $2,000.00 |
| | Books and paintings | $0.00 | | $200.00 |
| 40. | Office fixtures | | | |
| 41. | Office equipment, including all computer equipment and communication systems equipment and software | | | |
| | Uniforms, protective gear | $0.00 | | $500.00 |
| | Equipment | $0.00 | | $2,500.00 |
| 42. | Collectibles *Examples*: Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; china and crystal; stamp, coin, or baseball card collections; other collections, memorabilia, or collectibles | | | |

| 43. | **Total of Part 7.** | $5,200.00 |
|---|---|---|
| | Add lines 39 through 42.  Copy the total to line 86. | |

| Debtor | **Advance Transportation Services Incorporated** | Case number (if known) **21-30906** |
|---|---|---|
| | Name | |

**44.** Is a depreciation schedule available for any of the property listed in Part 7?
☑ No
☐ Yes

**45.** Has any of the property listed in Part 7 been appraised by a professional within the last year?
☑ No
☐ Yes

**Part 8:** Machinery, equipment, and vehicles

**46. Does the debtor own or lease any machinery, equipment, or vehicles?**

☐ No. Go to Part 9.
☑ Yes Fill in the information below.

| General description<br>Include year, make, model, and identification numbers<br>(i.e., VIN, HIN, or N-number) | Net book value of<br>debtor's interest<br>(Where available) | Valuation method used<br>for current value | Current value of<br>debtor's interest |
|---|---|---|---|
| **47.** Automobiles, vans, trucks, motorcycles, trailers, and titled farm vehicles | | | |
| 47.1. 2019 Ford Transit | | FMV | $38,000.00 |
| 47.2. 2006 INTL. TDAC VIN-6880 | | FMV | $5,000.00 |
| 47.3. 2006 INTL TDAC VIN-5596 | | FMV | $5,000.00 |
| 47.4. 2016 Freightliner Tractor VIN-9713 (lease surrendered January 14, 2022) | | FMV | $0.00 |
| 47.5. 2017 Hyundai Trailer VIN-9011 (lease surrendered January 14, 2022) | | FMV | $0.00 |
| 47.6. 2017 Freightliner Tractor VIN-3366 (lease surrendered January 14, 2022) | | FMV | $0.00 |
| 47.7. 2019 Freightliner Truck VIN-6205 (lease surrendered January 14, 2022) | | FMV | $0.00 |
| 47.8. 2019 Freightliner Truck VIN-6136 (lease surrendered January 14, 2022) | | FMV | $0.00 |
| 47.9. 2019 Freightliner Truck VIN-6137 (lease surrendered January 14, 2022) | | FMV | $0.00 |
| 47.10. 2019 Freightliner Truck VIN-6138 (lease surrendered January 14, 2022) | | FMV | $0.00 |
| 47.11. 2019 Freightliner Truck VIN-6139 (lease surrendered January 14, 2022) | | FMV | $0.00 |
| 47.12. 2019 Hyundai Trailer VIN-5047 (lease surrendered January 14, 2022) | | FMV | $0.00 |

Software Copyright (c) 1996-2021 Best Case, LLC - www.bestcase.com
Best Case Bankruptcy

| Debtor | **Advance Transportation Services Incorporated** | | Case number *(if known)* __21-30906__ | |
|---|---|---|---|---|
| | Name | | | |

| | | | | |
|---|---|---|---|---|
| 47.13 | **2019 General Motors VIN-0468 (lease surrendered January 14, 2022)** | | FMV | $0.00 |
| 47.14 | **2019 International VIN-6628 (lease surrendered January 14, 2022)** | | FMV | $0.00 |
| 47.15 | **2018 Freightliner Tractor VIN-4028 (lease surrendered January 14, 2022)** | | FMV | $0.00 |
| 47.16 | **2018 Freightliner Tractor VIN-8606 (lease surrendered January 14, 2022)** | | FMV | $0.00 |
| 47.17 | **2019 Freightliner Tractor VIN-7261 (lease surrendered January 14, 2022)** | | FMV | $0.00 |
| 47.18 | **2020 International Truck VIN-8160 (lease surrendered January 14, 2022)** | | FMV | $0.00 |
| 47.19 | **2020 International Truck VIN-8161 (lease surrendered January 14, 2022)** | | FMV | $0.00 |
| 47.20 | **2014 Freightliner Tractor VIN-2860 (lease surrendered January 14, 2022)** | | FMV | $0.00 |
| 47.21 | **2014 Freightliner Tractor VIN-2862 (lease surrendered January 14, 2022)** | | FMV | $0.00 |
| 47.22 | **Nineteen 53' dry vans, various makes, years 1997-2003, leased from EP Leasing, Inc. (See attached sheets)** | | FMV | $0.00 |
| 47.23 | **2015 Chevrolet 500 cargo van** | | FMV | $12,000.00 |

| | | | | |
|---|---|---|---|---|
| 48. | **Watercraft, trailers, motors, and related accessories** *Examples:* Boats, trailers, motors, floating homes, personal watercraft, and fishing vessels | | | |
| 49. | **Aircraft and accessories** | | | |
| 50. | **Other machinery, fixtures, and equipment (excluding farm machinery and equipment)** | | | |
| | **Tools** | $0.00 | FMV | $10,000.00 |
| | **Machinery (two forklifts, wrapping machine)** | $0.00 | FMV | $25,000.00 |

| | | | |
|---|---|---|---|
| 51. | **Total of Part 8.** | | $95,000.00 |
| | Add lines 47 through 50. Copy the total to line 87. | | |

Official Form 206A/B       Schedule A/B Assets - Real and Personal Property       page 4

Software Copyright (c) 1996-2021 Best Case, LLC - www.bestcase.com       Best Case Bankruptcy

| Debtor | **Advance Transportation Services Incorporated** | Case number *(if known)* **21-30906** |
|---|---|---|
| | Name | |

**52.** Is a depreciation schedule available for any of the property listed in Part 8?
- ☑ No
- ☐ Yes

**53.** Has any of the property listed in Part 8 been appraised by a professional within the last year?
- ☑ No
- ☐ Yes

### Part 9: Real property

**54. Does the debtor own or lease any real property?**

- ☑ No. Go to Part 10.
- ☐ Yes Fill in the information below.

### Part 10: Intangibles and intellectual property

**59. Does the debtor have any interests in intangibles or intellectual property?**

- ☑ No. Go to Part 11.
- ☐ Yes Fill in the information below.

### Part 11: All other assets

**70. Does the debtor own any other assets that have not yet been reported on this form?**
Include all interests in executory contracts and unexpired leases not previously reported on this form.

- ☑ No. Go to Part 12.
- ☐ Yes Fill in the information below.

Software Copyright (c) 1996-2021 Best Case, LLC - www.bestcase.com                                                                Best Case Bankruptcy

Debtor   __Advance Transportation Services Incorporated__         Case number *(if known)* __21-30906__
         Name

| Part 12: | Summary |

In Part 12 copy all of the totals from the earlier parts of the form

| Type of property | Current value of personal property | Current value of real property |
|---|---|---|
| 80. Cash, cash equivalents, and financial assets. *Copy line 5, Part 1* | $2,115.00 | |
| 81. Deposits and prepayments. *Copy line 9, Part 2.* | $0.00 | |
| 82. Accounts receivable. *Copy line 12, Part 3.* | $60,000.00 | |
| 83. Investments. *Copy line 17, Part 4.* | $0.00 | |
| 84. Inventory. *Copy line 23, Part 5.* | $0.00 | |
| 85. Farming and fishing-related assets. *Copy line 33, Part 6.* | $0.00 | |
| 86. Office furniture, fixtures, and equipment; and collectibles. *Copy line 43, Part 7.* | $5,200.00 | |
| 87. Machinery, equipment, and vehicles. *Copy line 51, Part 8.* | $95,000.00 | |
| 88. Real property. *Copy line 56, Part 9.*..............................................> | | $0.00 |
| 89. Intangibles and intellectual property. *Copy line 66, Part 10.* | $0.00 | |
| 90. All other assets. *Copy line 78, Part 11.* | + $0.00 | |
| 91. Total. Add lines 80 through 90 for each column | $162,315.00 | + 91b. $0.00 |
| 92. Total of all property on Schedule A/B. Add lines 91a+91b=92 | | $162,315.00 |

**EP Leasing, LLC**

EIN: 47-3920050
PO BOX 290775
EL PASO TX 79929-0775

# Invoice

| Date | Invoice # |
|------|-----------|
| 12/1/2021 | EP1580 |

**Bill To**

ATS I, INC.
1477 Lomaland Suite D10
EL PASO TX 79935

| P.O. No. | Terms | Project |
|----------|-------|---------|
|          | Net 10 |        |

| Quantity | Description | Rate | Amount |
|----------|-------------|------|--------|
| 15 | Trailer Rentals for the month of December 2021<br>537601<br>530693<br>534176<br>HD025<br>536824<br>HD221<br>532416<br>531279<br>532349<br>534313<br>531766<br>532923<br>537102<br>537561<br>HD038 | 215.00 | 3,225.00 |
| | **Total** | | |

**EP Leasing, LLC**

EIN: 47-3920050
PO BOX 290775
EL PASO TX 79929-0775

# Invoice

| Date | Invoice # |
|------|-----------|
| 12/1/2021 | EP1580 |

**Bill To**

ATS I, INC.
1477 Lomaland Suite D10
EL PASO TX 79935

| P.O. No. | Terms | Project |
|----------|-------|---------|
|          | Net 10 |         |

| Quantity | Description | Rate | Amount |
|----------|-------------|------|--------|
| 4 | 539277<br>533556<br>536142<br>28053 | 235.00 | 940.00 |

| | Total | $4,165.00 |
|--|-------|-----------|

# EXHIBIT "3"

**Fill in this information to identify the case:**

Debtor Name **ADVANCE TRANSPORTATION SERVICES INC**

United States Bankruptcy Court for the: _____  District of _____

Case number: **21-30906-HCM-11**

☐ Check if this is an amended filing

## Official Form 425C

## Monthly Operating Report for Small Business Under Chapter 11          12/17

Month: **DECEMBER**

Line of business: **TRANSPORTATION**

Date report filed: **02/16/2022**
MM / DD / YYYY

NAISC code: _____

In accordance with title 28, section 1746, of the United States Code, I declare under penalty of perjury that I have examined the following small business monthly operating report and the accompanying attachments and, to the best of my knowledge, these documents are true, correct, and complete.

Responsible party: **ABRAHAM WARDY**

Original signature of responsible party _(signature)_

Printed name of responsible party **ABRAHAM WARDY**

### 1. Questionnaire

Answer all questions on behalf of the debtor for the period covered by this report, unless otherwise indicated.

If you answer *No* to any of the questions in lines 1-9, attach an explanation and label it *Exhibit A*.

| | | Yes | No | N/A |
|---|---|:---:|:---:|:---:|
| 1. | Did the business operate during the entire reporting period? | ☑ | ☐ | ☐ |
| 2. | Do you plan to continue to operate the business next month? | ☑ | ☐ | ☐ |
| 3. | Have you paid all of your bills on time? | ☐ | ☑ | ☐ |
| 4. | Did you pay your employees on time? | ☑ | ☐ | ☐ |
| 5. | Have you deposited all the receipts for your business into debtor in possession (DIP) accounts? | ☑ | ☐ | ☐ |
| 6. | Have you timely filed your tax returns and paid all of your taxes? | ☐ | ☑ | ☐ |
| 7. | Have you timely filed all other required government filings? | ☐ | ☑ | ☐ |
| 8. | Are you current on your quarterly fee payments to the U.S. Trustee or Bankruptcy Administrator? | ☑ | ☐ | ☐ |
| 9. | Have you timely paid all of your insurance premiums? | ☑ | ☐ | ☐ |

If you answer *Yes* to any of the questions in lines 10-18, attach an explanation and label it *Exhibit B*.

| | | Yes | No | N/A |
|---|---|:---:|:---:|:---:|
| 10. | Do you have any bank accounts open other than the DIP accounts? | ☐ | ☑ | ☐ |
| 11. | Have you sold any assets other than inventory? | ☐ | ☑ | ☐ |
| 12. | Have you sold or transferred any assets or provided services to anyone related to the DIP in any way? | ☐ | ☑ | ☐ |
| 13. | Did any insurance company cancel your policy? | ☐ | ☑ | ☐ |
| 14. | Did you have any unusual or significant unanticipated expenses? | ☐ | ☑ | ☐ |
| 15. | Have you borrowed money from anyone or has anyone made any payments on your behalf? | ☐ | ☑ | ☐ |
| 16. | Has anyone made an investment in your business? | ☐ | ☑ | ☐ |

Debtor Name **ADVANCE TRANSPORTATION SERVICES INC**  Case number 21-30906-HCM-11

17. Have you paid any bills you owed before you filed bankruptcy? ☑ ☐ ☐

18. Have you allowed any checks to clear the bank that were issued before you filed bankruptcy? ☑ ☐ ☐

## 2. Summary of Cash Activity for All Accounts

19. **Total opening balance of all accounts**

This amount must equal what you reported as the cash on hand at the end of the month in the previous month. If this is your first report, report the total cash on hand as of the date of the filing of this case.

$ 616.77

20. **Total cash receipts**

Attach a listing of all cash received for the month and label it *Exhibit C*. Include all cash received even if you have not deposited it at the bank, collections on receivables, credit card deposits, cash received from other parties, or loans, gifts, or payments made by other parties on your behalf. Do not attach bank statements in lieu of *Exhibit C*.

Report the total from *Exhibit C* here.

$ 186,815.57

21. **Total cash disbursements**

Attach a listing of all payments you made in the month and label it *Exhibit D*. List the date paid, payee, purpose, and amount. Include all cash payments, debit card transactions, checks issued even if they have not cleared the bank, outstanding checks issued before the bankruptcy was filed that were allowed to clear this month, and payments made by other parties on your behalf. Do not attach bank statements in lieu of *Exhibit D*.

Report the total from *Exhibit D* here.

− $ 130,000.66

22. **Net cash flow**

Subtract line 21 from line 20 and report the result here.
This amount may be different from what you may have calculated as *net profit*.

+ $ 56,814.91

23. **Cash on hand at the end of the month**

Add line 22 + line 19. Report the result here.

Report this figure as the *cash on hand at the beginning of the month* on your next operating report.

This amount may not match your bank account balance because you may have outstanding checks that have not cleared the bank or deposits in transit.

= $ 57,431.68

## 3. Unpaid Bills

Attach a list of all debts (including taxes) which you have incurred since the date you filed bankruptcy but have not paid. Label it *Exhibit E*. Include the date the debt was incurred, who is owed the money, the purpose of the debt, and when the debt is due. Report the total from *Exhibit E* here.

24. **Total payables** $ _____

*(Exhibit E)*

Debtor Name **ADVANCE TRANSPORTATION SERVICES INC**          Case number **21-30906-HCM-11**

## 4. Money Owed to You

Attach a list of all amounts owed to you by your customers for work you have done or merchandise you have sold. Include amounts owed to you both before, and after you filed bankruptcy.  Label it *Exhibit F*. Identify who owes you money, how much is owed, and when payment is due. Report the total from *Exhibit F* here.

25. **Total receivables**                                                                            $  51,162.53

   *(Exhibit F)*

## 5. Employees

26. What was the number of employees when the case was filed?                                     21

27. What is the number of employees as of the date of this monthly report?                        21

## 6. Professional Fees

28. How much have you paid this month in professional fees related to this bankruptcy case?          $  8,571.00

29. How much have you paid in professional fees related to this bankruptcy case since the case was filed?   $  11,571.00

30. How much have you paid this month in other professional fees?                                   $  0.00

31. How much have you paid in total other professional fees since filing the case?                  $  11,571.00

## 7. Projections

Compare your actual cash receipts and disbursements to what you projected in the previous month. Projected figures in the first month should match those provided at the initial debtor interview, if any.

|  | Column A | | Column B | | Column C | |
|---|---|---|---|---|---|---|
|  | **Projected** | − | **Actual** | = | **Difference** | |
|  | Copy lines 35-37 from the previous month's report. | | Copy lines 20-22 of this report. | | Subtract Column B from Column A. | |
| 32. Cash receipts | $ 186,815.57 | − | $ 186,815.57 | = | $ | 0.00 |
| 33. Cash disbursements | $ 130,000.66 | − | $ 130,000.66 | = | $ | 0.00 |
| 34. Net cash flow | $ 56,814.91 | − | $ 56,814.91 | = | $ | 0.00 |

35. Total projected cash receipts for the next month:                                        $  131,197.42

36. Total projected cash disbursements for the next month:                              − $  150,355.19

37. Total projected net cash flow for the next month:                                    = $  -19,157.77

Debtor Name  **ADVANCE TRANSPORTATION SERVICES INC**        Case number **21-30906-HCM-11**

---

### 8. Additional Information

If available, check the box to the left and attach copies of the following documents.

☑ 38. Bank statements for each open account (redact all but the last 4 digits of account numbers).

☐ 39. Bank reconciliation reports for each account.

☐ 40. Financial reports such as an income statement (profit & loss) and/or balance sheet.

☐ 41. Budget, projection, or forecast reports.

☐ 42. Project, job costing, or work-in-progress reports.

| CASE NAME: | ADVANCE TRANSPORTATION SERVICES INC | | | | | | |
|---|---|---|---|---|---|---|---|
| CASE NUMBER: | 21-30906-HCM-11 | | | | | | |

SMALL BUSINESS MONTHLY OPERATING REPORT - EXHIBIT B-1

| CASH RECEIPTS AND DISBURSEMENTS | MONTH 2021 December | MONTH | MONTH | MONTH | MONTH | MONTH | Six Months To Date |
|---|---|---|---|---|---|---|---|
| 1. CASH-BEGINNING OF MONTH | $618.77 | | | | | | $618.77 |
| RECEIPTS: | | | | | | | |
| 2. CASH SALES | 0.00 | | | | | | 0.00 |
| 3. COLLECTION OF ACCOUNTS RECEIVABLE | 188,188.80 | | | | | | 188,188.80 |
| 4. LOANS & ADVANCES (attach list) | 0.00 | | | | | | 0.00 |
| 5. SALE OF ASSETS | 0.00 | | | | | | 0.00 |
| 6. OTHER (attach list) | 0.00 | | | | | | 0.00 |
| TOTAL RECEIPTS** | $188,188.80 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $188,188.80 |
| *(Withdrawal) Contribution by Individual Debtor MFR-2* | 0.00 | | | | | | 0.00 |
| DISBURSEMENTS: | | | | | | | |
| 7. NET PAYROLL | 61,459.00 | | | | | | 61,459.00 |
| 8. PAYROLL TAXES PAID | 0.00 | | | | | | 0.00 |
| 9. SALES, USE & OTHER TAXES PAID | 0.00 | | | | | | 0.00 |
| 10. SECURED/RENTAL/LEASES | 4,726.87 | | | | | | 4,726.87 |
| 11. UTILITIES & TELEPHONE | 5,257.57 | | | | | | 5,257.57 |
| 12. INSURANCE | 31,708.00 | | | | | | 31,708.00 |
| 13. INVENTORY PURCHASES | 0.00 | | | | | | 0.00 |
| 14. VEHICLE EXPENSES | 10,268.42 | | | | | | 10,268.42 |
| 15. TRAVEL & ENTERTAINMENT | 300.00 | | | | | | 300.00 |
| 16. REPAIRS, MAINTENANCE & SUPPLIES | 7,036.80 | | | | | | 7,036.80 |
| 17. ADMINISTRATIVE & SELLING | 0.00 | | | | | | 0.00 |
| 18. OTHER (attach list) | 675.00 | | | | | | 675.00 |
| TOTAL DISBURSEMENTS FROM OPERATIONS | $121,429.66 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $121,429.66 |
| 19. PROFESSIONAL FEES | 8,571.00 | | | | | | 8,571.00 |
| 20. U.S. TRUSTEE FEES | 0.00 | | | | | | 0.00 |
| 21. OTHER REORGANIZATION EXPENSES (attach list) | 0.00 | | | | | | 0.00 |
| TOTAL DISBURSEMENTS** | $130,000.66 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $130,000.66 |
| 22. NET CASH FLOW | 58,188.14 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 58,188.14 |
| 23. CASH - END OF MONTH (SMOR-2) | $58,814.91 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $58,814.91 |

* Applies to individual debtors only

SBMOR-Exhibit B-1    **Numbers for the current month should balance (match)
RECEIPTS and CHECKS/OTHER DISBURSEMENTS lines on SBMOR-Exhibit B-2

Revised 01/31/2014

CASE NAME: **ADVANCE TRANSPORTATION SERVICES INC**

CASE NUMBER: **21-30906-HCM-11**

SMALL BUSINESS MONTHLY OPERATING REPORT - EXHIBIT B-2

## CASH ACCOUNT RECONCILIATION
### MONTH OF December 2021

| | OPERATING | PAYROLL | TAX | OTHER FUNDS | TOTAL |
|---|---|---|---|---|---|
| BANK NAME | WESTERN HERITAGE | | | | |
| ACCOUNT NUMBER | BRAND ONE | | | | |
| ACCOUNT TYPE | OPERATING | PAYROLL | TAX | OTHER FUNDS | TOTAL |
| BEGINNING BANK BALANCE | $ 616.77 | | | | $ 616.77 |
| RECEIPTS | 188,198.80 | | | | 188,198.80 |
| TRANSFERS BETWEEN ACCOUNTS | | | | | 0.00 |
| CHECKS/OTHER DISBURSEMENTS | 130,000.66 | | | | 130,000.66 |
| ENDING BANK BALANCE | $ 56,814.91 | $ 0.00 | $ 0.00 | $ 0.00 | $ 56,814.91 |
| DEPOSITS IN TRANSIT | | | | | 0.00 |
| OUTSTANDING CHECKS | | | | | 0.00 |
| ADJUSTED BANK BALANCE | $ 56,814.91 | $ 0.00 | $ 0.00 | $ 0.00 | $ 56,814.91 |
| BEGINNING CASH - PER BOOKS* | $ 616.77 | | | | $ 616.77 |
| RECEIPTS* | 188,198.80 | | | | 188,198.80 |
| TRANSFERS BETWEEN ACCOUNTS | | | | | 0.00 |
| (WITHDRAWAL) OR CONTRIBUTION BY INDIVIDUAL DEBTOR  MFR-2 | | | | | 0.00 |
| CHECKS/OTHER DISBURSEMENTS* | 130,000.66 | | | | 130,000.66 |
| ENDING CASH - PER BOOKS* | $ 56,814.91 | $ 0.00 | $ 0.00 | $ 0.00 | $ 56,814.91 |

**SBMOR-Exhibit B-2**   * Numbers should balance (match) BEGINNING CASH, TOTAL RECEIPTS, TOTAL DISBURSEMENTS and ENDING CASH lines on SBMOR-Exhibit B-1. Copies of all bank statements should be attached.   *Revised 01/31/2014*



**Contact us:**
(915) 782-2470

 

**Branch:**
Western Heritage Bank
2290 Trawood Dr
El Paso, TX 79935

**Visit our website at:**
www.westernheritagebank.com

ADVANCE TRANSPORTATION
SERVICES INCORPORATED
12308 RED SUN DR
EL PASO TX 79938-7738

Page 1 of 17

**Statement Date: December 31, 2021**

**Account Number:** ▇▇▇0686

## A PARTNER YOU CAN COUNT ON

Protect your business from financial fraud with Positive Pay today. Positive Pay is a fraud prevention tool businesses can use to protect against check and ACH fraud. Detect suspicious or fraudulent transaction before it's too late. Email our Treasury Management Team today for more information treasurymanagement@westernheritagebank.com

# BASIC BUSINESS CHECKING

## ACCOUNT ACTIVITY SUMMARY

| | | |
|---|---|---|
| Statement period number of days | | 31 |
| Average balance | | $10,582.54 |
| Total service charge today | | $10.00 |

| | | | |
|---|---|---|---|
| Previous balance | 11/30/2021 | | $129.20 |
| Deposits/credits | 13 | | $166,481.42 |
| Checks/withdrawals | 157 | | $147,179.12 |
| Ending balance | 12/31/2021 | | $19,431.50 |



## DEPOSITS

| Date | Description | Amount |
|---|---|---|
| 12/02/2021 | INCOMING WIRE FRANCO FACTORING LLC | $22,621.03 |
| 12/03/2021 | ASSOCGLOBAL PMD ATS.Receivables3 ACH CREDIT PAYMENT 6011357 | $734.76 |
| 12/09/2021 | INCOMING WIRE FRANCO FACTORING LLC | $32,834.39 |
| 12/10/2021 | ASSOCGLOBAL PMD ATS.Receivables3 ACH CREDIT PAYMENT 6011472 | $2,249.00 |
| 12/13/2021 | REGULAR DEPOSIT | $400.00 |
| 12/16/2021 | INCOMING WIRE FRANCO FACTORING LLC | $33,380.42 |
| 12/17/2021 | ASSOCGLOBAL PMD ATS.Receivables3 ACH CREDIT PAYMENT 6011592 | $75.00 |
| 12/22/2021 | INET XFER 12-22 FROM XXXXXXXX0279 | $545.00 |


**WESTERN HERITAGE BANK®** Member FDIC

Page 2 of 17

**ADVANCE TRANSPORTATION**

Account Number: ●●●●0686

## DEPOSITS (continued)

| Date | Description | Amount |
|------|-------------|--------|
| 12/22/2021 | INET XFER 12-22 FROM XXXXXXXX0260 | $2,700.00 |
| 12/22/2021 | REGULAR DEPOSIT | $300.00 |
| 12/23/2021 | INCOMING WIRE FRANCO FACTORING LLC | $36,016.17 |
| 12/23/2021 | ASSOCGLOBAL PMD ATS.Receivables3 ACH CREDIT PAYMENT 6011707 | $5,137.58 |
| 12/30/2021 | INCOMING WIRE FRANCO FACTORING | $29,488.07 |
| **Number of Deposits 13** | | **Total Deposits $166,481.42** |

## WITHDRAWALS

| Date | Description | | Amount |
|------|-------------|--|--------|
| 12/01/2021 | STOP PAYMENT FEE | | $32.00 |
| 12/01/2021 | STOP PAYMENT FEE | | $32.00 |
| 12/01/2021 | STOP PAYMENT FEE | | $32.00 |
| 12/01/2021 | STOP PAYMENT FEE | | $32.00 |
| 12/02/2021 | INCOMING DOMESTIC WIRE FEE | | $15.00 |
| 12/02/2021 | STOP PAYMENT FEE Original Item Date 12/01/21 | | $32.00 |
| 12/02/2021 | NSF FEE/PER ITEM RETURNED | | $35.00 |
| 12/02/2021 | INET XFER 12-02 TO XXXXXXXX0260 | | $1,200.00 |
| 12/02/2021 | ACCOUNT FILING FEES | | $100.00 |
| 12/03/2021 | PURCHASE 12-03 WAL Wal-Mart Super 001 EL PASO, TX 3070 | PUL | $100.00 |
| 12/03/2021 | REGULAR WITHDRAWAL | | $4,000.00 |
| 12/03/2021 | STOP PAYMENT FEE | | $32.00 |
| 12/03/2021 | INET XFER 12-03 TO XXXXXXXX0260 | | $100.00 |
| 12/03/2021 | INET XFER 12-03 TO XXXXXXXX0279 | | $100.00 |
| 12/06/2021 | PURCHASE 12-04 ACE CLOUD HOSTING 412-8478199, PA 3070 | MCI | $260.00 |
| 12/06/2021 | PAYMODE-X ATS INC ACH DEBIT MNTHLY FEE F135343500 | | $33.77 |
| 12/06/2021 | WASTE CONNECTION ABRAHAM WARDY ACH DEBIT WEB_PAY 58647120120221 | | $180.70 |
| 12/06/2021 | EL PASO ELECTRIC ABRAHAM WARDY ACH DEBIT B2P*EL PAS 48719017 | | $601.95 |
| 12/08/2021 | SAMSARA ATS ACH DEBIT Samsara ST-X0M3N9E6A5U7 | | $619.45 |
| 12/07/2021 | NSF FEE/PER ITEM RETURNED | | $70.00 |
| 12/07/2021 | GEICO Sally Hamer ACH DEBIT RETRY PYMT | | $203.90 |
| 12/08/2021 | NSF FEE/PER ITEM RETURNED | | $35.00 |
| 12/09/2021 | INCOMING DOMESTIC WIRE FEE | | $15.00 |
| 12/09/2021 | NSF FEE/PER ITEM RETURNED | | $35.00 |
| 12/10/2021 | ATM W/D 12-09 2290 TRAWOOD DRIVE EL PASO, TX 3070 | ONS | $500.00 |
| 12/10/2021 | PURCHASE 12-10 WM SUPERCENTER # EL PASO, TX 3070 | PUL | $500.00 |
| 12/10/2021 | REGULAR WITHDRAWAL | | $6,500.00 |
| 12/10/2021 | PREMIUM FINANCE ATS I, Inc ACH DEBIT Payments 1104-331769 | | $12,503.00 |
| 12/13/2021 | PURCHASE 12-09 VZWRLSS*BILL PAY VW FOLSOM, CA 3070 Recurring Debit | MCI | $435.57 |


# WESTERN
# HERITAGE
# BANK® Member FDIC

Page 3 of 17

**ADVANCE TRANSPORTATION**

Account Number: ████0686

## WITHDRAWALS (continued)

| Date | Description | Amount |
|------|-------------|--------|
| 12/13/2021 | INET XFER 12-13 TO XXXXXXXX0260 | $300.00 |
| 12/13/2021 | T-MOBILE.COM ABRAHAM WARDY ACH DEBIT PCS SVC 0434690 | $700.00 |
| 12/13/2021 | ATT ABRAHAM WARDY ACH DEBIT Payment 017481004SMT2O | $1,100.00 |
| 12/15/2021 | NSF FEE/PER ITEM RETURNED | $35.00 |
| 12/16/2021 | INCOMING DOMESTIC WIRE FEE | $15.00 |
| 12/17/2021 | BILLMATRIX BILLMATRIX ACH DEBIT BILLPAYFEE 10378352472 | $2.35 |
| 12/17/2021 | EL PASO ELECTRIC EL PASO ELECTRIC (PAY ACH DEBIT BILL PAY 10378352471 | $600.00 |
| 12/17/2021 | PREMIUM FINANCE ATS I, Inc ACH DEBIT Payments 1104-331769 | $12,498.32 |
| 12/20/2021 | INET XFER 12-20 TO XXXXXXXX0260 | $500.88 |
| 12/21/2021 | PURCHASE 12-21 WAL Wal-Mart Super 000 EL PASO, TX PUL 3070 | $500.00 |
| 12/22/2021 | PURCHASE 12-20 VZWRLSS*BILL PAY VW FOLSOM, CA MCI 3070 Recurring Debit | $300.00 |
| 12/22/2021 | TRAVELERS ATS I, INC ATS I, INC ACH DEBIT BUS INSUR BPITBI077314038 | $2,800.00 |
| 12/23/2021 | INCOMING DOMESTIC WIRE FEE | $15.00 |
| 12/23/2021 | PURCHASE 12-23 MURPHY7218ATWAL EL PASO, TX MAP 3070 | $19.00 |
| 12/23/2021 | PURCHASE 12-23 WAL-MART #3661 EL PASO, TX PUL 3070 | $500.00 |
| 12/23/2021 | REGULAR WITHDRAWAL | $1,500.00 |
| 12/23/2021 | INET XFER 12-23 TO XXXXXXXX0260 | $500.00 |
| 12/24/2021 | REGULAR WITHDRAWAL | $7,000.00 |
| 12/24/2021 | CHASE CREDIT CRD ABRAHAM J WARDY ACH DEBIT EPAY 5686823899 | $750.00 |
| 12/24/2021 | INET XFER 12-23 TO XXXXXXXX0260 | $1,500.00 |
| 12/27/2021 | PURCHASE 12-24 TEXAS ROADHOUSE #2178 EL PASO, TX MCI 3070 | $300.00 |
| 12/27/2021 | PURCHASE 12-27 WAL Wal-Mart Super 002 EL PASO, TX PUL 3070 | $500.00 |
| 12/27/2021 | DIRECTV *ABE WARDY ACH DEBIT DIRECTV 3517574 | $422.03 |
| 12/27/2021 | ATT ABRAHAM WARDY ACH DEBIT Payment 182601004SMT2C | $527.17 |
| 12/27/2021 | INET XFER 12-27 TO XXXXXXXX0279 | $600.00 |
| 12/27/2021 | INET XFER 12-27 TO XXXXXXXX0260 | $1,100.00 |
| 12/28/2021 | PURCHASE 12-28 WAL Wal-Mart Super 000 EL PASO, TX PUL 3070 | $500.00 |
| 12/28/2021 | REGULAR WITHDRAWAL | $1,000.00 |
| 12/28/2021 | INET XFER 12-28 TO XXXXXXXX0260 | $300.00 |
| 12/29/2021 | BILLMATRIX BILLMATRIX ACH DEBIT BILLPAYFEE 10399972902 | $2.50 |
| 12/29/2021 | EPWU - CONSUMER EPWU - CONSUMER IVR ACH DEBIT BILL PAY 10399972901 | $77.33 |
| 12/30/2021 | INCOMING DOMESTIC WIRE FEE | $15.00 |
| 12/30/2021 | PURCHASE 12-28 SHEFFIELD FINANCIAL LL 336-7661388, NC MCI 3070 | $352.44 |
| 12/30/2021 | PURCHASE 12-30 WAL-MART #3661 EL PASO, TX PUL 3070 | $500.00 |
| 12/30/2021 | REGULAR WITHDRAWAL | $1,000.00 |
| 12/30/2021 | TIMEPAYMENT CORP WARDY ABRAHAM ACH DEBIT INTERNET 043000094175322 | $552.72 |
| 12/30/2021 | INET XFER 12-30 TO XXXXXXXX0279 | $1,000.00 |

# WESTERN HERITAGE BANK® Member FDIC

**Page 4 of 17**

**ADVANCE TRANSPORTATION**

**Account Number:** ●●●●0686

## WITHDRAWALS (continued)

| Date | Description | Amount |
|------|-------------|--------|
| 12/31/2021 | PURCHASE  12-30 ECONOMY C ECONOMY CASH EL PASO, TX MAP  3070 | $99.80 |
| 12/31/2021 | OUTGOING WIRE CIT BANK N A | $2,516.42 |
| 12/31/2021 | OUTGOING DOMESTIC WIRE FEE | $25.00 |
| 12/31/2021 | REGULAR WITHDRAWAL | $5,000.00 |
| 12/31/2021 | GEICO        Sally Hamer ACH DEBIT  PREM COLL | $205.00 |
| 12/31/2021 | TRAVELERS        ATS I, INC ATS I, INC ACH DEBIT  BUS INSUR BPITBI078225973 | $2,638.00 |
| 12/31/2021 | MONTHLY SERVICE CHARGE | $10.00 |

**Number of Withdrawals 73**          **Total Withdrawals $78,714.30**

## CHECKS

| Number | Date | Amount | Number | Date | Amount | Number | Date | Amount |
|--------|------|--------|--------|------|--------|--------|------|--------|
| 12217 | 12/17/21 | $2,000.00 | 12405 | 12/10/21 | $957.00 | 12435 | 12/28/21 | $465.00 |
| 12356 * | 12/06/21 | $599.50 | 12406 | 12/17/21 | $450.00 | 12436 | 12/24/21 | $550.00 |
| 12373 * | 12/03/21 | $7,000.00 | 12407 | 12/10/21 | $705.00 | 12437 | 12/24/21 | $940.50 |
| 12374 | 12/03/21 | $1,571.00 | 12408 | 12/10/21 | $750.37 | 12438 | 12/27/21 | $455.00 |
| 12375 | 12/10/21 | $700.00 | 12409 | 12/10/21 | $690.33 | 12439 | 12/23/21 | $786.00 |
| 12376 | 12/03/21 | $395.00 | 12410 | 12/13/21 | $475.00 | 12440 | 12/23/21 | $750.37 |
| 12378 * | 12/09/21 | $2,000.00 | 12411 | 12/10/21 | $500.00 | 12441 | 12/23/21 | $690.33 |
| 12379 | 12/03/21 | $398.00 | 12412 | 12/10/21 | $500.00 | 12442 | 12/27/21 | $475.00 |
| 12380 | 12/06/21 | $645.00 | 12413 | 12/10/21 | $500.00 | 12443 | 12/30/21 | $500.00 |
| 12381 | 12/03/21 | $335.50 | 12414 | 12/10/21 | $300.00 | 12444 | 12/23/21 | $400.00 |
| 12382 | 12/03/21 | $614.50 | 12415 | 12/28/21 | $1,000.00 | 12445 | 12/23/21 | $500.00 |
| 12383 | 12/13/21 | $423.50 | 12416 | 12/22/21 | $4,726.87 | 12446 | 12/24/21 | $1,000.00 |
| 12384 | 12/10/21 | $330.00 | 12417 | 12/17/21 | $400.00 | 12447 | 12/24/21 | $300.00 |
| 12385 | 12/03/21 | $430.00 | 12418 | 12/17/21 | $750.37 | 12448 | 12/27/21 | $200.00 |
| 12386 | 12/03/21 | $695.37 | 12419 | 12/17/21 | $690.33 | 12450 * | 12/28/21 | $546.00 |
| 12387 | 12/03/21 | $580.33 | 12420 | 12/21/21 | $475.00 | 12451 | 12/30/21 | $745.45 |
| 12388 | 12/06/21 | $475.00 | 12421 | 12/17/21 | $500.00 | 12453 * | 12/28/21 | $700.00 |
| 12389 | 12/03/21 | $500.00 | 12422 | 12/17/21 | $500.00 | 12454 | 12/29/21 | $2,000.00 |
| 12390 | 12/03/21 | $500.00 | 12423 | 12/17/21 | $418.00 | 12455 | 12/30/21 | $500.00 |
| 12391 | 12/03/21 | $500.00 | 12424 | 12/17/21 | $580.00 | 12456 | 12/30/21 | $495.00 |
| 12392 | 12/09/21 | $300.00 | 12425 | 12/21/21 | $360.00 | 12458 * | 12/31/21 | $539.00 |
| 12393 | 12/03/21 | $235.00 | 12427 * | 12/17/21 | $918.50 | 12460 * | 12/31/21 | $451.00 |
| 12394 | 12/09/21 | $1,000.00 | 12428 | 12/17/21 | $360.00 | 12461 | 12/31/21 | $724.00 |
| 12399 * | 12/09/21 | $654.50 | 12429 | 12/17/21 | $655.00 | 12462 | 12/31/21 | $341.00 |
| 12400 | 12/09/21 | $600.00 | 12430 | 12/17/21 | $6,000.00 | 12463 | 12/31/21 | $515.00 |
| 12402 * | 12/10/21 | $590.00 | 12431 | 12/24/21 | $700.00 | 12464 | 12/31/21 | $695.37 |
| 12403 | 12/13/21 | $495.00 | 12433 * | 12/24/21 | $685.50 | 12465 | 12/31/21 | $580.33 |
| 12404 | 12/10/21 | $528.00 | 12434 | 12/23/21 | $550.00 | 12469 * | 12/31/21 | $450.00 |

\* Indicates Break In Sequence

**Number of Checks 84**          **Total Amount of Checks $68,464.82**

## DAILY BALANCE SUMMARY

| Date | Amount | Date | Amount | Date | Amount |
|------|--------|------|--------|------|--------|
| 12/01/2021 | $1.20 | 12/03/2021 | $3,890.29 | 12/07/2021 | $201.02 |
| 12/02/2021 | $21,240.23 | 12/06/2021 | $474.92 | 12/08/2021 | $166.02 |



**WESTERN HERITAGE BANK** ® Member FDIC

Page 5 of 17

**ADVANCE TRANSPORTATION**                    Account Number: ____0686

## DAILY BALANCE SUMMARY (continued)

| Date | Amount | Date | Amount | Date | Amount |
|------|--------|------|--------|------|--------|
| 12/09/2021 | $28,395.91 | 12/20/2021 | $5,643.81 | 12/27/2021 | $16,984.79 |
| 12/10/2021 | $3,591.21 | 12/21/2021 | $4,308.81 | 12/28/2021 | $12,473.79 |
| 12/13/2021 | $62.14 | 12/22/2021 | $26.94 | 12/29/2021 | $10,393.96 |
| 12/15/2021 | $27.14 | 12/23/2021 | $34,869.99 | 12/30/2021 | $34,221.42 |
| 12/16/2021 | $33,392.56 | 12/24/2021 | $21,563.99 | 12/31/2021 | $19,431.50 |
| 12/17/2021 | $6,144.69 | | | | |

## IMAGES



12/13/2021     $400.00

12/22/2021     $300.00



12/03/2021     $4,000.00

12/10/2021     $6,500.00

12/23/2021     $1,500.00

12/24/2021     $7,000.00



## WESTERN HERITAGE BANK® FDIC

**Page 6 of 17**

**ADVANCE TRANSPORTATION**                                    **Account Number:** ⬛0686

### IMAGES (continued)

| | |
|---|---|
| 12/28/2021 | $1,000.00 |
| 12/30/2021 | $1,000.00 |
| 12/31/2021 | $5,000.00 |
| Check #12217 | 12/17/2021 | $2,000.00 |
| Check #12356 | 12/06/2021 | $599.50 |
| Check #12373 | 12/03/2021 | $7,000.00 |
| Check #12374 | 12/03/2021 | $1,571.00 |
| Check #12375 | 12/10/2021 | $700.00 |



# WESTERN HERITAGE BANK®

Page 7 of 17

**ADVANCE TRANSPORTATION**　　　　Account Number: ████0686

## IMAGES (continued)



| Check #12376 | 12/03/2021 | $395.00 |
| Check #12378 | 12/09/2021 | $2,000.00 |
| Check #12379 | 12/03/2021 | $396.00 |
| Check #12380 | 12/06/2021 | $645.00 |
| Check #12381 | 12/03/2021 | $335.50 |
| Check #12382 | 12/03/2021 | $614.50 |
| Check #12383 | 12/13/2021 | $423.50 |
| Check #12384 | 12/10/2021 | $330.00 |



**Page 8 of 17**

**ADVANCE TRANSPORTATION**  **Account Number:** ▓▓▓0686



| Check #12385 | 12/03/2021 | $430.00 |
| Check #12386 | 12/03/2021 | $695.37 |
| Check #12387 | 12/03/2021 | $580.33 |
| Check #12388 | 12/08/2021 | $475.00 |
| Check #12389 | 12/03/2021 | $500.00 |
| Check #12390 | 12/03/2021 | $500.00 |
| Check #12391 | 12/03/2021 | $500.00 |
| Check #12392 | 12/09/2021 | $300.00 |



**WESTERN HERITAGE BANK** Member FDIC

Page 9 of 17

**ADVANCE TRANSPORTATION**

Account Number: ████0686

IMAGES (continued)



| Check #12393 | 12/03/2021 | $235.00 |
| Check #12394 | 12/09/2021 | $1,000.00 |
| Check #12399 | 12/09/2021 | $654.50 |
| Check #12400 | 12/09/2021 | $600.00 |
| Check #12402 | 12/10/2021 | $590.00 |
| Check #12403 | 12/13/2021 | $495.00 |
| Check #12404 | 12/10/2021 | $528.00 |
| Check #12405 | 12/10/2021 | $957.00 |



# WESTERN HERITAGE BANK®  Member FDIC

Page 10 of 17

**ADVANCE TRANSPORTATION**

Account Number: ████0686

IMAGES (continued)



| Check #12406 | 12/17/2021 | $450.00 |
| Check #12407 | 12/10/2021 | $705.00 |
| Check #12408 | 12/10/2021 | $750.37 |
| Check #12409 | 12/10/2021 | $690.33 |
| Check #12410 | 12/13/2021 | $475.00 |
| Check #12411 | 12/10/2021 | $500.00 |
| Check #12412 | 12/10/2021 | $500.00 |
| Check #12413 | 12/10/2021 | $500.00 |



# WESTERN HERITAGE BANK®  Member FDIC

Page 11 of 17

**ADVANCE TRANSPORTATION**

Account Number: ████0686

## IMAGES (continued)

| | |
|---|---|
| Check #12414 | 12/10/2021 | $300.00 |
| Check #12415 | 12/28/2021 | $1,000.00 |
| Check #12416 | 12/22/2021 | $4,726.87 |
| Check #12417 | 12/17/2021 | $400.00 |
| Check #12418 | 12/17/2021 | $750.37 |
| Check #12419 | 12/17/2021 | $690.33 |
| Check #12420 | 12/21/2021 | $475.00 |
| Check #12421 | 12/17/2021 | $500.00 |



# WESTERN HERITAGE BANK®

Member FDIC

Page 12 of 17

**ADVANCE TRANSPORTATION**

Account Number: ●●●●0686

IMAGES (continued)



| | | | |
|---|---|---|---|
| Check #12422 | 12/17/2021 | $500.00 | |
| Check #12423 | 12/17/2021 | $418.00 | |
| Check #12424 | 12/17/2021 | $580.00 | |
| Check #12425 | 12/21/2021 | $360.00 | |
| Check #12427 | 12/17/2021 | $918.50 | |
| Check #12428 | 12/17/2021 | $360.00 | |
| Check #12429 | 12/17/2021 | $655.00 | |
| Check #12430 | 12/17/2021 | $6,000.00 | |



## WESTERN HERITAGE BANK® Member FDIC

Page 13 of 17

**ADVANCE TRANSPORTATION**

Account Number: ●●●●0686

IMAGES (continued)



| Check #12431 | 12/24/2021 | $700.00 |
|---|---|---|
| Check #12433 | 12/24/2021 | $665.50 |
| Check #12434 | 12/23/2021 | $550.00 |
| Check #12435 | 12/28/2021 | $465.00 |
| Check #12436 | 12/24/2021 | $550.00 |
| Check #12437 | 12/24/2021 | $940.50 |
| Check #12438 | 12/27/2021 | $455.00 |
| Check #12439 | 12/23/2021 | $786.00 |



**WESTERN HERITAGE BANK®** Member FDIC

Page 14 of 17

**ADVANCE TRANSPORTATION**

Account Number: ████0686

IMAGES (continued)



| | | |
|---|---|---|
| Check #12440 | 12/23/2021 | $750.37 |
| Check #12441 | 12/23/2021 | $690.33 |
| Check #12442 | 12/27/2021 | $475.00 |
| Check #12443 | 12/30/2021 | $500.00 |
| Check #12444 | 12/23/2021 | $400.00 |
| Check #12445 | 12/23/2021 | $500.00 |
| Check #12446 | 12/24/2021 | $1,000.00 |
| Check #12447 | 12/24/2021 | $300.00 |



**WESTERN
HERITAGE
BANK** ® Member FDIC

Page 15 of 17

ADVANCE TRANSPORTATION

Account Number: ●●●●0686



| | | |
|---|---|---|
| Check #12448 | 12/27/2021 | $200.00 |
| Check #12450 | 12/28/2021 | $546.00 |
| Check #12451 | 12/30/2021 | $745.45 |
| Check #12453 | 12/28/2021 | $700.00 |
| Check #12454 | 12/29/2021 | $2,000.00 |
| Check #12455 | 12/30/2021 | $500.00 |
| Check #12456 | 12/30/2021 | $495.00 |
| Check #12458 | 12/31/2021 | $539.00 |



**WESTERN HERITAGE BANK®** Member FDIC

**Page 16 of 17**

**ADVANCE TRANSPORTATION**

**Account Number:** ⬛⬛0686

IMAGES (continued)

| Check #12460 | 12/31/2021 | $451.00 |
| Check #12461 | 12/31/2021 | $724.00 |

| Check #12462 | 12/31/2021 | $341.00 |
| Check #12463 | 12/31/2021 | $515.00 |

| Check #12464 | 12/31/2021 | $695.37 |
| Check #12465 | 12/31/2021 | $580.33 |

| Check #12469 | 12/31/2021 | $450.00 |

## Account Reconciliation Form

| | | |
|---|---|---|
| A. The ending balance shown on statement | $ _____ | |
| B. List deposits not shown on statement | $ _____ | |
| | $ _____ | |
| | $ _____ | |
| | $ _____ | |
| C. Total of lines B | $ _____ | |
| D. Add line C to line A | $ _____ | |

| | | |
|---|---|---|
| H. The ending balance in your check register | $ _____ | |
| I. List deposits, transfers or interest credited not already listed in your check register | $ _____ | |
| | $ _____ | |
| | $ _____ | |
| | $ _____ | |
| J. Total of lines I | $ _____ | |
| K. Add line J to line H | $ _____ | |

E. List below all checks written and any withdrawals not posted on statement

L. List below all checks and charges not already reflected in your check register

| Check # | $ Amount | Check # | $ Amount | Check # | $ Amount | Check # | $ Amount |
|---|---|---|---|---|---|---|---|
| ___ | $ ____ | ___ | $ ____ | ___ | $ ____ | ___ | $ ____ |
| ___ | $ ____ | ___ | $ ____ | ___ | $ ____ | ___ | $ ____ |
| ___ | $ ____ | ___ | $ ____ | ___ | $ ____ | ___ | $ ____ |
| ___ | $ ____ | ___ | $ ____ | ___ | $ ____ | ___ | $ ____ |
| ___ | $ ____ | ___ | $ ____ | ___ | $ ____ | ___ | $ ____ |

| | | |
|---|---|---|
| F. Total of Column E | $ _____ | |
| G. Subtract line F from line D | $ _____ | |

| | | |
|---|---|---|
| M. Total of Column L | $ _____ | |
| N. Subtract line M from line K | $ _____ | |

The balances (Line "G" and Line "N" above) should agree. If not, recheck your entries from this statement and your check register. All deposits and credits are subject to final collection.

**The following pertains to accounts established for personal, family or household purposes only.**

For information regarding business and custodial accounts please refer to your account disclosure. Contact us if you have a specific question pertaining to your account.

**In Case of Errors or Questions About Your Electronic Transfers**

Direct inquiries to us at our address or telephone number printed on the front page of this statement if you think your statement or receipt is wrong or if you need more information about a transfer on the statement or receipt. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.

1. Tell us your name and account number (if any).
2. Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe there is an error or why you need more information.
3. Tell us the dollar amount of the suspected error.

If you tell us orally, we may require that you send us your complaint or question in writing within 10 business days.

We will determine whether an error occurred within 10 business days after we hear from you and will correct any error promptly. If we need more time, however, we may take up to 45 days to investigate your complaint or question. If we decide to do this, we will credit your account within 10 business days for the amount you think is in error, so that you will have the use of the money during the time it takes us to complete our investigation. If we ask you to put your complaint or question in writing and we do not receive it within 10 business days, we may not credit your account.

For errors involving new accounts, point-of-sale, or foreign-initiated transactions, we may take up to 90 days to investigate your complaint or question. For new accounts, we may take up to 20 business days to credit your account for the amount you think is in error.

We will tell you the results within 3 business days after completing our investigation. If we decide that there was no error, we will send you a written explanation. You may ask for copies of the documents that we used in our investigation.

**The information below is applicable to those Accounts which may be subject to an Interest Charge.**

**What To Do If You Think You Find A Mistake On Your Statement**

If you think there is an error on your statement, write to us (on a separate sheet) at our address shown on the front page of this statement as soon as possible. In your letter, give us the following information:

- Account information: Your name and account number.
- Dollar amount: The dollar amount of the suspected error.
- Description of Problem: If you think there is an error on your bill, describe what you believe is wrong and why you believe it is a mistake.

You must contact us within 60 days after the error appeared on your statement. You must notify us of any potential errors in writing [or electronically]. You may call us, but if you do we are not required to investigate any potential errors, and

you may have to pay the amount in question. While we investigate whether or not there has been an error, the following are true:

- We cannot try to collect the amount in question, or report you as delinquent on that amount.
- The charge in question may remain on your statement, and we may continue to charge you interest on that amount. But, if we determine that we made a mistake, you will not have to pay the amount in question or any interest or other fees related to that amount.
- While you do not have to pay the amount in question, you are responsible for the remainder of your balance.
- We can apply any unpaid amount against your credit limit.

**PAYMENT INFORMATION** - Please mail or deliver your payment to the financial institution at the address indicated on the reverse side hereof. Payments received on weekends and holidays will be credited the next business day. Payments received after your closing date will appear on your next statement. If the financial institution has been authorized to deduct the minimum payment from your Account, it will be deducted and credited to your Account as of the date shown on the reverse side hereof. To avoid additional INTEREST CHARGES, pay your balance in full. Please call the financial institution for the exact balance as the balance changes daily.

**INTEREST CHARGE** - The INTEREST CHARGE on your account is calculated by applying the different PERIODIC RATES to the appropriate range of the outstanding daily balance of your account. The outstanding daily balance is calculated by using the beginning balance of your account each day, adding any new advances or debits, and subtracting any payments or credits. The INTEREST CHARGE may be determined as follows:

1. Using the rate ranges, separate the outstanding daily balance into appropriate range amounts.
2. Multiply each outstanding daily balance by the applicable periodic rate.
3. Multiply each of these results by the number of days the applicable rate was in effect.
4. Add the results of step #3 together.

**USE OF THE AVERAGE DAILY BALANCE** - If the daily balances are not shown on your statement, the average daily balance may be used. The average daily balance is or can be multiplied by the number of days in the billing cycle and the periodic rate applied to the product to determine the amount of the interest charge. To calculate the average daily balance, all of the daily balances for the billing cycle are added up, and the total is divided by the number of days in the billing cycle. The INTEREST CHARGE is or may be determined as follows:

1. Multiplying each of the average balances by the number of days in the billing cycle (or if the daily rate varied during the cycle, by multiplying by the number of days the applicable rate was in effect).
2. Multiplying each of the results by the applicable periodic rate, and adding these products together.



**Contact us:**
(915) 782-2470

**Branch:**
Western Heritage Bank
2290 Trawood Dr
El Paso, TX  79935

**Visit our website at:**
www.westernheritagebank.com




ATS I, INC
12308 RED SUN DR
EL PASO TX 79938-7738

Page 1 of 5

**Statement Date:  December 31, 2021**                **Account Number:**  ████0260

| A PARTNER YOU CAN COUNT ON |
|---|

Protect your business from financial fraud with Positive Pay today. Positive Pay is a fraud prevention tool businesses can use to protect against check and ACH fraud. Detect suspicious or fraudulent transaction before it's too late. Email our Treasury Management Team today for more information treasurymanagement@westernheritagebank.com

## BASIC BUSINESS CHECKING

### ACCOUNT ACTIVITY SUMMARY

| | |
|---|---|
| Statement period number of days | 31 |
| Average balance | $1,446.58 |
| Total service charge today | $10.00 |

| | | | |
|---|---|---|---|
| Previous balance | 11/30/2021 | $487.57 - | |
| Deposits/credits | 20 | $19,717.38 | |
| Checks/withdrawals | 47 | $19,019.25 | |
| Ending balance | 12/31/2021 | $210.56 | |



### DEPOSITS

| Date | Description | Amount |
|---|---|---|
| 12/02/2021 | INET XFER 12-02  FROM XXXXXXXX0686 | $1,200.00 |
| 12/02/2021 | RADIANT GLOBAL L 0002, INC ACH CREDIT WEEKLYPAY  0000131562 | $70.00 |
| 12/03/2021 | INET XFER 12-03  FROM XXXXXXXX0686 | $100.00 |
| 12/06/2021 | DANZAS CORPORATI 0014ATS I INC ACH CREDIT 2117700583 2117700583 | $19.50 |
| 12/07/2021 | U-HAUL INT'L    ATS ACH CREDIT DLR PYMNTS 56780 | $49.85 |
| 12/13/2021 | INET XFER 12-13  FROM XXXXXXXX0686 | $300.00 |
| 12/13/2021 | DANZAS CORPORATI 0014ATS I INC ACH CREDIT 2118000626 2118000626 | $19.50 |
| 12/14/2021 | DANZAS CORPORATI 0014ATS I INC ACH CREDIT 2118054858 2118054858 | $10,883.50 |



**WESTERN HERITAGE BANK** ® Member FDIC

Page 2 of 5

**ATS I, INC**

Account Number: ███████0260

## DEPOSITS (continued)

| Date | Description | Amount |
|------|-------------|--------|
| 12/14/2021 | U-HAUL INT'L ATS ACH CREDIT DLR PYMNTS 56790 | $171.02 |
| 12/20/2021 | INET XFER 12-20 FROM XXXXXXXX0686 | $500.88 |
| 12/20/2021 | DANZAS CORPORATI 0014ATS I INC ACH CREDIT 2118518210 2118518210 | $2,161.91 |
| 12/20/2021 | RADIANT GLOBAL L 0009, INC ACH CREDIT WEEKLYPAY 0000131562 | $685.00 |
| 12/21/2021 | U-HAUL INT'L ATS ACH CREDIT DLR PYMNTS 56790 | $15.84 |
| 12/23/2021 | INET XFER 12-23 FROM XXXXXXXX0686 | $500.00 |
| 12/24/2021 | INET XFER 12-23 FROM XXXXXXXX0686 | $1,500.00 |
| 12/27/2021 | INET XFER 12-27 FROM XXXXXXXX0686 | $1,100.00 |
| 12/28/2021 | INET XFER 12-28 FROM XXXXXXXX0686 | $300.00 |
| 12/28/2021 | U-HAUL INT'L ATS ACH CREDIT DLR PYMNTS 56790 | $7.92 |
| 12/29/2021 | REFUND 12-27 INTERSTATE BATTERY SYS EL PASO, TX MCI 5144 | $97.42 |
| 12/30/2021 | RADIANT GLOBAL L 0001, INC ACH CREDIT WEEKLYPAY 0000131562 | $35.00 |

**Number of Deposits 20**

**Total Deposits $19,717.38**

## WITHDRAWALS

| Date | Description | Amount |
|------|-------------|--------|
| 12/01/2021 | NSF FEE/PER ITEM RETURNED | $35.00 |
| 12/02/2021 | STOP PAYMENT FEE Original Item Date 12/01/21 | $32.00 |
| 12/02/2021 | STOP PAYMENT FEE Original Item Date 12/01/21 | $32.00 |
| 12/02/2021 | STOP PAYMENT FEE Original Item Date 12/01/21 | $32.00 |
| 12/02/2021 | STOP PAYMENT FEE Original Item Date 12/01/21 | $32.00 |
| 12/02/2021 | ATT advanced transportatio ACH DEBIT RETRY PYMT | $53.76 |
| 12/02/2021 | DISCOVER WARDY ABRAHAM ACH DEBIT E-PAYMENT 6070 | $500.00 |
| 12/03/2021 | PAYMENTUS ATS I INC ACH DEBIT BILLPAY PAYMENTUSCORP_I | $1.49 |
| 12/03/2021 | TEXASGASSERVICE ATS I INC ACH DEBIT BILLPAY TEXASGASSERVICE | $139.12 |
| 12/07/2021 | NSF FEE/PER ITEM RETURNED | $35.00 |
| 12/07/2021 | INET XFER 12-07 TO XXXXXXXX0279 | $55.00 |
| 12/13/2021 | ATT ABRAHAM WARDY ACH DEBIT Payment 019492004SMT2O | $300.00 |
| 12/14/2021 | PURCHASE 12-14 WM SUPERCENTER # EL PASO, TX PUL 5144 | $500.00 |
| 12/14/2021 | REGULAR WITHDRAWAL | $3,000.00 |
| 12/15/2021 | POS PYMT 12-15 BillMatrix Farmington, MI PUL 5144 | $679.90 |
| 12/16/2021 | PURCHASE 12-16 WAL-MART #3661 EL PASO, TX PUL 5144 | $500.00 |
| 12/16/2021 | INET XFER 12-16 TO XXXXXXXX0279 | $500.00 |
| 12/17/2021 | PURCHASE 12-17 WAL SAM'S Club 002 EL PASO, TX PUL 5144 | $166.58 |
| 12/17/2021 | PURCHASE 12-16 FLEETPRIDE880 EL PASO, TX MCI 5144 | $270.63 |
| 12/17/2021 | PURCHASE 12-17 INTERSTATE BATT EL PASO, TX MAP 5144 | $301.11 |
| 12/17/2021 | REGULAR WITHDRAWAL Original Item Date 12/16/21 | $1,000.00 |
| 12/20/2021 | PURCHASE 12-18 CIRCLE K # 41253 2210 EL PASO, TX MAP 5144 | $62.19 |


## WESTERN HERITAGE BANK® FDIC

**Page 3 of 5**

**ATS I, INC**                                                                 Account Number: ⬛⬛0260

### WITHDRAWALS (continued)

| Date | Description | Amount |
|---|---|---|
| 12/20/2021 | PURCHASE  12-17 ECONOMY C ECONOMY CASH EL PASO, TX MAP 5144 | $93.82 |
| 12/20/2021 | PURCHASE  12-17 LUBE X-PRESS PEBBLE HI EL PASO, TX MCI 5144 | $153.14 |
| 12/20/2021 | PURCHASE  12-20 WAL-MART #3661 EL PASO, TX           PUL 5144 | $500.00 |
| 12/20/2021 | REGULAR WITHDRAWAL | $1,000.00 |
| 12/20/2021 | PAYPAL       ABRAHAM WARDY ACH DEBIT  INST XFER  1017449612510 | $67.00 |
| 12/20/2021 | YOUR PROPANE COM ATS I, INC ACH DEBIT  BT1216     160700600 | $384.20 |
| 12/21/2021 | PURCHASE  12-20 ACE HDWE OF EL PASO EL PASO, TX           MCI 5144 | $85.49 |
| 12/21/2021 | PREMIUM FINANCE  ATS I, Inc ACH DEBIT  Payments  1104-361105 | $72.15 |
| 12/21/2021 | SIG / BRIDIE & A ATS I ACH DEBIT  SALE | $860.00 |
| 12/22/2021 | INET XFER 12-22  TO XXXXXXXX0686 | $2,700.00 |
| 12/23/2021 | PURCHASE  12-22 TMOBILE*WEB UPGRADE 800-937-8997 , WA MCI 5144 | $273.24 |
| 12/23/2021 | CONNEXUS       ALEXIA WRIGHT ACH DEBIT  ExtmlTfr  11342220 | $531.68 |
| 12/27/2021 | PURCHASE  12-26 AT&T COR DF 8003310500, TX           MCI  5144 Recurring Debit | $61.87 |
| 12/27/2021 | MERRICK BANK COR ABRAHAM J WARDY JR ACH DEBIT  MOBILE PAY 213580251854610 | $250.00 |
| 12/27/2021 | CREDIT ONE BANK  ABRAHAM WARDY ACH DEBIT  Payment  20895127 | $300.00 |
| 12/27/2021 | CREDIT ONE BANK  ABRAHAM WARDY ACH DEBIT  Payment  42803874 | $300.00 |
| 12/27/2021 | ATT       ABRAHAM WARDY ACH DEBIT  Payment   198411001SMT2D | $325.19 |
| 12/27/2021 | CITI CARD ONLINE ABRAHAM J WARDY ACH DEBIT  PAYMENT 430624575402342 | $450.00 |
| 12/27/2021 | DISCOVER       WARDY ABRAHAM ACH DEBIT  E-PAYMENT  6070 | $500.00 |
| 12/27/2021 | TARGET CARD SRVC 2A WARDY        M ACH DEBIT  BILL PAY 000000005950541 | $500.00 |
| 12/28/2021 | ATT       advanced transportatio ACH DEBIT  Payment | $53.76 |
| 12/28/2021 | SPECTRUM       ADVANCED TRANSPORTATIO ACH DEBIT  SPECTRUM 0099288 | $217.43 |
| 12/31/2021 | MONTHLY SERVICE CHARGE | $10.00 |

**Number of Withdrawals 45**                                      **Total Withdrawals $17,896.75**

### CHECKS

| Number | Date | Amount | Number | Date | Amount |
|---|---|---|---|---|---|
| 7162 | 12/17/21 | $600.00 | 7163 | 12/20/21 | $522.50 |

**Number of Checks 2**                                      **Total Amount of Checks $1,122.50**

### DAILY BALANCE SUMMARY

| Date | Amount | Date | Amount | Date | Amount |
|---|---|---|---|---|---|
| 12/01/2021 | $522.57 - | 12/07/2021 | $4.41 | 12/16/2021 | $5,898.53 |
| 12/02/2021 | $65.67 | 12/13/2021 | $23.91 | 12/17/2021 | $3,560.21 |
| 12/03/2021 | $25.06 | 12/14/2021 | $7,578.43 | 12/20/2021 | $4,145.19 |
| 12/06/2021 | $44.56 | 12/15/2021 | $6,898.53 | 12/21/2021 | $3,143.39 |



**WESTERN HERITAGE BANK**® Member FDIC

Page 4 of 5

**ATS I, INC**

Account Number: ███0260

### DAILY BALANCE SUMMARY (continued)

| Date | Amount | Date | Amount | Date | Amount |
|------|--------|------|--------|------|--------|
| 12/22/2021 | $443.39 | 12/27/2021 | $51.41 | 12/30/2021 | $220.56 |
| 12/23/2021 | $138.47 | 12/28/2021 | $88.14 | 12/31/2021 | $210.56 |
| 12/24/2021 | $1,638.47 | 12/29/2021 | $185.56 | | |

### IMAGES

WESTERN HERITAGE BANK® LAS CRUCES, NM DEMING, NM • EL PASO, TX   WITHDRAWAL
DATE 12/14/21   SIGNATURE Abe Wash
AMOUNT THREE THOUSAND — DOLLARS
ACCOUNT NUMBER ███ 0260   AMOUNT OF WITHDRAWAL $ 3000,00
Abraham Wardy   FUEL
⑆551110676⑆

12/14/2021          $3,000.00

WESTERN HERITAGE BANK® LAS CRUCES, NM DEMING, NM • EL PASO, TX   WITHDRAWAL
DATE 12/16/21   SIGNATURE Abe Wash
AMOUNT ONE THOUSAND — DOLLARS
ACCOUNT NUMBER ███ 0260   AMOUNT OF WITHDRAWAL $ 100000
FUEL
⑆551110676⑆

12/16/2021          $1,000.00

WESTERN HERITAGE BANK® LAS CRUCES, NM DEMING, NM • EL PASO, TX   WITHDRAWAL   Abraham Wardy
DATE 12/20/21   SIGNATURE Abe Wash
AMOUNT ONE THOUSAND — DOLLARS
ACCOUNT NUMBER ███ 0260   AMOUNT OF WITHDRAWAL $ 1600,00
FUEL
⑆551110676⑆

12/20/2021          $1,000.00

007162
ATS I, INC   12/17/2021
CONNIE GALLARDO   $ *600.00
Six Hundred and 00/100   DOLLARS
CONNIE GALLARDO   ATS I, INC
FUEL PURCHASE   Abe Wash
⑈007162⑈ ⑆111206763⑆ ███0260⑈

Check #7162          12/17/2021          $600.00

007163
ATS I, INC   12/17/2021
DAVID LEYVA   $ *522.50
Five Hundred Twenty-Two and 50/100   DOLLARS
DAVID LEYVA   ATS I, INC
MEMO   Abe Wash
⑈007163⑈ ⑆111206763⑆ ███0260⑈

Check #7163          12/20/2021          $522.50

21-30906-hcm Doc#96 Filed 02/28/22 Entered 02/28/22 18:25:38 Main Document Pg 88 of
21-30906-hcm Doc#89 Filed 02/16/22 Entered 02/16/22 18:33:29 Main Document Pg 28 of
28

Page 5 of 5

## Account Reconciliation Form

| | | | | |
|---|---|---|---|---|
| A. The ending balance shown on statement | $ _____ | H. The ending balance in your check register | $ _____ | |
| B. List deposits not shown on statement | $ _____ | I. List deposits, transfers or interest credited not already listed in your check register | $ _____ | |
| | $ _____ | | $ _____ | |
| | $ _____ | | $ _____ | |
| | $ _____ | | $ _____ | |
| C. Total of lines B | $ _____ | J. Total of lines I | $ _____ | |
| D. Add line C to line A | $ _____ | K. Add line J to line H | $ _____ | |
| E. List below all checks written and any withdrawals not posted on statement | | L. List below all checks and charges not already reflected in your check register | | |

| Check # | $ Amount | Check # | $ Amount | Check # | $ Amount | Check # | $ Amount |
|---|---|---|---|---|---|---|---|
| ____ | $ _____ | ____ | $ _____ | ____ | $ _____ | ____ | $ _____ |
| ____ | $ _____ | ____ | $ _____ | ____ | $ _____ | ____ | $ _____ |
| ____ | $ _____ | ____ | $ _____ | ____ | $ _____ | ____ | $ _____ |
| ____ | $ _____ | ____ | $ _____ | ____ | $ _____ | ____ | $ _____ |
| ____ | $ _____ | ____ | $ _____ | ____ | $ _____ | ____ | $ _____ |

| | | | |
|---|---|---|---|
| F. Total of Column E | $ _____ | M. Total of Column L | $ _____ |
| G. Subtract line F from line D | $ _____ | N. Subtract line M from line K | $ _____ |

The balances (Line "G" and Line "N" above) should agree. If not, recheck your entries from this statement and your check register. All deposits and credits are subject to final collection.

**The following pertains to accounts established for personal, family or household purposes only.**

For information regarding business and custodial accounts please refer to your account disclosure. Contact us if you have a specific question pertaining to your account.

**In Case of Errors or Questions About Your Electronic Transfers**

Direct inquiries to us at our address or telephone number printed on the front page of this statement if you think your statement or receipt is wrong or if you need more information about a transfer on the statement or receipt. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.

1. Tell us your name and account number (if any).
2. Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe there is an error or why you need more information.
3. Tell us the dollar amount of the suspected error.

If you tell us orally, we may require that you send us your complaint or question in writing within 10 business days.

We will determine whether an error occurred within 10 business days after we hear from you and will correct any error promptly. If we need more time, however, we may take up to 45 days to investigate your complaint or question. If we decide to do this, we will credit your account within 10 business days for the amount you think is in error, so that you will have the use of the money during the time it takes us to complete our investigation. If we ask you to put your complaint or question in writing and we do not receive it within 10 business days, we may not credit your account.

For errors involving new accounts, point-of-sale, or foreign-initiated transactions, we may take up to 90 days to investigate your complaint or question. For new accounts, we may take up to 20 business days to credit your account for the amount you think is in error.

We will tell you the results within 3 business days after completing our investigation. If we decide that there was no error, we will send you a written explanation. You may ask for copies of the documents that we used in our investigation.

**The information below is applicable to those Accounts which may be subject to an Interest Charge.**

**What To Do If You Think You Find A Mistake On Your Statement**

If you think there is an error on your statement, write to us (on a separate sheet) at our address shown on the front page of this statement as soon as possible. In your letter, give us the following information:

- Account information: Your name and account number.
- Dollar amount: The dollar amount of the suspected error.
- Description of Problem: If you think there is an error on your bill, describe what you believe is wrong and why you believe it is a mistake.

You must contact us within 60 days after the error appeared on your statement. You must notify us of any potential errors in writing [or electronically]. You may call us, but if you do we are not required to investigate any potential errors, and

you may have to pay the amount in question. While we investigate whether or not there has been an error, the following are true:

- We cannot try to collect the amount in question, or report you as delinquent on that amount.
- The charge in question may remain on your statement, and we may continue to charge you interest on that amount. But, if we determine that we made a mistake, you will not have to pay the amount in question or any interest or other fees related to that amount.
- While you do not have to pay the amount in question, you are responsible for the remainder of your balance.
- We can apply any unpaid amount against your credit limit.

**PAYMENT INFORMATION** - Please mail or deliver your payment to the financial institution at the address indicated on the reverse side hereof. Payments received on weekends and holidays will be credited the next business day. Payments received after your closing date will appear on your next statement. If the financial institution has been authorized to deduct the minimum payment from your Account, it will be deducted and credited to your Account as of the date shown on the reverse side hereof. To avoid additional INTEREST CHARGES, pay your balance in full. Please call the financial institution for the exact balance as the balance changes daily.

**INTEREST CHARGE** - The INTEREST CHARGE on your account is calculated by applying the different PERIODIC RATES to the appropriate range of the outstanding daily balance of your account. The outstanding daily balance is calculated by using the beginning balance of your account each day, adding any new advances or debits, and subtracting any payments or credits. The INTEREST CHARGE may be determined as follows:

1. Using the rate ranges, separate the outstanding daily balance into appropriate range amounts.
2. Multiply each outstanding daily balance by the applicable periodic rate.
3. Multiply each of these results by the number of days the applicable rate was in effect.
4. Add the results of step #3 together.

**USE OF THE AVERAGE DAILY BALANCE** - If the daily balances are not shown on your statement, the average daily balance may be used. The average daily balance is or can be multiplied by the number of days in the billing cycle and the periodic rate applied to the product to determine the amount of the interest charge. To calculate the average daily balance, all of the daily balances for the billing cycle are added up, and the total is divided by the number of days in the billing cycle. The INTEREST CHARGE is or may be determined as follows:

1. Multiplying each of the average balances by the number of days in the billing cycle (or if the daily rate varied during the cycle, by multiplying by the number of days the applicable rate was in effect).
2. Multiplying each of the results by the applicable periodic rate, and adding these products together.

**EXHIBIT "4"**

## § 1141. Effect of confirmation

(a) Except as provided in subsections (d)(2) and (d)(3) of this section, the provisions of a confirmed plan bind the debtor, any entity issuing securities under the plan, any entity acquiring property under the plan, and any creditor, equity security holder, or general partner in the debtor, whether or not the claim or interest of such creditor, equity security holder, or general partner is impaired under the plan and whether or not such creditor, equity security holder, or general partner has accepted the plan.

(b) Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.

(c) Except as provided in subsections (d)(2) and (d)(3) of this section and except as otherwise provided in the plan or in the order confirming the plan, after confirmation of a plan, the property dealt with by the plan is free and clear of all claims and interests of creditors, equity security holders, and of general partners in the debtor.

(d)(1) Except as otherwise provided in this subsection, in the plan, or in the order confirming the plan, the confirmation of a plan--

(A) discharges the debtor from any debt that arose before the date of such confirmation, and any debt of a kind specified in section 502(g), 502(h), or 502(i) of this title, whether or not--

(i) a proof of the claim based on such debt is filed or deemed filed under section 501 of this title;

(ii) such claim is allowed under section 502 of this title; or

(iii) the holder of such claim has accepted the plan; and

(B) terminates all rights and interests of equity security holders and general partners provided for by the plan.

(2) A discharge under this chapter does not discharge a debtor who is an individual from any debt excepted from discharge under section 523 of this title.

(3) The confirmation of a plan does not discharge a debtor if--

(A) the plan provides for the liquidation of all or substantially all of the property of the estate;

(B) the debtor does not engage in business after consummation of the plan; and

(C) the debtor would be denied a discharge under section 727(a) of this title if the case were a case under chapter 7 of this title.

(4) The court may approve a written waiver of discharge executed by the debtor after the order for relief under this chapter.

(5) In a case in which the debtor is an individual--

(A) unless after notice and a hearing the court orders otherwise for cause, confirmation of the plan does not discharge any debt provided for in the plan until the court grants a discharge on completion of all payments under the plan;

(B) at any time after the confirmation of the plan, and after notice and a hearing, the court may grant a discharge to the debtor who has not completed payments under the plan if--

(i) the value, as of the effective date of the plan, of property actually distributed under the plan on account of each allowed unsecured claim is not less than the amount that would have been paid on such claim if the estate of the debtor had been liquidated under chapter 7 on such date;

(ii) modification of the plan under section 1127 is not practicable; and

(iii) subparagraph (C) permits the court to grant a discharge; and

(C) the court may grant a discharge if, after notice and a hearing held not more than 10 days before the date of the entry of the order granting the discharge, the court finds that there is no reasonable cause to believe that--

(i) section 522(q)(1) may be applicable to the debtor; and

(ii) there is pending any proceeding in which the debtor may be found guilty of a felony of the kind described in section 522(q)(1)(A) or liable for a debt of the kind described in section 522(q)(1)(B);

and if the requirements of subparagraph (A) or (B) are met.

(6) Notwithstanding paragraph (1), the confirmation of a plan does not discharge a debtor that is a corporation from any debt--

(A) of a kind specified in paragraph (2)(A) or (2)(B) of section 523(a) that is owed to a domestic governmental unit, or owed to a person as the result of an action filed under subchapter III of chapter 37 of title 31 or any similar State statute; or

(B) for a tax or customs duty with respect to which the debtor--

(i) made a fraudulent return; or

(ii) willfully attempted in any manner to evade or to defeat such tax or such customs duty.

(Pub.L. 95-598, Nov. 6, 1978, 92 Stat. 2638; Pub.L. 98-353, Title III, § 513, July 10, 1984, 98 Stat. 387; Pub.L. 109-8, Title III, §§ 321(d), 330(b), Title VII, § 708, Apr. 20, 2005, 119 Stat. 95, 101, 126; Pub.L. 111-327, § 2(a)(36), Dec. 22, 2010, 124 Stat. 3561.)

**EXHIBIT "6"**

## § 1129. Confirmation of plan

(a) The court shall confirm a plan only if all of the following requirements are met:

(1) The plan complies with the applicable provisions of this title.

(2) The proponent of the plan complies with the applicable provisions of this title.

(3) The plan has been proposed in good faith and not by any means forbidden by law.

(4) Any payment made or to be made by the proponent, by the debtor, or by a person issuing securities or acquiring property under the plan, for services or for costs and expenses in or in connection with the case, or in connection with the plan and incident to the case, has been approved by, or is subject to the approval of, the court as reasonable.

(5)(A)(i) The proponent of the plan has disclosed the identity and affiliations of any individual proposed to serve, after confirmation of the plan, as a director, officer, or voting trustee of the debtor, an affiliate of the debtor participating in a joint plan with the debtor, or a successor to the debtor under the plan; and

(ii) the appointment to, or continuance in, such office of such individual, is consistent with the interests of creditors and equity security holders and with public policy; and

(B) the proponent of the plan has disclosed the identity of any insider that will be employed or retained by the reorganized debtor, and the nature of any compensation for such insider.

(6) Any governmental regulatory commission with jurisdiction, after confirmation of the plan, over the rates of the debtor has approved any rate change provided for in the plan, or such rate change is expressly conditioned on such approval.

(7) With respect to each impaired class of claims or interests—

(A) each holder of a claim or interest of such class—

(i) has accepted the plan; or

(ii) will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date; or

(B) if section 1111(b)(2) of this title applies to the claims of such class, each holder of a claim of such class will receive or retain under the plan on account of such claim property of a value, as of the effective date of the plan, that is not less than the value of such holder's interest in the estate's interest in the property that secures such claims.

(8) With respect to each class of claims or interests—

(A) such class has accepted the plan; or

(B) such class is not impaired under the plan.

(9) Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the plan provides that—

(A) with respect to a claim of a kind specified in section 507(a)(2) or 507(a)(3) of this title, on the effective date of the plan, the holder of such claim will receive on account of such claim cash equal to the allowed amount of such claim;

(B) with respect to a class of claims of a kind specified in section 507(a)(1), 507(a)(4), 507(a)(5), 507(a)(6), or 507(a)(7) of this title, each holder of a claim of such class will receive—

(i) if such class has accepted the plan, deferred cash payments of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or

(ii) if such class has not accepted the plan, cash on the effective date of the plan equal to the allowed amount of such claim;

(C) with respect to a claim of a kind specified in section 507(a)(8) of this title, the holder of such

claim will receive on account of such claim regular installment payments in cash--

(I) of a total value, as of the effective date of the plan, equal to the allowed amount of such claim;

(II) over a period ending not later than 5 years after the date of the order for relief under section 301, 302, or 303; and

(III) in a manner not less favorable than the most favored nonpriority unsecured claim provided for by the plan (other than cash payments made to a class of creditors under section 1122(b)); and

(D) with respect to a secured claim which would otherwise meet the description of an unsecured claim of a governmental unit under section 507(a)(8), but for the secured status of that claim, the holder of that claim will receive on account of that claim, cash payments, in the same manner and over the same period, as prescribed in subparagraph (C).

(10) If a class of claims is impaired under the plan, at least one class of claims that is impaired under the plan has accepted the plan, determined without including any acceptance of the plan by any insider.

(11) Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan.

(12) All fees payable under section 1930 of title 28, as determined by the court at the hearing on confirmation of the plan, have been paid or the plan provides for the payment of all such fees on the effective date of the plan.

(13) The plan provides for the continuation after its effective date of payment of all retiree benefits, as that term is defined in section 1114 of this title, at the level established pursuant to subsection (e)(1)(B) or (g) of section 1114 of this title, at any time prior to confirmation of the plan, for the duration of the period the debtor has obligated itself to provide such benefits.

(14) If the debtor is required by a judicial or administrative order, or by statute, to pay a domestic support obligation, the debtor has paid all amounts payable under such order or such statute for such obligation that first become payable after the date of the filing of the petition.

(15) In a case in which the debtor is an individual and in which the holder of an allowed unsecured claim objects to the confirmation of the plan—

(A) the value, as of the effective date of the plan, of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or

(B) the value of the property to be distributed under the plan is not less than the projected disposable income of the debtor (as defined in section 1325(b)(2)) to be received during the 5-year period beginning on the date that the first payment is due under the plan, or during the period for which the plan provides payments, whichever is longer.

(16) All transfers of property under the plan shall be made in accordance with any applicable provisions of nonbankruptcy law that govern the transfer of property by a corporation or trust that is not a moneyed, business, or commercial corporation or trust.

(b)(1) Notwithstanding section 510(a) of this title, if all of the applicable requirements of subsection (a) of this section other than paragraph (8) are met with respect to a plan, the court, on request of the proponent of the plan, shall confirm the plan notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

(2) For the purpose of this subsection, the condition that a plan be fair and equitable with respect to a class includes the following requirements:

(A) With respect to a class of secured claims, the plan provides—

(I)(I) that the holders of such claims retain the liens securing such claims, whether the property

subject to such liens is retained by the debtor or transferred to another entity, to the extent of the allowed amount of such claims; and

(II) that each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property;

(ii) for the sale, subject to section 363(k) of this title, of any property that is subject to the liens securing such claims, free and clear of such liens, with such liens to attach to the proceeds of such sale, and the treatment of such liens on proceeds under clause (i) or (iii) of this subparagraph; or

(iii) for the realization by such holders of the indubitable equivalent of such claims.

(B) With respect to a class of unsecured claims--

(i) the plan provides that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or

(ii) the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property, except that in a case in which the debtor is an individual, the debtor may retain property included in the estate under section 1115, subject to the requirements of subsection (a)(14) of this section.

(C) With respect to a class of interests--

(i) the plan provides that each holder of an interest of such class receive or retain on account of such interest property of a value, as of the effective date of the plan, equal to the greatest of the allowed amount of any fixed liquidation preference to which such holder is entitled, any fixed redemption price to which such holder is entitled, or the value of such interest; or

(ii) the holder of any interest that is junior to the

interests of such class will not receive or retain under the plan on account of such junior interest any property.

(c) Notwithstanding subsections (a) and (b) of this section and except as provided in section 1127(b) of this title, the court may confirm only one plan, unless the order of confirmation in the case has been revoked under section 1144 of this title. If the requirements of subsections (a) and (b) of this section are met with respect to more than one plan, the court shall consider the preferences of creditors and equity security holders in determining which plan to confirm.

(d) Notwithstanding any other provision of this section, on request of a party in interest that is a governmental unit, the court may not confirm a plan if the principal purpose of the plan is the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933. In any hearing under this subsection, the governmental unit has the burden of proof on the issue of avoidance.

(e) In a small business case, the court shall confirm a plan that complies with the applicable provisions of this title and that is filed in accordance with section 1121(e) not later than 45 days after the plan is filed unless the time for confirmation is extended in accordance with section 1121(e)(3).

# EXHIBIT "5"

United States Code Annotated
   Title 11. Bankruptcy (Refs & Annos)
      Chapter 11. Reorganization (Refs & Annos)
         Subchapter V. Small Business Debtor Reorganization

11 U.S.C.A. § 1191

§ 1191. Confirmation of plan

Currentness

**(a) Terms.**--The court shall confirm a plan under this subchapter only if all of the requirements of section 1129(a), other than paragraph (15) of that section, of this title are met.

**(b) Exception.**--Notwithstanding section 510(a) of this title, if all of the applicable requirements of section 1129(a) of this title, other than paragraphs (8), (10), and (15) of that section, are met with respect to a plan, the court, on request of the debtor, shall confirm the plan notwithstanding the requirements of such paragraphs if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

**(c) Rule of construction.**--For purposes of this section, the condition that a plan be fair and equitable with respect to each class of claims or interests includes the following requirements:

**(1)** With respect to a class of secured claims, the plan meets the requirements of section 1129(b)(2)(A) of this title.

**(2)** As of the effective date of the plan--

**(A)** the plan provides that all of the projected disposable income of the debtor to be received in the 3-year period, or such longer period not to exceed 5 years as the court may fix, beginning on the date that the first payment is due under the plan will be applied to make payments under the plan; or

**(B)** the value of the property to be distributed under the plan in the 3-year period, or such longer period not to exceed 5 years as the court may fix, beginning on the date on which the first distribution is due under the plan is not less than the projected disposable income of the debtor.

**(3)(A)(i)** The debtor will be able to make all payments under the plan; or

**(ii)** there is a reasonable likelihood that the debtor will be able to make all payments under the plan; and

**(B)** the plan provides appropriate remedies, which may include the liquidation of nonexempt assets, to protect the holders of claims or interests in the event that the payments are not made.

§ 1191. Confirmation of plan, 11 USCA § 1191

**(d) Disposable income.**--For purposes of this section, the term "disposable income" means the income that is received by the debtor and that is not reasonably necessary to be expended--

    **(1)** for--

        **(A)** the maintenance or support of the debtor or a dependent of the debtor; or

        **(B)** a domestic support obligation that first becomes payable after the date of the filing of the petition; or

    **(2)** for the payment of expenditures necessary for the continuation, preservation, or operation of the business of the debtor.

**(e) Special rule.**--Notwithstanding section 1129(a)(9)(A) of this title, a plan that provides for the payment through the plan of a claim of a kind specified in paragraph (2) or (3) of section 507(a) of this title may be confirmed under subsection (b) of this section.

## CREDIT(S)

(Added Pub.L. 116-54, § 2(a), Aug. 23, 2019, 133 Stat. 1082.)

11 U.S.C.A. § 1191, 11 USCA § 1191
Current through P.L. 116-145.

---

**End of Document**

© 2020 Thomson Reuters. No claim to original U.S. Government Works.

---

 © 2020 Thomson Reuters. No claim to original U.S. Government Works.